NUNC PRO TUNC
11/12/2015

**FILED**

Nov 18 2015

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY          s/ jessicao          DEPUTY

NOV 1 2 2015

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**RECEIVED**

1  Clarice Tuck
   1600 E. Vista Way #110
2  Vista, CA 92084
   Ph: 760-724-9439
3

4  Plaintiff In Pro Se

5

6

7

8        **IN THE UNITED STATED DISTRICT COURT**
           **SOUTHERN DISTRICT OF CALIFORNIA**
9

10 CLARICE  TUCK,                  )  CIVIL ACTION NO. 15CV1376 JLS JLB
                                   )
11             Plaintiff, .        )  **AMENDED COMPLAINT FOR DAMAGES**
                                   )
12      vs.                        )  **VIOLATIONS OF 15 U.S.C.§1692 et seq.FDCPA**
                                   )  **VIOLATIONS OF 47 U.S.C. §227 et seq. TCPA**
13 GUARDIAN PROTECTION SERVICES)   **VIOLATIONS OF CALIFORNIA ROSENTHAL**
   INC.,                           )  **FAIR DEBT COLLECTION PRACTICES ACT**
14                                 )  **CIVIL CODE SECTION §1788 et seq.**
                                   )
15             Defendant,          )  DEMAND FOR JURY TRIAL
                                   )

16                          **COMPLAINT**

17        COMES NOW, CLARICE TUCK,  Plaintiff "In Pro Se"

18 in the above-entitled case, as an individual hereby sues the Defendant

19 GUARDIAN PROTECTION SERVICES INC., for violations of the

20 Fair Debt Collection Practices Act 15 U.S.C. §1692 et seq., (FDCPA)

21 the Telephone Communications Practices Act (TCPA) 47 U.S.C. §227(a)(iii),

22 and the California Rosenthal Fair Debt Collection Practices Act Civil Code 1788 et seq.

23                   **JURISDICTION AND VENUE**

24 **1.** Jurisdiction of this Court arises under 47 U.S.C.§227(b)(3)  and

25 15 U.S.C. §1692(k)(d),  supplemental jurisdiction also exists for the state law

26 claims pursuant to California Stat.§1788 and California Code of Civil Procedure

27 §410.10.  Defendant conducts business in the State of California and therefore,

28 personal jurisdiction is established.

AMENDED  COMPLAINT FOR DAMAGES          "COURT COPY"          Page 1

1   **2.**   Venue is proper pursuant to 28 U.S.C. §1391b and California Civil Procedure

2   §395(a). Venue in this district is proper in that the Plaintiff resides in San Diego

3   County, the Defendant GPS transacts business in San Diego County,

4   and the conduct complained of occurred in San Diego County.

5   **3.**   This is an action for damages which *exceeds $50,000.00 U.S. Dollars*

6   **PARTIES**

7   **4.**   In Pro Se Plaintiff, CLARICE TUCK, hereinafter ("TUCK")

8   is a natural person and a  resident of the State of California, San Diego County.

9   **5.**   Upon information and belief Defendant,

10  GUARDIAN PROTECTION SERVICES INC., ("GPS") is a foreign corporation,

11  authorized to do business in California, with a corporate headquarters

12  located at 174 Thorn Hill Road, Warrendale, PA 15086 USA.

13  **6.**   Defendant GPS is an security system business entity which collects consumer

14  debts, bringing GPS well within the ambit's of the California Rosenthal Fair Debt

15  Collection Practices Act Civil Code §1788 (CFDCPA){**See Exhibit's A &A.1**}

16  ( **GPS consumer billing statements dated 11/18/14 & 12/18/14**)

17  **PRELIMINARY STATEMENT**

18  **7.**   This is an action for damages and injunctive relief brought to the 9th Circuit

19  District Court by this 86 year old In Pro Se  Plaintiff CLARICE TUCK ("TUCK")

20  against the Defendant GUARDIAN PROTECTION SERVICES INC., ("GPS") .

21  Plaintiff TUCK hereby sues GPS for strict statutory violations

22  of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692(c)(a)(1),

23  15 U.S.C. §1692(d)(5), 15 U.S.C. §1692(d)(6), 15 U.S.C. §1692(e)(10)

24  and for strict statutory violations of the Telephone Consumer Protection Act (TCPA)

25  Sec. 227, 47 U.S.C.§227(b)(1), and 47 U.S.C.§227(a)(iii).

26  and The California Rosenthal Fair Debt Collections Practices Act (CFDCPA).

27  **8.**   On December 2, 2014, Plaintiff TUCK mailed GPS of  Warrendale, PA

28  (East Coast of the U.S.)  a *letter* by U.S. Postal mail {**See "Exhibit B**}.

1   In this *letter* TUCK *demanded* that *GPS terminate any/all services provided by GPS*
2   *to TUCK immediately upon receipt of the letter* for a number of reasons including the
3   fact that TUCK had *no prior written or oral established business relationship* with
4   the Defendant GPS,  TUCK had *never signed  any  written contractual agreement*
5   *directly with GPS*, most importantly TUCK *at no time ever* provided
6   *GPS with express written permission* to call her private cell phone number.
7   Nor did she believe any of the forty (40) calls made to her cell phone between the
8   dates of  February 25, 2015 to April 17, 2015 where made for *emergency purposes*.
9   TUCK further explained in this letter that she could only remember being contacted
10  and signing up for her new security system in person with a company which is based
11  out of American Fork Utah, (West Coast of the U.S.) AMP SECURITY.
12  TUCK goes on to explain *the same person who illegally entered the gated Senior*
13  *mobile park TUCK lives in* salesmen CLIFF COCKERALL, *is the very same person*
14  who  knocked on her door  on July 13, 2013 and the *same person* who is also
15  indicated on the home security agreement Tuck signed with AMP SECURITY  as a
16  company representative {**See Exhibit C**"}.
17      **9.**   Plaintiff Tuck alleges she was alone and vulnerable when the
18  AMP SECURITY salesmen CLIFF COCKERALL knocked on her door,
19  the salesmen lied to TUCK announcing thru her security door that he was sent out by
20  Life Alert to upgrade her present *apparently* outdated security system.
21      **10**.       Plaintiff TUCK also hereby asserts that she
22  *disputed the alleged debt in writing directly with GPS* in this same letter dated
23  December 2, 2014, {**See "Exhibit B**}. Furthermore she also requested GPS to
24  *validate the consumer debt* allegedly  owed by the Plaintiff TUCK.
25  To date GPS has *ignored* all attempted communications made by TUCK.
26  By Federal and State law GPS was required to *cease and desist* all collection
27  activities {including phone calls} after receiving TUCK'S written Consumer Debt
28  Dispute letter and *request for immediate validation of the alleged debt*.

1  GPS not only ignored this 1st initial written request mailed by TUCK in mid-October,

2  but also chose to ignore a 2nd subsequent written request to *discontinue all security*

3  *services and billing immediately*, {**See Exhibit D**} 2nd letter dated January 15, 2015.

4  In this 2nd letter TUCK again laid our TUCK's issue's and demands directly to GPS.

5  GPS not only ignored this 2nd letter, GPS instead chose to initiate a continuous

6  almost daily telephonic campaign intended to annoy, abuse, or harass the 86 year old

7  Plaintiff beginning on February 25, 2015, and not ending until 53 long days later

8  on April 18, 2015, {**See "Exhibit E"**} .

9  These daily calls (often twice in the same day) were a ongoing attempt

10  *created* by GPS a *professional consumer debt collector* to

11  *collect an alleged, assumed, or non-existent consumer debt, or,*

12  *an alleged 3rd party debt previously assumed by GPS*.

13  **11.** TUCK also contends at 86 years of age she is on a number of daily prescribed

14  medications for pain and depression and occasionally needs assistance

15  and supervision from family members to make her daily financial and

16  quality of life decisions.

17  **12.** Plaintiff TUCK decided in her frustration in late 2014 to use the internet social
    media to check  AMP SECURITY customer reviews for, she was shocked by

18  what she read online from other unsuspecting elderly clients of AMP
    SECURITY. {**See Exhibits F, F.1, F.2, F.3**}       .

19

20  Reading these negative reviews added to the daily stress she already going thru

21  dealing with GPS and her present home security system.

22  **13.** GPS again ignored TUCK'S numerous written requests to *validate* the

23  *consumer debt allegedly owed to GPS  and to also immediately cease  and desist*

24  *all collection activities*, {**See Exhibit J**} GPS went out and hired a professional

25  collection agency firm Joseph Mann & Creed,  to continue on this deceitful illegal

26  practice{**See Exhibit G**} This is a letter dated April 20, 2015 from this new bill

27  collector now attempting to collect a now grossly inflated consumer debt originated

28  by GPS hereby assumed by this new bill collector.

1     **14**. Defendant GPS by and thru the above-described actions violated the

2 strict statutory guidelines set forth in §1692(d) of the Fair Debt Collection Practices

3 Act (FDCPA) by engaging in conduct the natural consequences of which is to

4 harass, oppress, or abuse this 86 year old Plaintiff.

5     **15**. Defendant GPS *clearly violated* section §1692d(5) of the Fair Debt Collection

6 Practices Act (FDCPA) and at the *very same time* violated the California Rosenthal

7 Fair Debt Collection Practices Act section §1788.17 on more than 39 separate

8 occasions by causing her cellular phone to ring repeatedly and continuously with the

9 intent to annoy, abuse, or harass Plaintiff TUCK between the months of

10 February thru April 2015, even after being notified and demanded to

11 cease and desist in writing more than once my the Plaintiff TUCK.

12     **16.** Defendant GPS abusively and intentionally committed more than 39 statutory

13 violations of the Telephone Consumer Protection Practices Act (TCPA) Sec 227,

14 by calling the Plaintiff's cell phone more than 39 times without *any* prior

15 express written permission by TUCK to do so. All 39 illegally made calls

16 were for non-emergency purposes.

17     **17.** GPS using a automatic telephone dialing system with artificial pre-recorded

18 voice capabilities calling from phone number's (724) 741-3500 & (484) 668-4033,

19 called the Plaintiff's cell phone more than 39 times, *many times calling twice in the*

20 *same day from two different above-listed GPS phone numbers*. Furthering the

21 confusion the 86 year old plaintiff was having to endure daily during this same 53

22 day period between the dates of February 25, 2015 and April 17, 2015.

23 GPS left numerous pre-recorded messages on Plaintiff TUCK'S Cricket Wireless

24 cell phone number 760-724-9439.

25 All of the calls GPS placed to TUCK's cellular phone, *the Plaintiff had to pay for*.

26 These same pre-recorded messages have been retained by the Plaintiff and can be

27 brought into evidence before the court during the Discovery process of these

28 proceedings.

1   **18**. Defendant GPS has on more than 39 separate occasions demonstrated willful
2   and knowing non-compliance with 47 U.S.C. §227(b)(1)(A) by using an automatic
3   dialing system to call the Plaintiff TUCK'S cell phone number 760-724-9439
4   which is assigned to a San Diego County cellular service provider
5   Greatcall (Jitterbug).

6   **19.** Plaintiff TUCK'S cell phone number 760-724-9439 has been listed on the
7   National "Do Not Call List" since December of 2003.

8   **20**. Plaintiff Tuck has *never* had *any contractual obligation to pay GPS anything*
9   and GPS asserted a right that it lacks, to wit, the right to enforce or collect a debt.

10   **21.** Plaintiff TUCK has demanded that Defendant GPS on numerous
11   occasions  provide the Plaintiff with written  "verification" and/or
12    debt validation as defined by 15 U.S.C. §1692(g) (1) (2) (5) (b)
13   and the California Consumer Protection Statutes/Laws clearly demonstrating
14   willful and non-compliance with 47 U.S.C.§227(b)(1)(A).

15   **22.** Plaintiff Tuck recently went one step further in an attempt to avail herself
16   of her legal rights within this U.S. District Court, Southern District of
17   California *by filing an additional motion to her original verified complaint*
18   entitled "*Consumer Notice of Dispute of Debt*. This additional motion was
19   another additional attempt by the Plaintiff to demand from the Defendant GPS
20   "verification" and "debt validation" and also an attempt by TUCK to try and
21   use the federal court system and this same federal motion to force or order the
22   Defendant GPS to finally provide clear verification or debt validation to the
23   Plaintiff TUCK. The conformed copy of this additional federal motion is
24   attached hereto as{**See Exhibit K & K.1**}filed with this court on June 23, 2105

25   **23**. Plaintiff TUCK, would like to hereby Notice the honorable court that to
26   date the Defendant GPS *has yet to answer any of the mailed demands sent by*
27   *TUCK in the past*, nor has GPS *answered this additional motion* filed by the
28   Plaintiff in the 9th Circuit District Court, San Diego  "*at all* ".

---

**COUNT I**
**VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT**
**(FDCPA) 15 U.S.C. §1692(c)(a) BY DEFENDANT**
**GUARDIAN PROTECTION SERVICES**

**24.** Plaintiff TUCK alleges and incorporates hereto the information in all of the previous paragraphs **1** thru **23**.

**25. 15 U.S.C. §1692(c)(a) states in part;**

    **(a) COMMUNICATION WITH THE CONSUMER GENERALLY** without the *prior express written consent of the consumer given directly to the consumer debt collector* or the express permission of a court of competent jurisdiction, a consumer debt collector *may not* communicate with the consumer in connection with the collection of the *consumer debt.*

**26.** Defendant GPS placed more than 39 voice and/or automated telephone calls to Plaintiff TUCK'S  personal Cricket Greatcall cellular phone number 760-724-9439 between the dates of February 25, 2015 and April 17, 2015. Every single one of these placed calls was made *by GPS without* the *prior express written consent* of the consumer,  Plaintiff TUCK. {**See Exhibit E**}

**27.** Defendant GPS knew or should have known that all 40 voice and/or automated phone calls placed to Plaintiff TUCK's personal cellular phone were both inconvenient, annoying,  and cost her money on her phone bill. Every single one of these placed calls made *by GPS* staff were made to Plaintiff TUCK'S cellular phone *without* the *prior express written consent* of the consumer,  Plaintiff TUCK.

**28.** Defendant GPS  progressively violated 15 U.S.C. §1692(c)(a) by continuously calling TUCK for weeks on end over a 53 day period between February 25, 2015 and April 17, 2015, {**See Exhibit H**} {i.e. TUCK'S GreatCall Cricket phone logs}. Every single one of these placed calls was made by GPS  *without* the *prior express written consent* of the consumer,  Plaintiff TUCK.

**29.** Such communication is strictly prohibited by 15 U.S.C. §1692(c)(a).

    **WHEREFORE,** Plaintiff TUCK demands judgement for damages and injunctive relief against Defendant GPS for actual statutory punitive damages, attorney's fees and costs pursuant to 15 U.S.C. §1692(c)(a).

**COUNT II**
**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCAP)**
**§1692(d)(5) BY DEFENDANT GUARDIAN PROTECTION SERVICES**

30. Plaintiff TUCK alleges and incorporates hereto the information in all previous paragraphs **1** thru **29**.

31. **15 U.S.C. §1692(d) states in part;**
A debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

32. **15 U.S.C. §1692(d)(5) states in part;**
Causing a telephone to ring or engaging any person in a telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number.

33. Defendant GPS violated 15 U.S.C. §1692(d)(5) more than 39 times by calling Plaintiff TUCK on her personal cell phone 760-840-1551 more than 39 separate times causing the Plaintiff's cell phone to ring repeatedly and continuously with the *intent* to *annoy, abuse, or harass* the Plaintiff. Every single one of these placed calls was made by GPS *without* the *prior express written consent* of the consumer, Plaintiff TUCK.

34. During this same 53 day period between February 25, 2015 and April 17, 2015 GPS staff intentional and repeatedly called the Plaintiff TUCK more than 39 times on her personal cell phone number 760-724-9439. This has caused this 86 year old Plaintiff undue stress, confusion, long term nervousness and embarrassment. {**See Exhibit H**} {i.e. TUCK'S GreatCall Cricket phone logs}

35. Plaintiff Tuck hereby alleges that Defendant GPS did cause her cell phone to ring on more than 39 separate occasions between February 25, 2015 and April 17, 2015 causing her to answer the call and either engage in a conversation with GPS staff or have to listen to numerous pre-recorded messages left by GPS staff on TUCK'S cell phone message account, which Plaintiff TUCK has to pay for.

**WHEREFORE**, Plaintiff demands judgement against GPS for actual, statutory, and punitive damages, attorneys fees and costs, pursuant to 15 U.S.C. §1692(d)(5).

## COUNT III
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT(FDCPA)
## 15 U.S.C. §1692(d)(6) BY DEFENDANT GUARDIAN PROTECTION SERVICES

**36**.  Plaintiff TUCK alleges and incorporates hereto the information in all previous paragraphs **1** thru **35**.

**37. 15 U.S.C. §1692(d)  states in part;**

> A consumer debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged consumer debt.
> Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ***The placement of telephone calls without meaningful disclosure of the caller's identity.***

**38**. Defendant GPS's staff violated 15 U.S.C. §1692(d)(6)  by placing more than 39 automated and/or voice calls to  Plaintiff TUCK'S cell phone between the dates of  February 25, 2015 and April 17, 2015. On several occasions these very same calls were made without meaningful disclosure of the caller GPS's identity by and thru their staff. All 40 calls were independently placed at different times. Every single one of these more than 39 placed calls was being made by GPS *without* the *prior express written consent* of the consumer,  Plaintiff TUCK. This added to the Plaintiff's daily confusion and anxiety about these very same calls.

> ***i.e.***    *Who is this person or machine on the other end of the phone?*
> *Why are they calling me almost every day?*
> *Why are they leaving these strange messages?*
> *Why won't the people (when they do come on the line)*
> *not listen to me and stop calling me?*

**39**. Plaintiff TUCK,  on or around  December of 2015, discovered that GPS in collusion with AMP SECURITY were *well documented* by *other disgruntled unsuspecting consumers all over the United States,* many of these  *same unsuspecting consumer's*  had very  similar stories posted on the internet. Through  continued reading of these same negative reviews it became apparent to TUCK the fact that  over time and discovery, that all of the consumer's posting these negative reviews thought,  like her,  that both AMP SECURITY and

1  GPS were both rip-off companies using forceful illegal business tactics
2  to pray on other elderly people just like her all over the United States.
3  {**See Exhibit's F, F.1, F.2, F.3** }.

4     **40.** Defendant GPS is a *seasoned professional consumer debt collection agency*
5  that has *instructed their staff* to pray on the 86 year old female consumer TUCK.
6  *Intentionally* using the Plaintiff's age against her by continually calling her,
7  sometime's more than once a day, to harass, annoy and coerce her into paying an
8  alleged grossly inflated, non-existent consumer debt, all bordering on extortion.

9     **41.** TUCK'S own hair dresser in the Plaintiff's hometown city of Vista, CA,
10  (North San Diego county) shared a story of her own with the Plaintiff.
11  One day a local salesmen was able to swindle her own unsuspecting elderly mother
12  into purchasing four (4) separate GPS security systems for her home over a period of
13  months, *when she only needed or required one*. AMP SECURITY and GPS were
14  billing her mother on a monthly automatic pay/withdrawal basis directly from her
15  personal bank account basis for all four security systems,
16  (three more systems than she needed) .
17  This means the same GPS salesmen went to this women's home on four separate
18  occasions using her age to con her into buying four separate security systems.
19  It was not until this elderly ladies son investigated the situation and her bank account
20  that it became apparent that GPS was being accused of running a nationwide scam
21  to swindle elderly unsuspecting clients into signing 5 year binding contracts using
22  bad business tactics, lying to consumers, and small print.

23     **42.** Plaintiff TUCK personally believes it to very strange to see any contract
24  asking for a person's age next to their signature {**See Exhibit I**}.
25  Plaintiff believes uses this age information to intention target elderly clients.

26        **WHEREFORE**, Plaintiff TUCK demands judgement for damages against
27  GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant
28  to 15 U.S.C. §1692(d)(6).

**COUNT IV**
**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT**
**(FDCPA) 15 U.S.C.§1692(e)(10)**
**BY DEFENDANT GUARDIAN PROTECTION SERVICES**

**43.** Plaintiff TUCK alleges and incorporates hereto the information in all previous paragraphs **1** thru **42.**

**44. 15 U.S.C. §1692(e) states in part;**

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any consumer debt. Without limiting the general application of the foregoing. The following conduct is a violation of this section:

**45. 15 U.S.C. §1692(e)(10) states in part;**

> **The use of any false representation or deceptive means to collect or attempt to collect a consumer debt or obtain information about a consumer.**

**46.** Defendant GPS violated 15 U.S.C. §1692(e)(10) by the use of false representation or deception means to collect or attempt to collect a debt or to obtain information concerning a consumer.

**47.** Defendant GPS staff lied toTuck on numerous occasions during the months of February thru April to gain information about the Plaintiff. The original AMP SECURITY salesmen lied saying he was a representative of "Life Alert" and was sent to her home by Life Alert to upgrade her present security system for free.

**48.** The AMP SECURITY salesmen lied again to the Plaintiff by telling her that her new security system equipment was completely free of charge as a promotion. He went on to inform her that all she had to do is place a GPS sign in her front yard and all of her new equipment including installation is also free.

**49.** TUCK received calls from GPS staff months after she disputed the alleged consumer debt in writing and requested validation, and months after TUCK disconnected her security service equipment manually with the help of her 56 year old son ROY TUCK and threw that same equipment into the trash.

---

AMENDED COMPLAINT FOR DAMAGES                                      **PAGE 11**

1    **50**. TUCK'S son *aggressively* tried on *numerous occasions* to aid his

2    elderly very frustrated and aggrieved  mother by attempting to email GPS directly,

3    to write GPS in the U.S. postal mail,  and to also reach out and call GPS by phone,

4    all of these method's became a futile attempt to get the phone calls to stop and the

5    alleged consumer debt billing cycle claimed to be owed to GPS to cease

6    immediately. Nothing worked, GPS utterly and completely ignored all

7    communication attempts from the  86 year old  Plaintiff TUCK and her son.

8        **WHEREFORE**, Plaintiff TUCK demands judgement for damages against

9    GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant

10   to 15 U.S.C. §1692(e)(10)

11   **COUNT V**

12   **VIOLATIONS OF THE TELEPHONE COMMUNICATIONS PRACTICES ACT47**
**U.S.C. §227(b)(1)(A)**
**BY DEFENDANT GUARDIAN PROTECTION SERVICES**

13

14   **51.** Plaintiff TUCK alleges and incorporates hereto the information in all

15   previous paragraphs **1** thru **50**.

16   **52.** 47 U.S.C. §227(b)(1)(A) states in part;

17      **(b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT**

18      **(1) PROHIBITIONS -** It shall be unlawful for any person within the

19         United States, or person outside the United States if the recipient is inside
         the United States -

20      **(A)** to make any call (other than a call made for emergency purposes or made

21         with the prior express written consent of the called party) using any
         automatic telephone dialing system or an artificial or pre-recorded voice.

22   **53.** Defendant GPS has demonstrated willful and knowing non-compliance with

23   47 U.S.C. §227(b)(1)(A) by using an automatic telephone dialing system to call the

24   Plaintiff's cell phone number  more than 39 times during the months of

25   February thru April 2015.  All of these same call's were made to  Plaintiff TUCK'S

26   personal  cellular phone number 760-724-9439, which is assigned to a San Diego

27   county cellular service provider Jitterbug/Greatcall and listed on the "National Do

28   Not Call List" since December 17, 2003.,**{See Exhibit E}**.

**54**. Defendant GPS has committed 40 separate strict statutory violations of 47 U.S.C. §227(b)(1)(A) and Plaintiff is entitled to damages of $500 dollars for the first call and $1,500.00 dollars for each violation after the first call pursuant to 47 U.S.C. §227(b)(3)(B).

**55**. Defendant GPS has demonstrated willful and knowing non-compliance with 47 U.S.C. §227(b)(1)(A) the last 39 calls are subject to treble damages pursuant to 47 U.S.C. §227(b)(3)(B) as those calls were intentional.

**56**. Defendant GPS has also demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A)(iii) this code entitles the Plaintiff to damages of $1,500.00 dollars per violation pursuant to 47 U.S.C. §227(b)(3)(B). Plaintiff TUCK and GPS do not have an established business relationship within the meaning of 47 U.S.C. §227.

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant to 15 U.S.C. §227(b)(1)(A).

### COUNT VI
### VIOLATIONS OF THE CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CC1788 *et seq.* BY DEFENDANT GUARDIAN PROTECTION SERVICES

**57**. Plaintiff TUCK alleges and incorporates hereto the information in all previous paragraphs **1** thru **56**.

**58**. Plaintiff TUCK is a consumer within the meaning of 15 U.S.C. §1692 *et seq.*

**59**. Defendant GPS is seeking to collect a consumer debt from Plaintiff TUCK as defined by California Civil Procedure §1788(f).

**60**. The account in question is a consumer transaction as defined by California Civil Procedure §1788(e) as Plaintiff has allegedly received property, services or money from the Defendant GPS or an extension of credit, and such property, services or money was used primarily for personal, family or household purposes.

**61**. Defendant GPS also violated §1788.11(d) of the California Rosenthal Fair Debt Collection Practices Act (CFDCPA) by placing collection calls to the Plaintiff's cellular phone repeatedly and continuously so as to annoy, harass or embarrass the Plaintiff.

*Plaintiff contends she has always paid all of her bills in a timely manner.*

**62**. Defendant GPS violated §1788.17 of the California Rosenthal Fair Debt Collection Practices Act (CFDCPA) by placing consumer debt collection calls to the Plaintiff with *such frequency* as to be *unreasonable* and to *constitute direct intentional harassment* to Plaintiff under the circumstances.

**63**. Defendant GPS also violated this same Section §1788.17 of the California Rosenthal Fair Debt Collections Practices Act (CFDCPA) by *continuously* failing to comply with the statutory regulations contained within the United States Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq.*

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant to the California Rosenthal Fair Debt Collection Practices Act CC1788 *et seq.*

## **PRAYER**

Plaintiff TUCK hereinafter prays this honorable court will deny the Defendant GPS's Motion to Dismiss for Failure to State a Claim, or,

in the *alternative,* if the court finds that the Plaintiff has *failed to state a claim* or *provide sufficient evidence upon which relief can be granted,*

Plaintiff hereby requests the honorable court *grant* this 86 year old "In Pro Se" Plaintiff leave to amend her complaint and ample time to clearly articulate any deficiencies identified by the court.

///

///

///

///

**VERIFICATION**
**DECLARATION OF PLAINTIFF - CLARICE TUCK**

I, CLARICE TUCK, declare as follows:

**64.** I am the Plaintiff in the above-entitled 9th Circuit case.

**65.** I am of age, sound mind and competent to testify to all of the facts based on first-hand knowledge of all of the aforementioned items so stated.

**66.** I have been damaged *financially*, *socially* and *emotionally* since February 2015 as a direct result of Defendant GPS's unlawful actions and conduct.

**67.** I have read the foregoing pleading in it's entirety and know all of the fact's therein stated to be *true and correct*.

**68.** I declare under the penalty of perjury pursuant to the laws of California and the United States, that the foregoing is true and correct to the best of my knowledge, information and belief.

**69.** Plaintiff TUCK demands judgement for damages against GPS for actual, statutory, and attorney's fees pursuant to §1788.30(b) and costs pursuant to §1788.30(c).

**DEMAND FOR JURY TRIAL**

Plaintiff TUCK hereby demands a trial by jury of all issues so triable as a matter of law. Respectfully submitted to this court this *12th* day of November 2015.

*Clarice Tuck*,
CLARICE TUCK,   Declarant In Pro Se.
1600 E. Vista Way #110
Vista, CA 92084
Ph: 760-724-9439

*In Pro Se*

**Clarice Tuck v. Guardian Protection Services, Inc.,**

**United States District Court Case No. 15-CV-1376-JLS(JLB)**

## CERTIFICATE OF SERVICE

I, Roy Tuck, hereby certify that I caused to be served upon the

Defendant a copy of the following document(s):

**\* AMENDED COMPLAINT FOR DAMAGES**

**\* PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION TO DISMISS**

Via U.S. mail, first class, addressed to Defendant's attorney of record's last

reported address as follows:

Robert M. Linn (State Bar # 190387)

Cohen & Grigsby, P.C.

625 Liberty Avenue

Pittsburg, PA 15222-3152

Ph: (412) 209-0672

Executed on this 12th day of November 2015, in San Diego county, U.S.A.

*Roy Tuck*

AMENDED COMPLAINT FOR DAMAGES                                      Page 16

" Exibit A "

00694 001 5819 1 323 F0735 /  0000058188 N
Send all correspondence to:



# GUARDIAN
## protection services
One of the Armstrong Group of Companies

174 Thorn Hill Rd. • Warrendale, PA • 15086

IF YOU HAVE ANY QUESTIONS, PLEASE CALL:

BILLING RELATED QUESTIONS: 1-800-250-6426

ALARM SYSTEM ASSISTANCE: 1-888-895-4805

| STATEMENT DATE |
| --- |
| 11/18/2014 |
| CUSTOMER NUMBER |
| 6012236 |

0000058188  **AUTO**MIXED AADC 350

TUCK, CLARICE
1600 E VISTA WAY
UNIT 110
VISTA CA  92084-3433

## PAYMENT DUE UPON RECEIPT

Save Postage and go GREEN - make your payment at https://customercare.guardianprotection.com/

| DATE | DESCRIPTION | | AMOUNT |
| --- | --- | --- | --- |
| | PREVIOUS BALANCE | | .00 |
| | TUCK, CLARICE      1600 E VISTA WAY      92084 | | |
| 11/18/2014 | Security Services 11/18/14 to 12/17/14 | 34274769 | 57.99 |
| 11/18/2014 | SERVICE CHARGE 11/18/14 to 12/17/14 | 34274769 | 2.00 |

| TOTAL AMOUNT DUE | 59.99 |
| --- | --- |

---

TO INSURE PROMPT CREDIT PLEASE RETURN THIS PORTION OF BILL WITH YOUR PAYMENT.

# GUARDIAN
## protection services
One of the Armstrong Group of Companies

174 Thorn Hill Rd. • Warrendale, PA • 15086

| CUSTOMER NUMBER | AMOUNT DUE | AMOUNT PAID |
| --- | --- | --- |
| 6012236 | 59.99 | |

PLEASE ENTER YOUR ACCOUNT NO. ON CHECK AND
MAKE PAYABLE TO:

TUCK, CLARICE
1600 E VISTA WAY
UNIT 110
VISTA, CA  92084

GUARDIAN PROTECTION SERVICES
P.O. Box 37751
Philadelphia, PA 19101-5051

F0735



01 006012236 00000005999 1

"EXHIBIT A"

"Exibit A-1"

Send all correspondence to:

# GUARDIAN
## protection services
*One of the Armstrong Group of Companies*

**174 Thorn Hill Rd. • Warrendale, PA • 15086**

**IF YOU HAVE ANY QUESTIONS PLEASE CALL:**

BILLING RELATED QUESTIONS: 1-800-250-6426

ALARM SYSTEM ASSISTANCE: 1-888-895-4805

| STATEMENT DATE |
|---|
| 12/18/2014 |
| **CUSTOMER NUMBER** |
| 6012236 |

0000059178  **AUTO**MIXED AADC 350

TUCK, CLARICE
1600 E VISTA WAY
UNIT 110
VISTA CA  92084-3433

### PAYMENT DUE UPON RECEIPT

Save Postage and go GREEN - make your payment at https://customercare.guardianprotection.com/

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| | PREVIOUS BALANCE | | 59.99 |
| | TUCK, CLARICE        1600 E VISTA WAY   92084 | | |
| 12/18/2014 | Security Services 12/18/14 to 01/17/15 | 34575329 | 57.99 |
| 12/18/2014 | SERVICE CHARGE 12/18/14 to 01/17/15 | 34575329 | 2.00 |
| | | **TOTAL AMOUNT DUE** | 119.98 |

---

**TO INSURE PROMPT CREDIT PLEASE RETURN THIS PORTION OF BILL WITH YOUR PAYMENT.**

# GUARDIAN
## protection services
*One of the Armstrong Group of Companies*

**174 Thorn Hill Rd. • Warrendale, PA • 15086**

| CUSTOMER NUMBER | AMOUNT DUE | AMOUNT PAID |
|---|---|---|
| 6012236 | 119.98 | |

**PLEASE ENTER YOUR ACCOUNT NO. ON CHECK AND MAKE PAYABLE TO:**

TUCK, CLARICE
1600 E VISTA WAY
UNIT 110
VISTA, CA  92084



**GUARDIAN PROTECTION SERVICES**
P.O. Box 37751
Philadelphia, PA 19101-5051

01 006012236 00000011998 5

*EXHIBIT A.1*

"Exibit B "



Clarice Tuck
1600 E. Vista Way #110
Vista, Ca 92084
Ph: 760-724-9439

Guardian Protection Services
174 Thorn Hill Road
Warrendale, PA 15086
Ph: 1-800-250-6426

Re: Demand for Disconnection of Service Demand to End Contract (Secret Code No# 1928)
    Demand for Payment of $200.00 to Repair my Thermostat Wiring

**Date: December 2, 2014**

Attention Guardian Services,

My name is Clarice Tuck and I am writing you this letter to demand that you disconnect my
security services account immediately as well as negate any outstanding bills with a zero balance.

Approximately one year ago a third party salesmen peddling your security system "**illegally**"
entered my private adult mobile home park and knocked on my door.
_Soliciting is illegal and banned in my community park._

At the time I was already hooked up and very happy with my "Life Alert" system but this same third
party salesman went on to tell me that if I decided to go with his security system "Guardian" that he
could convert me over to this newer advanced Guardian service and receive more feature's
"*for free*" and save me money. He went on to tell me that if I advertised for your company and placed
your Guardian Security sign in my yard that for doing this I would get all of the equipment and all of
the installation services **for free** as well.

I am now finding out that this is not the case at all. This salesmen did not represent your company at all
and illegally led me to believe he did. He told me things that were not true and lied to me directly.
He also never informed me that I was to be held to any kind of written contract or terms whatsoever.
Now that time has gone on (one year) I now have learned what a con artist this same salesmen really
was.

During the year I did pay for and receive your protections services I had nothing but problems with my
system. I had several service calls and every month it seemed like there was some sort of problem.
I also found out in short order that the system was extremely difficult to understand and so was
the instruction manual. I even had technicians come out from your company and try to teach me how
to use the equipment but this did not help.

This system compounded into me going many days and night's without heating or air-conditioning
because I was unable to have the acute knowledge it takes to operate the complicated thermostat which
your system also controlled. I was perfectly happy with my old generic basic thermostat. The third party
salesmen also never mentioned that Guardian would be cutting my furnace and AC wires to install
sensors for the new system or completely changing the original factory wiring to my furnace.
I would have never allowed this to happen if it was explained to me ahead of time.

-1-

*"EXHIBIT B"*

After a year of nothing but problems and paying a lot more per month for an advanced system I did not need nor did I understand, I decided to call in and shut off my service and turn in my equipment. When doing so I was told by your company several different things on several different phone calls by different people;

Call #1 - *Your staff person told me by phone that the salesmen who came to my door had no connections whatsoever with your Guardian company and that Guardian Security was not liable in any way for anything this third party salesmen told me or anything we agreed upon. This same Guardian staff person went on to tell me in the very next sentence that I was going to be penalized or fined/charged a $750.00 dollar "early disconnection fee", .*

Call #2 - *When I called Guardian a second time I explained to your company that the third party salesmen told me my equipment was free in exchange for advertising for your company. I was told at this time from this person that this was not true. I was being charged $750.00 dollars for the equipment. Which statement is true by which staff member?*

Note * Even though your staff person told me that this third party salesmen was not a legal representative or was employed by Guardian Security, your Guardian company did not have a problem using this third party salesmen agreement with me to withdraw monthly payments for this security system I had nothing but problems with, Guardian Security is also using this same agreement to exploit a $750.00 early termination fee from me.

I would like to hereby notice your Guardian Security company of the following;

1 - I do not intend to pay any more monthly fee's for a cumbersome expensive Guardian Security system which has been un-installed by me and placed in a box.

2 - I do not intend to have to pay or be forced to pay $750.00 dollars for a early termination fee, Equipment fee or otherwise.

3 - I am 86 years old and I firmly believe that I was taken advantage of by your Guardian Company Third party salesmen, I was coerced into signing a five year contract with early termination fee's and never properly informed of this. (Elderly abuse)

4 - I am presently seeking legal assistance with my local Senior Citizens legal assistance network to protect myself from this entire bogus coerced Guardian Security five year contract and your companies continued monthly billing practices. (Elderly abuse)

5 - I am also hereby demanding that Guardian Security company reimburse me $200 dollars that I had to pay a local licensed heating and AC Technician to remove your wiring from my system and repair the system back to provide heat and AC to my home.

Please respond to me directly with your future intentions.

Sincerely submitted,

*Clarice Tuck*

Clarice Tuck

-2-

"EXHIBIT B"

# AMP SECURITY

1261'S 820 E #300, AMERICAN FORK, UT 84003
PHONE: 801-754-7070 • FAX: 801-590-6601

CS ID: GS. 849
AMP #: _____

*F00GPS44590* CA

Question LIC # ACO 6464, ACO 5385, MIP LIC # ACO 6614
Registered by the Bureau of Security and Investigative Services, Department of
Consumer Affairs, P.O. Box 989002, West Sacramento, CA 95798-9002 (1-800-952-5210)
AMP LIC # 8521 CL Regulated by the California Contractors State License Board,
9821 Business Park Drive, Sacramento, CA 95827 (1-800-321-2752)

## AUTHORIZED DEALER SALES AND INSTALLATION AGREEMENT (SIA)

**A) CUSTOMER INFORMATION**

THIS AGREEMENT is made this 29 day of July, 2013 by and between Alarm Monitoring Protection, Inc ("Company") and
Slalrick E. Turk ("Customer").

**B) CUSTOMER AND EMERGENCY CONTACT INFORMATION**

| | | |
|---|---|---|
| PRE-VERIFICATION VERIFICATION PHONE # (Primary or Primary Number) | PRE-VERIFICATION CALL VERIFICATION PHONE # | 2ND CALL VERIFICATION PHONE # | PHONE TYPE |
| 760-724-4439 Cell | 760-310-9064 | Dubois McDonald Cell | |
| CUSTOMER MAILING ADDRESS (Street/Mail-name same as Premises) | CROSS STREET #1 (If Different) | | |
| 1600 E Vista Way #110 Vista, Ca 92084 | Acacia Ave | Phone Types: V=cell-line, G=gsm-line, N=no-line | SECOND USER |
| EMERGENCY CONTACTS (At Least 1 Contact Required) | | | |
| FIRST NAME / LAST NAME: Roy Turk | PHONE NUMBER (Including Area Code): 760-840-1551 | cell | □YES □NO |
| | | | □YES □NO |
| | | | □YES □NO |

PASSWORD (Numerical for Cancellation - 10 characters or less)
[ 1 ][ 4 ][ 2 ][ 8 ][ ][ ][ ][ ][ ]
* use 4 digits of SSN

**AGENCY INFORMATION**

| | PHONE NUMBER (Include Area Code) |
|---|---|
| POLICE | |
| FIRE | |
| MEDICAL | |

**C) DESCRIPTION AND PRICE OF EQUIPMENT**

| EQUIPMENT SOLD (SECURITY COMPLIANT COMPLETED) | | | | | EQUIPMENT INSTALLED (PROVISION COMPLETED) | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ITEM | QTY | RETAIL PRICE | RETAIL TOTAL | TOTAL PRICE | ITEM | QTY | RETAIL PRICE | RETAIL TOTAL | TOTAL PRICE |
| Panel Type: Lynx 5100 | 1 | 486 | 491 | 0/0 | Panel Type: | | | | |
| Doors/Sensor-Ports | 2 | 99 | 198 | 0 | 2-Way Middle | | | | |
| Smoke + Heat | 1 | 298 | 298 | 0 | | | | | |
| Medical pendant | 2 | 99 | 198 | 0 | | | | | |
| 2-way voice w/ cell | 1 | | 5900 | 0 | | | | | |
| Tele-Alert Seeker | 1 | | 2900 | 0 | | | | | |
| Fire Sensor | 1 | | 3900 | 0 | | | | | |
| IAT | | | 249 | 0 | | | | | |
| | SUB TOTAL: | | 1666 | 0 | | TOTAL: | | | |

"The equipment listed above in the "Equipment Sold" section was agreed to during the security consultation. If the Customer opts to change the equipment, it will be listed in the "Equipment Installed" section above. The Customer agrees to pay the total listed in the "Equipment Installed" section. Disproportionate payment not to exceed the lesser of $1,288 or 50% of the Total Sale and Installation Price.

Est. Installation Date*: _____   Est. Completion Date*: _____   2-Way Conf #: 902 V 264 D   Upload Conf #: _____

"*Ultimate Only. Such dates are subject to change as described in section 8 and as permitted by applicable law. The amount listed above is for equipment only and You are not being charged separately for the initial installation of the System. You are entitled to a list of any potential permit fees which may be required to be paid by You in connection with the installation. You acknowledge that such fees were made available to You at the time You entered into this Agreement.

**D) COMPLETION SURVEY**

Y/N
☑ □ I understand the full operation of my System and know the total fire alarm is set off twice a year
☑ □ I agree to verify myself via the audio link or phone as relay/sync service
☑ □ I understand the System has backup battery but that creative conditions may cause a non-functioning emergency service/monitoring
☑ □ The technician has shown me how to turn the System on and off, silence the siren and arm/disarm in case of a power failure, and have step detected if siren is off, low battery, transformer and loss jack, if applicable, are placed
☑ □ The technician has also explained the Safety Times for Entry 30 (sec) and Exit 30 (sec) and how to test the System, including testing to Center
☑ □ I have been provided with an instruction manual and a summary operation sheet
☑ □ The technician has explained how to make self-reduction efforts and has advised me to check for smoke detector ordinances within my installed city/location

X L T
[initials]   I certify that I answered the above questions to the best of my knowledge.

**E) ZONES**

| ZONE | N/F | TYPE | DESCRIPTION | ZONE | N/F | TYPE | DESCRIPTION |
|---|---|---|---|---|---|---|---|
| 2 | N | RvrG | Front Door | | | | |
| 3 | N | | Back Door | | | | |
| 4 | N | + Heat | Smoke | | | | |
| 5 | N | Instal | Medical Pendant | | | | |
| 6 | N | | Medical Pendant | | | | |

1. N/F = New or Existing  2. Type = Burg., Fire, Med.  3. Description = Door, Motion, Smoke, etc.

**F) NOTICE OF CANCELLATION**

CONSUMER TRANSACTION ONLY. YOU MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. PLEASE SEE THE NOTICE OF CANCELLATION FORM ATTACHED TO THE AUTHORIZED DEALER MONITORING AND REPAIR AGREEMENT (MRA) THAT YOU RECEIVED AS PART OF THIS TRANSACTION FOR AN EXPLANATION OF THIS RIGHT. YOU MAY HAVE ADDITIONAL CANCELLATION RIGHTS WITH RESPECT TO THE SERVICES.

**G) SIGNATURES**

YOU ARE ENTITLED TO RECEIVE A COPY OF THE AGREEMENT SIGNED BY US BEFORE ANY WORK MAY BE DONE. TO THE EXTENT YOU AUTHORIZE WORK TO BE PERFORMED PRIOR TO RECEIVING A WRITTEN COPY OF THIS AGREEMENT, YOU ACKNOWLEDGE THAT DOING SO WAS AS A CONVENIENCE TO YOU AND YOUR ONLY RECOURSE IS TO ASK US TO DELIVER A WRITTEN COPY OR THE AGREEMENT TO YOU PROMPTLY UPON RECEIVING SUCH REQUEST.
If the Premises are jointly owned, and if all owners cannot personally execute this Agreement, the customer whose signature appears on the signature line warrants that he/she was granted power of attorney by the remaining owner(s) of the Premises to execute this Agreement on behalf of the remaining owner(s).

BY: S. 24 Quaracka   [signature] Slarick E. Turk   7-29-13
COMPANY SERVICE LICENSEE SIGNATURE (PRINT NAME)   CUSTOMER SIGNATURE   DATE

[signature]
COMPANY REPRESENTATIVE SIGNATURE   CUSTOMER SIGNATURE   DATE

WHITE: COMPANY   YELLOW: CUSTOMER   CP-GP-AMP-2115-Dealer 4/13

"EXHIBIT C"

"Exibit D "

**Clarice Tuck**
**1600 E. Vista Way #110**
**Vista, Ca 92084**
**Ph: 760-724-9439**

**Guardian Protection Services**
**174 Thorn Hill Road**
**Warrendale, PA 15086**
**Ph: 1-800-250-6426**

**Re: Demand to End Signed Contract and Quit Billing Cycle.**

**Date: January 15, 2015**

Attention Guardian Services,

Please read the enclosed two (2) page letter I mailed to your office on December 2nd slowly and carefully.

I have been instructed by my senior citizens legal aide attorney to mail you this second demand letter along with my first one under her direction.

I am again hereby requesting again that your company discontinue my Guardian service and I am here to contest with my attorney any penalties or early termination fee's. The original contract was consummated by a trespassing third party illegal solicitor and was not explained to me in it's entirety. That same solicitor lied to me and told me everything was free.

Please send me proof in writing that you have received this letter to your office.

I am an 86 year old women who was taken advantage of by your company thru this illegal third party trespassing salesmen.

Sincerely submitted,

_Clarice Tuck_
Clarice Tuck

CC: Vista Senior Citizens Lawyers support

"EXHIBIT D"

" Exibit E "



## EXHIBIT E

| Call Total | Date | Time | Called From |
|---|---|---|---|
| Call #1 | February 25, 2015 | 9:51 a.m. | From (724) 741-3500 |
| Call #2 | February 25, 2015 | 10:59 a.m. | From (484) 668-4033 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| Call #3 | February 26, 2015 | 1:39 p.m. | From (484) 668-4033 |
| Call #4 | February 26, 2015 | 2:36 p.m. | From (724) 741-3500 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| Call #5 | February 27, 2015 | 2:36 p.m. | From (724) 741-3500 |
| Call #6 | February 28, 2015 | 2:36 p.m. | From (724) 741-3500 |
| Call #7 | March 1, 2015 | 2:37 p.m. | From (724) 741-3500 |
| Call #8 | March 2, 2015 | 12:15 p.m. | From (484) 668-4033 |
| Call #9 | March 2, 2015 | 2:37 p.m. | From (724) 741-3500 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| Call #10 | March 4, 2015 | 12:17 p.m. | From (484) 668-4033 |
| Call #11 | March 4, 2015 | 2.37 p.m. | From (724) 741-3500 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| Call #12 | March 5, 2015 | 2:37 p.m. | From (724) 741-3500 |
| Call #13 | March 7, 2015 | 2:37 p.m. | From (724) 741-3500 |
| Call #14 | March 8, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #15 | March 10, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #16 | March 11, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #17 | March 11, 2015 | 6:53 p.m. | From (484) 668-4033 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| Call #18 | March 12, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #19 | March 12, 2015 | 6:04 p.m. | From (484) 668-4033 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| Call #20 | March 13, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #21 | March 14, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #22 | March 15, 2015 | 3:38 p.m. | From (724) 741 3500 |
| Call #23 | March 16, 2015 | 3:38 p.m. | From (724) 741-3500 |
| Call #24 | March 18, 2015 | 11:47 a.m. | From (484) 668-4033 |
| Call #25 | March 18, 2015 | 3:38 p.m. | From (724) 741-3500 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| Call #26 | March 19, 2015 | 9:43 a.m. | From (484) 668-4033 |
| Call #27 | March 21, 2015 | 8:44 a.m. | From (484) 668-4033 |
| Call #28 | March 23, 2015 | 3:39 p.m. | From (724) 741-3500 |
| Call #29 | March 24, 2015 | 9:45 a.m | From (484) 668-4033 |
| Call #30 | March 24, 2015 | 4:50 p.m. | From (724) 741-3500 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| Call #31 | March 25, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #32 | March 26, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #33 | March 27, 2015 | 4:50 p.m. | From (724)-741-3500 |
| Call #34 | March 28, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #35 | March 30, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #36 | April 1, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #37 | April 2, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #38 | April 3, 2015 | 4:51 p.m. | From (724) 741-3500 |
| Call #39 | April 12, 2015 | 4:52 p.m. | From (724) 741-3500 |
| Call #40 | April 17, 2015 | 4:52 p.m. | From (724) 741-3500 |

"Exibit F + F-1"

Exibit F + F-1

# I. NEGATIVE REVIEW #1

Agnes Johnson said the alarm installer gently took her hand and placed it on the signature line. The <u>89-year-old</u> Sun City resident is nearly blind and couldn't see what she was signing. But she said the helpful, friendly AMP SECURITY representative told her "<u>it was to acknowledge that her alarm was installed.</u>" It wasn't until after the installer left that Johnson said she discovered she had signed a five-year contract.

In Sun City West, Beatrice Anderson signed a similar contract with Guardian Protection Services Inc., agreeing to pay $45 a month for the next five years. <u>Anderson is 93 and has dementia.</u> Her care giver said she had no idea what she was signing. The new contract came on top of an existing contract with an affiliated alarm company already charging Anderson $36 a month.

Security companies sell alarm systems as a form of protection. But what happened to these Valley seniors reflects dozens of consumer complaints about *aggressive sales tactics and deceptive marketing ploys*. "I think what they are doing is taking advantage of the elderly, especially when one woman is blind and the other has dementia," said Sharon Price, a Sun City West resident who helps care for Anderson. "It is wrong." Anderson said when AMP installed Anderson's new system, she had about 31/2 years left on her contract with Guardian Protection Services, which continued billing her each month.

AMP is an authorized dealer for Guardian Protection Services, Inc.,

Price said she made several calls last month to officials with AMP Alarm in American Fork, Utah and Guardian Protection Services in Warrendale, Pa., on Anderson's behalf. Customer-service representatives gave her the runaround, she said.

Frustrated, she took Anderson's case to the Arizona Attorney General's Office, and a consumer advocate called AMP. Price said company officials refused to resolve the issue and demanded a letter directly from the AG's office.

1  That changed last week after Price asked Call 12 for Action to contact AMP on

2  Anderson's case. Within hours, the company notified Price that it would cancel

3  Anderson's contract and was working with Guardian to do the same.

4  "We would never intentionally sell something to somebody who has dementia,"

5  AMP spokesman Mike Melzer said last week, adding that company sales

6  representatives were unaware of her condition when they signed her up for

7  coverage.

8  This is not the first time AMP has battled deceptive-practices allegations.

9  In a 2011 lawsuit, the Minnesota Attorney General's Office accused the company

10  of "false and deceptive tactics to sell security alarm systems door-to-door."

11  AMP in November settled the case, <u>which prohibited the company from selling</u>

12  <u>new alarm systems in the state</u>. The company also agreed to cancel systems for

13  customers who raised prior concerns about misrepresentations and deceptive

14  conduct.

15  Melzer said AMP had only billed Anderson once and would not bill her again.

16  The cancellation of AMP and Guardian contracts will save Anderson about $81

17  a month, for a total savings of about $3,940 over the life of both contracts.

18  Price said Anderson does not need an alarm system. Price said she was thankful

19  that AMP did the right thing. But she said it likely would not have happened were

20  it not for Call 12 for Action.

21  Johnson's case ended a little differently. She said she was tricked by the promise

22  of free service from a local alarm company, AMP  sales representative.

23  "I just opened the door  to this guy in my face," Johnson said last week.

24  "He kept saying it was a promotion and it was free."

25  She said the installer arrived the same afternoon, removed her existing Guardian

26  Security system and put in the new system; then he helped her sign the form

27  committing her to a contract with Guardian Protection Services Inc., compliance

28  director Joseph Shields said Friday that he was appalled by the report.

---

**NEGATIVE REVIEW #1**                **Page 2**

1   "We  absolutely don't condone any kind of illegal activity," Shields said.

2   Guardian Protection Services  monitors alarm systems for more than 250,000

3   customers and doesn't make direct sales. Shields said the company relies on

4   authorized dealers to make sales and has strict policies for dealing with complaints

5   over deceptive practices. He said when deception is suspected, their policy is to

6   make sure the customer contracts are immediately canceled, costs are charged

7   back to the dealer, and the dealer is fined.

8   In some cases, contracts with the dealer are terminated.

9   Consumer complaint websites, including Consumer Affairs and

10  Ripoff Report.com., show dozens of complaints from people alleging they were

11  deceived by AMP SECURITY  representatives. Many complaints point directly at

12  the five-year contract.

13  The Better Business Bureau gives the company an  F rating. It shows the company

14  has received 498 complaints in the past three years; 170 related to sales and

15  advertising and 263 for  product and service's. Many of these cases go on for

16  months and months and are later reported as un-resolved.

17  Johnson said she is blind in her left eye and losing sight in her right.

18  "I couldn't read the contract." Once she went over the contract with a magnifying

19  glass, she said she filed a complaint with the Maricopa County Sheriff's Office.

20  Johnson said AMP  canceled her contract within days of the installation.

21  But Guardian Protection Services  continues to send her bills, even though the

22  security system installer took all of the Guardian equipment.

23  She said she is paying about $59 each month for a security system she doesn't

24  have."All I want is my old system back," she said.

25  The aforementioned negative review was found on the internet by

26  the Plaintiff TUCK in early 2015 and copied by her from AZCentral.com

27  an Arizona based National consumer business reviewing company that is in the

28  business of posting consumer reviews on the internet.

1   By Robert Anglen The Republic | azcentral.com Mon Nov 5, 2012 11:39 PM

2   http://archive.azcentral.com/business/call12foraction/articles/20121101security-co

3   ntracts-draw-complaints.html    - "(Internet link)"

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NEGATIVE REVIEW #1**                                    **Page 4**

"Exibit F-2 + F-3"



## I. AMP SECURITY NEGATIVE REVIEW #2

AMP Security is a scam and should be reported on every TV, radio and newspaper in the country! Two young men suckered my 84 year old mother into installing their security system at her home, even though she said they needed to talk to her daughter first! They showed up at her door un-announced at 4:00 p.m. on a Saturday and within and hour, had toured her home and installed their Guardian Protection Services system. When my sister and I found out what happened it took a week to get someone from Guardian to cancel everything. We got the runaround from every person we spoke with on the phone, or we were left on hold. One person told my mother the AMP security salesmen look for homes with "No Soliciting" signs because that usually means that an elderly person lives there and most likely, they are elderly females and are an easier sale. It makes me sick there are people like Guardian Protection Services and AMP security with no ethics operating companies that are supposed to make you feel safer in your home. Actually, people with no ethics make me sick.

**{Yelp Review posted on the internet by Jane N. Of Long Beach, CA 5/20/2015}**

## I. AMP SECURITY  NEGATIVE REVIEW #3

Scammers; came by my house, told me everything would be totally free since AMP Security was testing out my area and wanted advertising. After four hours of aggressive and pushy sales pitches and having hardware installed I was totally worn down, and then I find out that I am paying $55 per month for FIVE years. Then I am told I can only cancel if I pay $1,250.00 dollars up front for early termination fee's which I cannot afford. I still have another four (4) years to go and I'm struggling to pay the monthly fee, but they could care less. FALSE sales pitch, aggressive salespeople. I felt worn down and pressured into this service!!!

///
///
///

Exibit F-2 + F-3

" Exibit G "



**JOSEPH, MANN & CREED**
*A Collection Agency*

*GUARDIAN*

8948 Canyon Falls Blvd. Suite 200, Twinsburg, OH 44087    Case 8:15-cv-01976-JLS-JCG    Document 16    Filed 11/18/15    Page 38 of 59
Telephone: 216-831-5626 ♦ Fax: 216-831-5616
Hours of operation 8:30 am - 5:30 pm EST

RE: Clarice Tuck
    And Guardian Protection Services
Client Account # : 6012236

**Balance Due: $1,288.26**

JMC Account # 8305778

April 20, 2015

Be advised that Guardian Protection Services has requested that our agency collect this account.

In regard to the above-captioned account, please note the following:

1). Guardian Protection Services has forwarded your account information to our office.

2). They advised us that they have attempted to contact you and you have not paid this account.

All checks should be made payable to Guardian Protection Services and mailed using the enclosed self-addressed envelope.

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

Consumer Unit          Ext. 2400
ContactUs@jmcbiz.com
Enclosure

JMC/ 611029407883 /4590/0002391/0010
11

PLEASE DETACH THE BOTTOM PORTION AND RETURN WITH YOUR PAYMENT – RETAIN TOP PORTION FOR YOUR RECORDS.

8948 CANYON FALLS BLVD. SUITE 200
TWINSBURG, OH  44087

JMC Account # : 8305778
Client Account # : 6012236

No Fee QuickPay @ www.jmcquickpay.com
Your Access Code : 7884672

April 20, 2015

Clarice Tuck
1600 E Vista Way Spc 110
Vista, CA  92084-3433

4820

JOSEPH, MANN & CREED
PO BOX 1270
TWINSBURG, OH  44087

"EXHIBIT 6"

" Exibit G-1 "

Exibit G-1

**AMP | SECURITY**

1291 S 820 E #300, AMERICAN FORK, UT 84006
PHONE: 801-724-7070 · FAX: 801-504-6601

NEW SYSTEM ☐ TAKEOVER   AMP ACCOUNT# 298463   CA

## AUTHORIZED DEALER MONITORING AND REPAIR AGREEMENT (MRA) AND RETAIL INSTALLMENT CONTRACT

**A) CUSTOMER INFORMATION**

THIS AGREEMENT is made this 29 day of July, 20 13 by and between Alarm Monitoring Protection, Inc. ("AMP")
and Clarice E. Tuck
("Customer") for services to be performed at Street 14000 E. 115th Way UT 8410
City N 115th State CA Zip 92084 County San Diego
Tel/Hm (760) 724 8439 ("2nd Premises") This Agreement may be guarded Guardian Protection Ser-
Email Betty.tuck@yahoo.com

**B) INSTALLATION AND MONITORING SERVICE TYPES**

COMMUNICATION: ☐ Landline  ☒ Cellular (Wireless)
ADDITIONAL SERVICES: ☒ 2-Way Voice  ☒ Total Connect  ☐ Z-Wave Automation
☐ Guard Response

**C) ONE TIME AND RECURRING FEES**

| A) ONE TIME FEES | B) MONTHLY FEES |
|---|---|
| ACTIVATION: $ | MONTHLY SERVICE FEE: $ 59.99 |
| V.I.P. SERVICE PLAN: $ 7.99 | OTHER: $ |
| INSTALLATION & EQUIPMENT: $ | OTHER: $ |
| PERMIT FEE: $ | TAXES: $ |
| TOTAL ONE TIME FEE: $ | TOTAL MONTHLY SERVICE FEE: $ 59.99 |

**D) THIRD AND EARLY TERMINATION**

**E) BILLING**

☒ i) Monthly Auto Debit: Checking Acct #: _____   ABA#: _____
☐ ii) Monthly Credit/Debit: ☐Visa ☐MC ☐DISC ☐AMEX

**F) OFFICE ONLY INFORMATION**

| CIRCUIT# | | G) SPECIAL CONDITIONS |
|---|---|---|
| CUST# | | |
| SITE# | | |
| Approval Code | | |

**H) FINANCIAL DISCLOSURE STATEMENT**

**I) SEVEN DAY ORIENTATION PERIOD**

**J) PERMITS**

**K) NOTICE OF CANCELLATION**

YOU MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE
DATE OF THIS TRANSACTION. PLEASE SEE THE ATTACHED NOTICE OF CANCELLATION FORM. IN ADDITION, YOU MAY
HAVE ADDITIONAL CANCELLATION RIGHTS WITH RESPECT TO THE SERVICES.

By: _____  By: Clarice B. Tuck   11-2-1120   7-29-13

NOTICE OF CANCELLATION of Authorized Dealer Monitoring and Repair Agreement and Authorized Dealer
Sales and Installation Agreement. RECEIPT OF THIS FORM ACKNOWLEDGED BY: _____

You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.

I HEREBY CANCEL THIS TRANSACTION.

57.34.9235

*EXHIBIT G.1*

 **greatcall.**

**Have Questions? Call our member services line at**
**800-733-6632 (tel:800-733-6632)**



Hello, CLARICE
TUCK

**Jitterbug**
760-724-9439

Account #1727605 | Logout
(/MemberSection/Login/Logout)

# Usage Details

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 2/25/2015 9:51:59 AM | In | 1 | 724-741-3500 | $0.00 | *CALL #1* |
| 2/25/2015 10:36:17 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 2/25/2015 10:59:11 AM | In | 1 | 484-668-4033 | $0.00 | *CALL #2* |
| 2/25/2015 1:07:20 PM | In | 1 | 760-310-9964 | $0.00 | |
| 2/25/2015 1:09:02 PM | Out | 2 | VOICE MAIL | $0.00 | |
| 2/25/2015 1:10:51 PM | Out | 2 | VOICE MAIL | $0.00 | |
| 2/26/2015 10:12:31 AM | Out | 2 | 760-510-3996 | $0.00 | |
| 2/26/2015 10:16:02 AM | Out | 1 | 760-724-5800 | $0.00 | |
| 2/26/2015 10:20:52 AM | Out | 4 | 760-940-1700 | $0.00 | |
| 2/26/2015 10:31:55 AM | Out | 5 | 760-757-7546 | $0.00 | |
| 2/26/2015 10:53:46 AM | In | 3 | 760-510-3996 | $0.00 | |
| 2/26/2015 11:08:33 AM | Out | 2 | 800-726-5648 | $0.00 | |
| 2/26/2015 12:59:08 PM | In | 3 | 760-840-1551 | $0.00 | |
| 2/26/2015 1:02:06 PM | In | 1 | 760-840-1551 | $0.00 | |
| 2/26/2015 1:39:41 PM | In | 1 | 484-668-4033 | $0.00 | *CALL #3* |
| 2/26/2015 2:36:50 PM | In | 1 | 724-741-3500 | $0.00 | *CALL #4* |
| 2/26/2015 2:37:39 PM | Out | 2 | VOICE MAIL | $0.00 | |

*"EXHIBIT H"*

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 2/26/2015 7:25:13 PM | In | 1 | 760-518-9090 | $0.00 | |
| 2/27/2015 9:48:07 AM | Out | 1 | 760-330-6173 | $0.00 | |
| 2/27/2015 10:06:57 AM | Out | 2 | 760-726-1909 | $0.00 | |
| 2/27/2015 12:40:01 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 2/27/2015 2:36:47 PM | In | 1 | 724-741-3500 | $0.00 | CALL #5 |
| 2/27/2015 2:38:12 PM | Out | 2 | 760-310-9964 | $0.00 | |
| 2/27/2015 4:05:00 PM | In | 14 | 760-840-1551 | $0.00 | |
| 2/27/2015 6:31:06 PM | In | 2 | 760-758-2008 | $0.00 | |
| 2/27/2015 7:01:17 PM | Out | 5 | 800-726-5648 | $0.00 | |
| 2/28/2015 10:41:07 AM | Out | 4 | 800-654-6100 | $0.00 | |
| 2/28/2015 11:31:56 AM | Out | 1 | 800-543-2644 | $0.00 | |
| 2/28/2015 2:36:57 PM | In | 1 | 724-741-3500 | $0.00 | CALL #6 |
| 3/1/2015 11:01:21 AM | In | 5 | 760-840-1551 | $0.00 | |
| 3/1/2015 2:37:04 PM | In | 1 | 724-741-3500 | $0.00 | CALL #7 |
| 3/2/2015 9:35:41 AM | Out | 2 | 760-330-6173 | $0.00 | |
| 3/2/2015 12:15:05 PM | In | 1 | 484-668-4033 | $0.00 | CALL #8 |
| 3/2/2015 1:04:42 PM | Out | 20 | 800-543-2644 | $0.00 | |
| 3/2/2015 2:37:02 PM | In | 1 | 724-741-3500 | $0.00 | CALL #9 |
| 3/2/2015 4:01:47 PM | Out | 1 | 760-726-1990 | $0.00 | |
| 3/2/2015 4:04:04 PM | Out | 2 | 760-726-1909 | $0.00 | |
| 3/3/2015 11:26:05 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/3/2015 11:37:22 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/3/2015 3:04:34 PM | Out | 1 | VOICE MAIL | $0.00 | |

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 3/3/2015 3:05:00 PM | Out | 4 | VOICE MAIL | $0.00 |
| 3/3/2015 4:22:28 PM | In | 1 | 760-440-3680 | $0.00 |
| 3/4/2015 10:28:31 AM | In | 1 | 760-310-9964 | $0.00 |
| 3/4/2015 12:17:17 PM | In | 1 | 484-668-4033 | $0.00 |
| 3/4/2015 2:37:12 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/5/2015 2:37:18 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/5/2015 3:13:43 PM | In | 1 | 712-823-0500 | $0.00 |
| 3/6/2015 9:15:25 AM | Out | 2 | 760-758-2008 | $0.00 |
| 3/6/2015 11:24:07 AM | In | 4 | 760-840-1551 | $0.00 |
| 3/6/2015 12:06:36 PM | In | 2 | 760-757-7546 | $0.00 |
| 3/6/2015 1:17:29 PM | In | 1 | 760-631-3062 | $0.00 |
| 3/6/2015 6:31:04 PM | In | 2 | 760-758-2008 | $0.00 |
| 3/7/2015 2:37:23 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/7/2015 5:19:53 PM | In | 7 | 760-840-1551 | $0.00 |
| 3/7/2015 5:26:25 PM | In | 2 | 760-840-1551 | $0.00 |
| 3/8/2015 3:37:22 PM | In | 2 | 724-741-3500 | $0.00 |
| 3/9/2015 12:01:45 PM | In | 3 | 760-330-6173 | $0.00 |
| 3/9/2015 12:26:04 PM | In | 1 | 212-545-1215 | $0.00 |
| 3/9/2015 3:23:42 PM | Out | 2 | 760-726-1909 | $0.00 |
| 3/10/2015 12:15:56 PM | Out | 2 | 760-310-9964 | $0.00 |
| 3/10/2015 2:48:21 PM | In | 1 | 661-839-6469 | $0.00 |
| 3/10/2015 3:26:42 PM | In | 12 | 760-840-1551 | $0.00 |
| 3/10/2015 3:30:36 PM | In | 1 | 760-440-3680 | $0.00 |

Call #10
Call #11
Call #12
CALL #13
CALL #14

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/10/2015 3:37:28 PM | In | 2 | 724-741-3500 | $0.00 | CALL #15 |
| 3/10/2015 3:39:46 PM | Out | 3 | VOICE MAIL | $0.00 | |
| 3/10/2015 4:13:31 PM | In | 9 | 661-839-6469 | $0.00 | |
| 3/10/2015 5:54:20 PM | Out | 7 | 760-840-1551 | $0.00 | |
| 3/11/2015 10:38:32 AM | In | 3 | 760-840-1551 | $0.00 | |
| 3/11/2015 1:14:51 PM | In | 1 | 760-840-1551 | $0.00 | |
| 3/11/2015 3:37:42 PM | In | 1 | 724-741-3500 | $0.00 | CALL #16 |
| 3/11/2015 6:53:49 PM | In | 1 | 484-668-4033 | $0.00 | CALL #17 |
| 3/12/2015 10:55:19 AM | In | 2 | 760-840-1551 | $0.00 | |
| 3/12/2015 11:21:02 AM | In | 1 | 760-840-1551 | $0.00 | |
| 3/12/2015 11:58:39 AM | In | 2 | 619-235-6560 | $0.00 | |
| 3/12/2015 12:22:29 PM | In | 2 | 760-310-9964 | $0.00 | |
| 3/12/2015 12:53:44 PM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/12/2015 2:34:47 PM | Out | 3 | VOICE MAIL | $0.00 | |
| 3/12/2015 3:37:43 PM | In | 1 | 724-741-3500 | $0.00 | CALL #18 |
| 3/12/2015 6:04:13 PM | In | 1 | 484-668-4033 | $0.00 | CALL #19 |
| 3/13/2015 12:02:52 PM | In | 1 | 760-310-9964 | $0.00 | |
| 3/13/2015 12:04:31 PM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/13/2015 3:37:42 PM | In | 1 | 724-741-3500 | $0.00 | CALL #20 |
| 3/14/2015 9:04:11 AM | In | 2 | 760-724-5800 | $0.00 | |
| 3/14/2015 11:44:28 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/14/2015 11:54:53 AM | In | 2 | 760-840-1551 | $0.00 | |
| 3/14/2015 3:37:47 PM | In | 1 | 724-741-3500 | $0.00 | CALL #21 |

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/15/2015 3:38:01 PM | In | 1 | 724-741-3500 | $0.00 | CALL #22 |
| 3/16/2015 7:28:09 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/16/2015 7:29:23 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/16/2015 7:36:28 AM | In | 4 | 760-310-9964 | $0.00 | |
| 3/16/2015 10:25:56 AM | In | 2 | 760-840-1551 | $0.00 | |
| 3/16/2015 12:24:22 PM | In | 2 | 760-310-9964 | $0.00 | |
| 3/16/2015 2:19:41 PM | Out | 4 | 760-724-9000 | $0.00 | |
| 3/16/2015 2:27:11 PM | In | 1 | 760-726-1907 | $0.00 | |
| 3/16/2015 3:38:05 PM | In | 1 | 724-741-3500 | $0.00 | CALL #23 |
| 3/16/2015 4:06:40 PM | In | 11 | 760-840-1551 | $0.00 | |
| 3/17/2015 3:46:07 PM | Out | 4 | VOICE MAIL | $0.00 | |
| 3/17/2015 6:18:46 PM | In | 1 | 858-277-0000 | $0.00 | |
| 3/18/2015 11:47:54 AM | In | 1 | 484-668-4033 | $0.00 | CALL #24 |
| 3/18/2015 12:50:22 PM | In | 1 | 800-555-1212 | $0.00 | |
| 3/18/2015 3:11:50 PM | In | 1 | 760-743-8784 | $0.00 | |
| 3/18/2015 3:38:20 PM | In | 1 | 724-741-3500 | $0.00 | CALL #25 |
| 3/18/2015 5:56:38 PM | In | 13 | 760-840-1551 | $0.00 | |
| 3/19/2015 9:43:09 AM | In | 1 | 484-668-4033 | $0.00 | CALL #26 |
| 3/19/2015 11:02:41 AM | Out | 2 | 760-310-9964 | $0.00 | |
| 3/19/2015 11:24:25 AM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/19/2015 3:38:46 PM | In | 1 | 760-840-1551 | $0.00 | |
| 3/19/2015 3:39:26 PM | In | 4 | 760-840-1551 | $0.00 | |
| 3/19/2015 4:02:09 PM | Out | 3 | VOICE MAIL | $0.00 | |

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/20/2015 9:30:56 AM | In | 1 | 760-631-3060 | $0.00 | |
| 3/20/2015 3:38:41 PM | In | 1 | 724-741-3500 | $0.00 | CALL #27 |
| 3/21/2015 8:44:30 AM | In | 1 | 724-741-3500 | $0.00 | CALL #28 |
| 3/21/2015 9:33:08 AM | In | 7 | 760-840-1551 | $0.00 | |
| 3/21/2015 12:14:22 PM | In | 1 | 703-272-4699 | $0.00 | |
| 3/21/2015 3:42:55 PM | Out | 2 | VOICE MAIL | $0.00 | |
| 3/22/2015 10:20:40 AM | Out | 7 | 661-946-9000 | $0.00 | |
| 3/22/2015 3:50:24 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/22/2015 4:21:22 PM | In | 1 | 619-260-6110 | $0.00 | |
| 3/22/2015 5:27:24 PM | In | 1 | 760-840-1551 | $0.00 | |
| 3/23/2015 9:16:45 AM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/23/2015 9:19:33 AM | In | 7 | 760-840-1551 | $0.00 | |
| 3/23/2015 9:51:24 AM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/23/2015 11:51:09 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/23/2015 12:38:15 PM | In | 2 | 760-840-1551 | $0.00 | |
| 3/23/2015 3:39:00 PM | In | 1 | 724-741-3500 | $0.00 | CALL #29 |
| 3/24/2015 9:45:52 AM | In | 1 | 484-868-4033 | $0.00 | CALL #30 |
| 3/24/2015 10:20:14 AM | In | 1 | 760-724-6650 | $0.00 | |
| 3/24/2015 1:51:20 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/24/2015 4:50:10 PM | In | 1 | 724-741-3500 | $0.00 | CALL #31 |
| 3/24/2015 4:51:01 PM | Out | 4 | VOICE MAIL | $0.00 | |



**Have Questions? Call our member services line at
800-733-6632 (tel:800-733-6632)**



Hello, CLARICE
TUCK
**Jitterbug**
760-724-9439

Account #1727605 | Logout
(/MemberSection/Login/Logout)

# Usage Details

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/25/2015 9:50:51 AM | Out | 1 | 760-639-6161 | $0.00 | |
| 3/25/2015 1:05:39 PM | In | 2 | 760-941-0140 | $0.00 | |
| 3/25/2015 1:21:14 PM | In | 5 | 760-840-1551 | $0.00 | |
| 3/25/2015 2:33:37 PM | In | 2 | 760-888-7418 | $0.00 | |
| 3/25/2015 2:48:24 PM | Out | 2 | VOICE MAIL | $0.00 | |
| 3/25/2015 2:51:08 PM | Out | 5 | 888-272-8394 | $0.00 | |
| 3/25/2015 2:56:33 PM | Out | 2 | 760-847-4101 | $0.00 | |
| 3/25/2015 2:59:12 PM | Out | 1 | 760-639-6161 | $0.00 | |
| 3/25/2015 3:18:49 PM | In | 2 | 760-847-4101 | $0.00 | |
| 3/25/2015 4:50:20 PM | In | 1 | 724-741-3500 | $0.00 | CALL #32 |
| 3/26/2015 4:50:27 PM | In | 1 | 724-741-3500 | $0.00 | CALL #33 |

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/27/2015 11:01:28 AM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/27/2015 11:15:20 AM | In | 1 | 760-310-9964 | $0.00 | |
| 3/27/2015 11:19:00 AM | In | 2 | 760-840-1551 | $0.00 | |
| 3/27/2015 12:23:21 PM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/27/2015 4:50:37 PM | In | 1 | 724-741-3500 | $0.00 | CALL #34 |
| 3/27/2015 5:04:41 PM | In | 10 | 661-839-6469 | $0.00 | |
| 3/27/2015 6:25:44 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/28/2015 1:10:38 PM | In | 1 | 513-940-1370 | $0.00 | |
| 3/28/2015 1:24:50 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/28/2015 4:50:37 PM | In | 1 | 724-741-3500 | $0.00 | CALL #35 |
| 3/29/2015 10:04:31 AM | In | 5 | 760-840-1551 | $0.00 | |
| 3/29/2015 10:38:23 AM | In | 2 | 760-310-9964 | $0.00 | |
| 3/29/2015 11:45:31 AM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/29/2015 11:57:32 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/29/2015 5:02:58 PM | Out | 5 | VOICE MAIL | $0.00 | |

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/30/2015 3:55:00 PM | In | 8 | 760-840-1551 | $0.00 | |
| 3/30/2015 4:03:01 PM | In | 2 | 760-840-1551 | $0.00 | |
| 3/30/2015 4:50:44 PM | In | 1 | 724-741-3500 | $0.00 | *CALL #36* |
| 3/31/2015 5:08:26 PM | Out | 2 | VOICE MAIL | $0.00 | |
| 4/1/2015 9:10:04 AM | Out | 1 | 760-945-7387 | $0.00 | |
| 4/1/2015 11:24:41 AM | In | 3 | 619-236-1058 | $0.00 | |
| 4/1/2015 11:38:15 AM | In | 1 | 760-945-7387 | $0.00 | |
| 4/1/2015 12:04:54 PM | Out | 1 | 760-840-1551 | $0.00 | |
| 4/1/2015 12:38:41 PM | Out | 11 | 760-941-4266 | $0.00 | |
| 4/1/2015 3:26:12 PM | In | 2 | 760-840-1551 | $0.00 | |
| 4/1/2015 4:09:26 PM | In | 1 | 760-547-0217 | $0.00 | |
| 4/1/2015 4:50:54 PM | In | 1 | 724-741-3500 | $0.00 | *CALL #37* |
| 4/2/2015 9:33:05 AM | In | 1 | - | $0.00 | |
| 4/2/2015 10:43:39 AM | Out | 3 | 888-272-8394 | $0.00 | |
| 4/2/2015 1:59:13 PM | In | 24 | 323-867-9737 | $0.00 | |
| 4/2/2015 4:55:48 PM | In | 1 | 619-236-1058 | $0.00 | |
| 4/2/2015 4:58:04 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 4/2/2015 4:58:18 PM | In | 1 | 619-236-1058 | $0.00 | |

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 4/2/2015 5:06:09 PM | Out | 4 | VOICE MAIL | $0.00 |
| 4/2/2015 6:15:45 PM | In | 18 | 760-840-1551 | $0.00 |
| 4/2/2015 7:10:22 PM | Out | 8 | 760-840-1551 | $0.00 |
| 4/3/2015 8:13:15 AM | In | 1 | 760-310-9964 | $0.00 |
| 4/3/2015 9:05:21 AM | Out | 1 | 760-724-5800 | $0.00 |
| 4/3/2015 9:28:10 AM | Out | 1 | 888-272-6053 | $0.00 |
| 4/3/2015 9:29:50 AM | Out | 2 | 951-764-6053 | $0.00 |
| 4/3/2015 9:31:57 AM | Out | 2 | 888-272-8394 | $0.00 |
| 4/3/2015 9:34:04 AM | Out | 1 | 619-236-0616 | $0.00 |
| 4/3/2015 9:35:26 AM | Out | 1 | 760-724-5800 | $0.00 |
| 4/3/2015 11:19:41 AM | Out | 2 | 760-724-5800 | $0.00 |
| 4/3/2015 12:25:13 PM | In | 1 | 619-241-3520 | $0.00 |
| 4/3/2015 3:43:00 PM | Out | 3 | VOICE MAIL | $0.00 |
| 4/3/2015 4:51:09 PM | In | 1 | 724-741-3500 | $0.00 |
| 4/3/2015 5:44:00 PM | Out | 11 | 760-840-1551 | $0.00 |
| 4/3/2015 5:58:32 PM | Out | 4 | 760-840-1551 | $0.00 |
| 4/4/2015 12:20:57 PM | In | 2 | 760-840-1551 | $0.00 |
| 4/4/2015 2:20:27 PM | Out | 2 | VOICE MAIL | $0.00 |
| 4/4/2015 2:22:18 PM | Out | 2 | VOICE MAIL | $0.00 |
| 4/4/2015 2:28:29 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/4/2015 2:30:17 PM | Out | 2 | VOICE MAIL | $0.00 |
| 4/4/2015 2:33:39 PM | Out | 3 | VOICE MAIL | $0.00 |

CALL #38

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 4/9/2015 11:03:19 AM | In | 1 | 858-764-3680 | $0.00 |
| 4/9/2015 5:07:48 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/10/2015 9:11:31 AM | In | 1 | 760-310-9964 | $0.00 |
| 4/10/2015 1:21:26 PM | Out | 5 | 760-840-1551 | $0.00 |
| 4/10/2015 2:50:15 PM | In | 1 | 760-310-9964 | $0.00 |
| 4/10/2015 2:51:22 PM | In | 1 | 760-847-4101 | $0.00 |
| 4/10/2015 4:40:57 PM | In | 1 | 760-310-9964 | $0.00 |
| 4/10/2015 4:58:54 PM | In | 2 | 760-310-9964 | $0.00 |
| 4/10/2015 8:11:27 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/11/2015 1:21:52 PM | In | 5 | 760-840-1551 | $0.00 |
| 4/12/2015 6:27:34 AM | Out | 1 | VOICE MAIL | $0.00 |
| 4/12/2015 10:52:13 AM | Out | 3 | 760-840-1551 | $0.00 |
| 4/12/2015 4:52:32 PM | In | 1 | 724-741-3500 | $0.00 |
| 4/13/2015 10:20:43 AM | In | 2 | 760-840-1551 | $0.00 |
| 4/13/2015 10:28:30 AM | Out | 4 | 323-254-1700 | $0.00 |

CALL #39

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 4/17/2015 10:31:47 AM | In | 8 | 760-840-1551 | $0.00 |
| 4/17/2015 11:00:56 AM | Out | 1 | 760-310-9964 | $0.00 |
| 4/17/2015 11:19:38 AM | Out | 2 | 760-840-1551 | $0.00 |
| 4/17/2015 4:31:16 PM | In | 29 | 480-993-9912 | $0.00 |
| 4/17/2015 4:52:56 PM | In | 2 | 724-741-3500 | $0.00 |
| 4/17/2015 5:01:03 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/18/2015 5:05:58 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/18/2015 7:42:04 PM | In | 1 | 760-840-1551 | $0.00 |
| 4/19/2015 9:52:52 AM | Out | 1 | VOICE MAIL | $0.00 |
| 4/19/2015 9:53:55 AM | Out | 3 | 760-840-1551 | $0.00 |
| 4/19/2015 1:24:16 PM | Out | 1 | 760-726-7794 | $0.00 |
| 4/19/2015 1:48:50 PM | In | 38 | 760-726-7794 | $0.00 |
| 4/20/2015 8:41:50 AM | Out | 2 | VOICE MAIL | $0.00 |
| 4/20/2015 8:43:04 AM | Out | 3 | 760-840-1551 | $0.00 |
| 4/20/2015 8:44:16 AM | In | 1 | 360-807-5350 | $0.00 |

CALL #40

**AMP** SECURITY

1201 S 820 E #500, AMERICAN FORK, UT 84003
PHONE: 801-734-7070 • FAX: 801-356-6601

☐ NEW SYSTEM   ☐ TAKEOVER   AMP ACCOUNT#: _____

**CA**

Guardian LIC # ACO 6464; ACO 5365; Alw7 LIC # ACO 5614
Regulated by the Bureau of Security and Investigative
Services, Department of Consumer Affairs, P.O. Box 980085,
West Sacramento, CA 95798-0052 (1-800-952-5210)

## AUTHORIZED DEALER MONITORING AND REPAIR AGREEMENT (MRA) AND RETAIL INSTALLMENT CONTRACT

**A) CUSTOMER INFORMATION**

THIS AGREEMENT is made this ___ day of _____, 20 ___ 13 by and between Alarm Monitoring Protection, Inc. ("AMP")
and Crystal E. Tuck _____

("Customer") for services to be performed at Street 16601 E. Alisha Way, Unit 110
City N. Stana ___ State CA Zip 92084 County San Diego
Tel/Bus (760) 724-9439 _____ ("the Premises"). This Agreement may be assigned to Guardian Protection Services, Inc. ("Guardian") AMP and Guardian are sometimes referred to as "Company", "We", "Us" or "Our". Customer is sometimes referred to as "You" or "Your".
Email betty.tuck@yahoo.com

If the initial services will be subcontracted, the subcontractor's information is set forth below:
Name: _____ Tel. No.: _____ Physical Address: _____

**B) INSTALLATION AND MONITORING SERVICE TYPES (CHECK and/or INITIAL ALL THAT APPLY)** (the "System")

COMMUNICATION:   ☐ Landline   ☑ Cellular (Alarmnet) _____
ADDITIONAL SERVICES:   ☐ 2-Way Voice   ☐ Total Connect _____   ☐ TC Plus   ☐ Z-Wave Automation _____   ☐ Z-Wave Enhanced _____
   ☐ Guard Response _____   ☐ Carbon Monoxide _____   ☐ Video Cameras _____

By initialing above, You acknowledge receiving and reading the appropriate terms and conditions in Section 2 and 3 and/or Addenda to this Agreement. You agree that You have designed and chosen the System and You understand that additional or different protection may be available for a higher price.

**C) ONE-TIME AND RECURRING FEES**
You agree to pay AMP and/or Guardian the following fees as indicated below:

| I) ONE TIME FEES* | | II) MONTHLY FEES | |
|---|---|---|---|
| ACTIVATION: $ _____ | 159 | MONTHLY SERVICE FEE: $ | 57.99 |
| V.I.P. SERVICE PLAN: $ _____ ☐ ACSM | | OTHER: $ | |
| INSTALLATION & EQUIPMENT: $ _____ | | | |
| PERMIT FEE: $ _____ | | TAXES: $ | |
| TOTAL ONE TIME FEES: $ _____ | | TOTAL MONTHLY SERVICE FEE: $ 57.99 | |

**D) TERMS AND CANCELLATION**

The initial term of this Agreement is 60 months. Customer Initials _____

**F) BILLING**

☐ Monthly Auto Debit: Checking Acct / _____
☐ Monthly Credit/Debit: ☐ Visa ☐ MC ☐ Disc ☐ AmEx   Name on CC: _____
☐ Bill Other: _____   Acct# | | | | | | | | | | | |   Exp: | | | |   Security Code: | | | |

**F) OFFICE ONLY INFORMATION** | **G) SPECIAL CONDITIONS**

| CIRC# | Work Start Date: |
| CUST# | Work Completion Date: |
| SITE# | Score: |
| Approval Code | Dealer: |

**H) FINANCIAL DISCLOSURE STATEMENT**
THERE IS NO FINANCE CHARGE OR COST OF CREDIT (0% APR) ASSOCIATED WITH THIS CONTRACT

**I) SEVEN DAY OPERATION PERIOD**

**J) PERMITS**

**K) NOTICE OF CANCELLATION**
YOU MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. PLEASE SEE THE ATTACHED NOTICE OF CANCELLATION FORM. IN ADDITION, YOU MAY HAVE ADDITIONAL CANCELLATION RIGHTS WITH RESPECT TO THE SERVICES.

**L) SIGNATURES**
NOTICE TO BUYER: DO NOT SIGN THIS MRA BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. YOU ARE ENTITLED TO RECEIVE A COMPLETELY FILLED-IN COPY OF THIS MRA SIGNED BY US BEFORE ANY WORK MAY BE DONE TO THE EXTENT YOU AUTHORIZE WORK TO BE PERFORMED PRIOR TO RECEIVING A WRITTEN COPY OF THIS AGREEMENT, YOU ACKNOWLEDGE THAT DOING SO WAS AS A CONVENIENCE TO YOU AND THAT YOUR ONLY RECOURSE IS TO ASK US TO DELIVER A WRITTEN COPY OF THE AGREEMENT TO YOU PROMPTLY UPON RECEIVING SUCH REQUEST.

BY: _____   _____   11-23-13   7-09-13

COMPANY REPRESENTATIVE SIGNATURE    CUSTOMER SIGNATURE    DATE OF MRA    DATE OF INSTALL

WHITE: COMPANY     YELLOW: CUSTOMER     PINK: CUSTOMER     CP-DF-MAP MRA Revision 4/13

---

## NOTICE OF CANCELLATION of Authorized Dealer Monitoring and Repair Agreement and Authorized Dealer Sales and Installation Agreement. RECEIPT OF THIS FORM ACKNOWLEDGED BY: _____

You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date. If You cancel, any property traded in, any payments made by You under the contract or sale, and any negotiable instrument executed by You will be returned within TEN BUSINESS DAYS following receipt by Us of Your cancellation notice, and any security interest arising out of the transaction will be cancelled. If You cancel, You must make available to Us at Your residence, in substantially as good condition as when received, any goods delivered to You under this contract or sale, or You may, if You wish, comply with Our instructions regarding the return shipment of the goods at Our expense and risk. If You do make the goods available to Us and We do not pick them up within twenty (20) days of the date of Your Notice of Cancellation, You may retain or dispose of the goods without any further obligation. If You fail to make the goods available to Us, or if You agree to return the goods to Us and fail to do so, then You remain liable for performance of all obligations under the contract. To cancel this transaction, mail or deliver a signed and dated copy of this Notice of Cancellation or any other written notice, or send a telegram, to AMP Security, LLC, 1261 S.820.E.#300, AMERICAN FORK, UTAH 84003, FAX: 801-356-6601, NOT LATER THAN MIDNIGHT OF _____ (date), AMP ACCOUNT # _____

I HEREBY CANCEL THIS TRANSACTION: _____   _____
                                    CUSTOMER SIGNATURE        DATE

EXHIBIT I

" Exibit J "

Exibit J



GUARDIAN
protection services
*One of the Armstrong Group of Companies*



April 06, 2015

CLARICE TUCK
1600 E VISTA WAY
UNIT 110
VISTA, CA 92084

Dear Valued Customer:

We are unable to honor your request to cancel monitoring service at this time. We have enclosed a copy of your current monitoring agreement for your review. Please note that this agreement is not due to renew until **8/17/18.** Your system was sold as a package that included the monitoring agreement; therefore, Guardian Protection Services will continue to monitor your system.

If you are having a service related problem with your system or we can be of other assistance, please do not hesitate to call us. Our customer base of over 180,000 accounts shows our commitment to satisfying customers. We will do everything we can to help you.

Sincerely,

*Alycia Lyons*

Alycia Lyons
Customer Service Department

hjh

Enclosure

Account # 6012236

174 THORN HILL ROAD • WARRENDALE, PA 15086 • (724) 741-3500 • FAX (724) 741-3540

EXHIBIT J

"Exibit K"



Clarice Tuck
1600 E. Vista Way #110
Vista, CA  92084
Ph: 760-724-9439

FILED

JUN 2 3 2015

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In Pro Se

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

CLARICE TUCK,                              ) CASE NO:
                                          )
              Plaintiff,                   )        15CV1376 JLS JLB
                                          )
        vs.                               ) **CONSUMER NOTICE OF**
                                          ) **DISPUTE OF DEBT**
GUARDIAN PROTECTION SERVICES, INC         )
CHARLES D. SCHOLZ Division Council,       )
Does 1-25,                                )
                                          )
              Defendants,                  )
                                          )

## CONSUMER NOTICE OF DISPUTE OF DEBT

COMES NOW, CLARICE E. TUCK, pursuant to 15 U.S.C. §1692g, Fair Debt Collection

Practices Act(F.D.C.P.A.) hereby disputes the alleged $1,288.26 debt the Defendant claims

that I the Plaintiff CLARICE E. TUCK owes in the above-entitled matter.

**THEREFORE,** this NOTICE shall be deemed a request/demand for "verification" and

debt validation request as defined by 15 U.S.C. §1692(g) (1) (2) (5) (b),

and California Consumer Protection Statutes/Laws.

Plaintiff CLARICE TUCK hereby requests validation pursuant to 15 U.S.C. 1692 *et seq.*

SPECIFICALLY, I dispute as to the identity of the true owner(s) (if any) of this same

alleged $1,288.26 dollar debt, the alleged $1,288.26 amount due and owing. I dispute all

signatures on the Defendant's unauthenticated hearsay documents, and the Defendant's alleged

authority and capacity to collect and/or sue on behalf of the same. The Defendant's in the above-

entitled case are "debt collectors" as that term is defined by 15 U.S.C. 1692a(3).

EXHIBIT K

CONSUMER NOTICE OF DISPUTE OF DEBT      plaintiff copy        PAGE 1

" Exibit K-1 "



1      GUARDIAN PROTECTION SERVICES, INC. is attempting to collect a

2  "household debt" as that  is defined by 15 U.S.C. §1692a(5).

3      **LASTLY**, Plaintiff CLARICE TUCK upon viewing my consumer credit reports whereby

4  it was revealed that the Defendant's are reporting an alleged negative report in the amount of

5  $1,288.26.

6      I, CLARICE TUCK, hereby request the Defendant to delete the inaccurate information

7  immediately pursuant to 15 U.S.C. §1681 et, al.

8  Parties must comply with the requests herein in a timely manner and completely.

9  Failure to provide the above-requested documentation will result in the Plaintiff CLARICE TUCK

10  filing a claim for all damages and all court costs accordingly.

11

12  Dated: _6-23-15_____.

13

14            _Clarice E. Tuck_____

15            CLARICE E. TUCK

16

17

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

EXHIBIT K, 1

CONSUMER NOTICE OF DISPUTE OF DEBT          PAGE 2