Robert M. Linn (State Bar # 190387)
rlinn@cohenlaw.com
COHEN & GRIGSBY, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Phone: (412) 297-4900
Fax: (412) 209-0672

Attorneys for Defendant
Guardian Protection Services, Inc.

---

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

---

| | | |
|---|---|---|
| CLARICE TUCK, | ) | CASE NO. 15-CV-1376-JLS(JLB) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF POINTS** |
| v. | ) | **AND AUTHORITIES IN** |
| | ) | **SUPPORT OF MOTION TO** |
| GUARDIAN PROTECTION | ) | **DISMISS FOR FAILURE TO** |
| SERVICES, INC., | ) | **STATE A CLAIM** |
| | ) | |
| Defendant. | ) | |
| | ) | Date:     January 21, 2016 |
| | ) | Time:     1:30 p.m. |
| | ) | Ctrm:     4A |
| | ) | Judge:    Hon. Janis L. Sammartino |
| | ) | |

-i-

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................. 1

II.    FACTS ........................................................... 2

III.   STANDARD OF REVIEW ................................. 3

IV.    DISCUSSION .................................................. 3

     A.     Plaintiff's Amended Complaint Makes Clear That Her Claims Are Merely a Subterfuge Through Which Plaintiff Hopes to Address a Grievance With Guardian's Authorized Dealer. ..................................................................... 3

     B.     Plaintiff Has Failed to State a Claim Under the Telephone Consumer Protection Act. ........................................... 6

          1.     Plaintiff provided express written consent to receive the calls. ................................................................. 6

          2.     Plaintiff has failed to allege the use of an automatic telephone dialing system or an artificial or prerecorded voice. ................................................................... 9

     C.     Plaintiff Has Failed to State a Claim Under the Federal Fair Debt Collection Practices Act. ................................... 12

          1.     Plaintiff's claims under the Federal Fair Debt Collection Practices Act must be dismissed because Plaintiff has failed to allege that Guardian is a "debt collector" within the meaning of the Act ................... 12

          2.     Plaintiff has not alleged a violation of § 15 U.S.C. § 1692c(a)(1) ....................................................... 15

          3.     Plaintiff failed to state a claim for violation of 15 U.S.C. § 1692d(5). ........................................... 16

          4.     Plaintiff has failed to state a claim for violation of 15 U.S.C. § 1692d(6). ........................................... 17

-ii-

**Page**

     5.      Plaintiff has failed to state a claim for violation of
15 U.S.C. § 1692e(10). ................................................................ 18

    D.     Plaintiff Has Failed to State a Claim Under the California
Rosenthal Fair Debt Collection Practices Act. ....................................... 19

V.     CONCLUSION ................................................................................ 21

-iii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Arteaga v. Asset Acceptance, LLC, 733 F. Supp. 2d 1218 (E.D. Cal.
    2010)........................................................................................16, 20

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..................................................3, 20

Baird v. Sabre Inc., 995 F. Supp. 2d 1100 (C.D. Cal. 2014).........................8

Flores v. Adir Int'l, LLC, No. CV1500076ABPLAX, 2015 WL 4340020
    (C.D. Cal. July 15, 2015)...........................................................10, 11

Ibey v. Taco Bell Corp., No. 12-CV-0583-H WVG, 2012 WL 2401972
    (S.D. Cal. June 18, 2012) .............................................................6, 11

Knutson v. Reply!, Inc., No. 10-CV-1267 BEN WMC, 2011 WL 291076
    (S.D. Cal. Jan. 27, 2011) ...................................................................9

Reardon v. Uber Techs., Inc., No. 14-CV-05678-JST, 2015 WL 4451209
    (N.D. Cal. July 19, 2015) ..................................................................6

Rosal v. First Federal Bank of California, 671 F.Supp.2d 1111 (N.D. Cal.
    2009)........................................................................................19, 20

Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204 (9th Cir. 2013) ...............13, 14, 15

Schulz v. Cisco Webex, LLC, No. 13-CV-04987-BLF, 2014 WL 2115168
    (N.D. Cal. May 20, 2014)...................................................................4

Steckman v. Hart Brewing, Inc., 143 F.3d 1293 (9th Cir. 1998) ..................7

The Missing Link, Inc. v. eBay, Inc., No. C-07-04487 RMW, 2008 WL
    1994886 (N.D. Cal. May 5, 2008)......................................................4

**Statutes**

15 U.S.C. § 1692................................................................................12

15 U.S.C. § 1692a(6) .........................................................................13

15 U.S.C. § 1692c(a) ..........................................................................15

-iv-

**Page(s)**

15 U.S.C. § 1692c(a)(1) ..................................................................... 12, 15, 16

15 U.S.C. § 1692d ..................................................................................... 17

15 U.S.C. § 1692d(5) ...................................................................... 12, 16, 17

15 U.S.C. § 1692d(6) ............................................................................ 12, 17

15 U.S.C. § 1692e(10) .......................................................................... 12, 18

47 U.S.C. § 227 ........................................................................................... 6

47 U.S.C. § 227(a)(1) ........................................................................... 9, 10

47 U.S.C. § 227(b)(1)(A) ............................................................. 6, 8, 9, 11

**Other Authorities**

7 F.C.C. Rcd. 8752 (1992) ....................................................................... 11

23 F.C.C. Rcd. 559 (2008) ......................................................................... 8

Cal. Civ. Code § 1788 .............................................................................. 19

Cal. Civ. Code § 1788.2(c) ...................................................................... 20

Cal. Civ. Code § 1788.11 ......................................................................... 20

Cal. Civ. Code § 1788.11(d) .................................................................... 19

Cal. Civ. Code § 1788.17 .................................................................. 19, 20

-v-

### <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

Defendant Guardian Protection Services, Inc. ("Defendant" or "Guardian"), by and through its attorneys, Cohen & Grigsby, P.C., files the following Memorandum of Points and Authorities in Support of Motion to Dismiss for Failure to State a Claim in response to the Amended Complaint filed by Plaintiff Clarice Tuck ("Plaintiff").

## I.      <u>INTRODUCTION</u>

After unsuccessfully attempting to obtain a waiver of the early-termination fee required under her contract, Plaintiff filed this action against Guardian.  Although the allegations in Plaintiff's Amended Complaint — and the exhibits thereto — clearly show that the automated phone calls that Plaintiff received were made with her express written permission in connection with the monitoring services that she had purchased, Plaintiff bases her claims on federal statutes that proscribe unfair debt collection practices and "automatic dialer" telemarketing calls, neither of which has any application to the facts alleged.  Moreover, her Amended Complaint consists largely of vague and conclusory allegations that parrot the statutory language without any factual support whatsoever, failing to satisfy even the minimal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Since Plaintiff has utterly failed to state a single claim upon which relief may be granted, her Amended Complaint should be swiftly dismissed in its entirety, with prejudice.

-1-

## II.   <u>FACTS</u>

Plaintiff purchased home-security services from AMP Security, an authorized dealer of products and services sold by Guardian Protection Services, Inc. ("Guardian").  Amended Complaint, Exs. C, G-1.  The Monitoring Agreement stated that it could be assigned to Guardian without notice to Plaintiff.  Ex. A, Monitoring Agreement, ¶ 10.  Plaintiff designated her cellular phone number — the very number Plaintiff claims Guardian violated federal law by calling — as the phone number through which she wished to receive calls relating to the monitoring service.  Ex. B, Sales and Installation Agreement, Section B.

Plaintiff enjoyed and paid for the security services for approximately one year before asking Guardian to waive the early termination fee.  Amended Compl., Ex. B.  Plaintiff claimed that she "had nothing but problems with [her] system[,]" <u>id.</u>, and that the AMP Security salesman "told [her] everything was free."  Amended Compl., Ex. D.  Plaintiff forcefully "disconnected her security service equipment manually with the help of her 56[-]year[-]old son [] and threw that same equipment into the trash."  Amended Compl. ¶ 49.

Plaintiff alleges that Guardian placed 40 calls to her cell phone between February 25, 2015 and March 24, 2015 and that she had never provided Guardian with express written permission to call her cell phone number.  Amended Compl. ¶ 8.  Plaintiff maintains that Guardian violated the Federal Telephone Consumer Protection

-2-

Act, several provisions of the Federal Fair Debt Collection Practices Act, as well as the California Rosenthal Fair Debt Collection Practices Act.

### III.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  To satisfy the "plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted).  This requires the plaintiff to show "more than a sheer possibility of unlawful conduct by the defendant."  Id.  A complaint offering nothing more than "'labels and conclusions[,]…a formulaic recitation of the elements of a cause of action…[or] naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard.  Id. (citation omitted).

### IV.     DISCUSSION

**A.   Plaintiff's Amended Complaint Makes Clear That Her Claims Are Merely a Subterfuge Through Which Plaintiff Hopes to Address a Grievance With Guardian's Authorized Dealer.**

In her Amended Complaint, Plaintiff alleges that Guardian violated federal law by engaging in unfair debt collection practices and making certain telephone calls without her written authorization.  To support these claims, Plaintiff attaches the first page of two written agreements between her and AMP as Exhibits C and G-1 of her Amended Complaint.  Given Plaintiff's reliance upon, and incorporation of, these

-3-

agreements in her Amended Complaint, Guardian has attached the agreements in their entirety, including the second page of each agreement containing Guardian's "terms and conditions."[1]

In the very first section of the agreement, the Monitoring Agreement states that it "may be assigned to Guardian Protection Services, Inc." and that "AMP and Guardian are sometimes referred to as 'Company', 'We', 'Us' or 'Our'."  Ex. A, Monitoring Agreement, Section A.  The very first paragraph of the Terms and Conditions echoes this right of assignment and explains clearly the relationship between AMP and Guardian.  That paragraph states:

> **1.  GUARDIAN IS PARTY TO AGREEMENT UPON ASSIGNMENT.**  AMP is an authorized dealer for Guardian.  AMP assigns certain customer agreements to Guardian.  Upon such assignment, (i) Guardian becomes a party to this Agreement and is afforded all of the rights and protections of AMP hereunder, (ii) Guardian assumes all of Company's duties toward You, as those duties are more fully described below.

Id., Terms and Conditions ¶ 1.  Paragraph 10 further states that "We may assign this Agreement without notice to You."  Id. ¶ 10.  These provisions make clear that Guardian is neither a "debt collector" seeking to collect a debt nor a business with no

---

[1]  Although review on a motion to dismiss is generally limited to the allegations set forth in the complaint, it is well-settled law that "[a] court may [] look outside the complaint where the outside document has been referenced by, or relied on in the complaint itself."  The Missing Link, Inc. v. eBay, Inc., No. C-07-04487 RMW, 2008 WL 1994886, at *3 (N.D. Cal. May 5, 2008).  Courts routinely apply this doctrine to terms and conditions in consumer contracts.  See, e.g., The Missing Link, Inc., 2008 WL 1994886, at *3; Schulz v. Cisco Webex, LLC, No. 13-CV-04987-BLF, 2014 WL 2115168, at *3 (N.D. Cal. May 20, 2014) ("Here, Plaintiffs allege the existence of a contract and allude to its contents, but do not attach the contract at issue.").

connection to Plaintiff seeking to solicit new business.  Rather, as discussed below, the allegations in Plaintiff's Amended Complaint, coupled with the exhibits attached thereto when viewed in their entirety, show that Guardian is actually a party to Plaintiff's contract and that it is merely living up to its end of the bargain.

Paragraphs 5 and 6 of the Monitoring Agreement that Plaintiff has attached to her Amended Complaint explain that the customer's system "sends signals" to Guardian's "Center," where Guardian uses "enhanced call verification for processing burglar alarm signals wherein We will first try to contact You at Your Pre-Dispatch Verification Phone Number[.]"  Ex. A, Monitoring Agreement, ¶¶ 5-6.  In the Sales and Installation Agreement ("SIA") attached to Plaintiff's Amended Complaint, Plaintiff designated her cellular phone number — the very number Plaintiff claims Guardian violated federal law by calling — as the Pre-Dispatch Verification Phone Number.  Ex. B, SIA, Section B.  Notwithstanding the clear articulation of the process by which Guardian sends and receives signals to and from its customers' security systems, Plaintiff "disconnected her security service equipment manually with the help of her 56[-]year[-]old son [] and threw that same equipment into the trash."  Amended Compl. ¶ 49.

Given that the only "plausible" factual narrative that arises from Plaintiff's Amended Complaint is that Plaintiff received phone calls that she had contracted to receive, her claims that Guardian violated federal statutes proscribing unfair debt collection practices and unauthorized telephone solicitations are patently frivolous and

-5-

should be summarily dismissed by this Court.  Nevertheless, Guardian offers the following analysis illustrating Plaintiff's failure to plead the essential elements of these statutory claims as additional support for its Motion.

**B.**  **Plaintiff Has Failed to State a Claim Under the Telephone Consumer Protection Act.**

At Count V, Plaintiff alleges a claim under The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 <u>et</u> <u>seq.</u>  "The TCPA's statutory and legislative history emphasize that the statute's purpose is to prevent unsolicited automated telemarketing and bulk communications.'"  <u>Ibey v. Taco Bell Corp.</u>, No. 12-CV-0583-H WVG, 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012) (citation omitted).

**1.**  **Plaintiff provided express written consent to receive the calls.**

The section of the TCPA under which Plaintiff has asserted her claim applies only to calls "other than a call [] made with the prior express consent of the called party[.]"  47 U.S.C. § 227(b)(1)(A).  Accordingly, "Prior express consent is a complete defense to Plaintiff[']s TCPA claim."  <u>Reardon v. Uber Techs., Inc.</u>, No. 14-CV-05678-JST, 2015 WL 4451209, at *6 (N.D. Cal. July 19, 2015) (citation omitted). Any analysis of the "prior express consent" issue necessarily "begins with the Federal Communications Commission's 1992 order interpreting the TCPA," wherein the FCC stated that:

> [p]ersons who knowingly release their phone numbers have in effect
> given their invitation or permission to be called at the number which they
> have given, absent instructions to the contrary. Hence, telemarketers will

-6-

not violate [TCPA rules] by calling a number which was provided as one to which the called party wishes to be reached.

Id. (quoting In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 7 FCC Rcd 8752, 8769, ¶ 31, 1992 WL 690928 (Oct. 16, 1992) (the "1992 FCC Order")).  Accordingly, "[e]xpress consent can be demonstrated when the called party gives her wireless number to the person initiating the phone call 'without instructions to the contrary.'"  Id., at *7.

As discussed *supra*, Plaintiff herself chose to receive communications relating to the monitoring of her security system on the same cellular phone number that she now claims Guardian called without her written permission.  See also Monitoring Agreement, Section B (selecting "cellular" as preferred means of communication); id., Section A (listing cell phone number as 760-724-9439).[2]  Because courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint[,]" Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), this Court need not accept as true Plaintiff's dubious assertion that the distress signals sent strictly in accordance with Plaintiff's Monitoring Agreement were made without her authorization.  Therefore, since Plaintiff "g[a]ve[] her wireless number to the person initiating the phone call 'without

---

[2]  While Plaintiff also references a separate phone number, it appears to be by mistake. The second phone number appears in only one paragraph of Plaintiff's pleading, paragraph 33, wherein Plaintiff alludes to the same 39 calls placed to the phone number that she had provided Guardian, and her exhibits make no further mention of the number.

-7-

instructions to the contrary'" — indeed, under the express understanding that AMP Security, or its assignee Guardian, would initiate the very communications of which Plaintiff now complains — the calls were made with her "prior express written consent" and thus cannot be the basis of a TCPA claim under 47 U.S.C. § 227(b)(1)(A).[3] See )Baird v. Sabre Inc., 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014) (finding that by providing her cell phone number to Hawaiian Airlines to facilitate her online booking of a flight, TCPA plaintiff gave express written consent to be contacted by an unrelated third-party entity with which Hawaiian Airlines had contracted to provide passengers with information about their flights, because "no reasonable consumer could believe that consenting to be contacted by an airline company about a scheduled flight requires that all communications be made by direct employees of the airline, but never by any contractors performing services for the airline.").

---

[3]  It is also worth noting that the FCC issued an Order in 2008 specifically stating that the statute does not apply to calls made by a creditor or debt collector to a phone number provided by the called party.  In that Order, the FCC cited its 1992 TCPA Order and "conclude[d] that the provision of a cell phone number to a creditor [] reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."  In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 568 n.34 (2008) (quoting 1992 TCPA Order, 7 FCC Rcd at 8769, para. 31).  Accordingly, Plaintiff's claim that Guardian violated the TCPA by calling the number that she had provided fails as a matter of law because in the 2008 TCPA Order, the FCC "clarif[ied] that such calls are permissible."  Id. at 564.  Furthermore, because "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call[,]" id., the result is the same regardless of whether the calls were placed by Guardian as the creditor (via assignment), by Guardian as a third-party debt collector, or by a separate third-party debt collector on behalf of Guardian.

-8-

2. **Plaintiff has failed to allege the use of an automatic telephone dialing system or an artificial or prerecorded voice.**

Plaintiff bases her claim on § 227(b)(1)(A) of the Act. That provision makes it unlawful:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice …to any telephone number assigned to a [] cellular telephone service[.]

47 U.S.C. § 227(b)(1)(A).

To plead a cause of action under this particular provision of the Act, a plaintiff must allege facts that give rise to the inference that, *inter alia*, "the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). "As an isolated assertion, it is conclusory to allege that messages were sent 'using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.' Such a naked assertion need not be taken as true." Knutson v. Reply!, Inc., No. 10-CV-1267 BEN WMC, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011) (citation omitted).

Here, Plaintiff pleads the conclusory allegation that Guardian made calls using an "automatic telephone dialing system," but she provides no facts to support this

-9-

naked assertion.  While Plaintiff suggests that the calls were made by a machine, Plaintiff does not allege how this observation suggests that the calls were placed with equipment meeting the statutory definition of "automatic telephone dialing system."

In Flores v. Adir Int'l, LLC, No. CV1500076ABPLAX, 2015 WL 4340020 (C.D. Cal. July 15, 2015), the Court unequivocally rejected the very premise underlying Plaintiff's claim, *i.e.*, that parroting the statutory language and raising an inference of some form of automation is sufficient to allege the use of an ATDS.  The court explained:

> it may be that the use of a generic template and immediate responses permit the reasonable inference that Defendant's equipment is capable of some form of automation. *However, "automation" alone is not enough to satisfy the definition of an ATDS under the TCPA*. The sort of automation that matters under the TCPA is "the capacity: (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). *Plaintiff's defense to the motion to dismiss is, in essence, an argument that alleging any measure of automation is sufficient to allege the specific form of automation necessary to sustain a claim under the TCPA. Without more, that inference is one that Rule 8 simply cannot bear.*

Id. (emphasis added).

Plaintiff alleges that Guardian used an "automatic telephone dialing system to call the Plaintiff's cell phone number more than 39 times[,]" Amended Compl. ¶ 53, but she alleges no facts suggesting that an ATDS meeting the statutory definition was used to place the calls.  Like the plaintiff in Flores, Plaintiff has pled — at most — that the equipment Guardian used to call her cell phone was "capable of some form of

-10-

automation."[4]  Accordingly, Plaintiff has failed to state a claim under 47 U.S.C. § 227(b)(1)(A).  See id.; Ibey, 2012 WL 2401972, at *3 (finding "[p]laintiff's allegation that there 'was no human intervention on the part of the [d]efendant' does not satisfy or allege the requirements of the statute.").

Moreover, the allegations in Plaintiff's own pleading, and the exhibits attached thereto, actually defeat her contention that the calls were placed with an ATDS. Although the allegation is not pled clearly, Plaintiff avers that the calls from Guardian were specifically targeted to her for the purpose of collecting a debt.  These allegations clearly suggest that the calls were *not* made with an ATDS, as they were "anything but 'random.'"  Flores, 2015 WL 4340020, at *3; see also Ibey, 2012 WL 2401972, at **1, 3 (plaintiff did not allege use of an ATDS where message "did not appear to be random").  Indeed, the FCC has recognized that debt-collection calls are categorically "not autodialer calls[.]"  In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752 (1992) ("With respect to concerns regarding compliance with both the FDCPA and our rules in prerecorded message

_____

[4]  Indeed, the baseless nature of Plaintiff's claims is made clear by her conclusory allegation that Guardian used an "automatic telephone dialing system with artificial pre-recorded voice capabilities[.]"  In the statute, the terms "automatic telephone dialing system" and "artificial or pre-recorded voice" represent two separate and distinct prohibitions.  Likewise, the words "artificial" and pre-recorded" are used in the disjunctive, as a voice recording cannot be both artificial and pre-recorded.  Thus, Plaintiff's allegation that Guardian used an "automatic telephone dialing system with artificial pre-recorded voice capabilities" shows that the alleged factual predicate for her claim is at best a thoughtless parroting of the statutory language and at worst a physical impossibility.

-11-

calls, we emphasize that the identification requirements will not apply to debt collection calls *because such calls are not autodialer calls (i.e., dialed using a random or sequential number generator)*[.]").

Since Plaintiff has failed to allege an essential element of her claim at Count V, and since the documents attached to her pleading show unequivocally that she provided Guardian written authorization to call her cell phone, that cause of action must be dismissed.

## C. **Plaintiff Has Failed to State a Claim Under the Federal Fair Debt Collection Practices Act.**

Counts I through IV of Plaintiff's Complaint allege claims under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.  All four of these claims fail as a matter of law because they only apply to people and entities who meet the statutory definition of the term "debt collector," and Plaintiff has utterly failed to allege that Guardian satisfies those criteria.  In addition to this general, across-the-board defect, each of these counts also fails due to Plaintiff's reliance on conclusory allegations that merely track the language of the statute without supporting facts.  Therefore, these claims should be dismissed.

### 1. **Plaintiff's claims under the Federal Fair Debt Collection Practices Act must be dismissed because Plaintiff has failed to allege that Guardian is a "debt collector" within the meaning of the Act.**

Plaintiff has alleged claims under 15 U.S.C. § 1692c(a)(1), 15 U.S.C. § 1692d(5), 15 U.S.C. § 1692d(6), and 15 U.S.C. § 1692e(10).  "Because these

-12-

prohibitions apply only to 'debt collectors' as defined by the FDCPA, the complaint must plead 'factual content that allows the court to draw the reasonable inference' that [Defendants are] debt collector[s]." Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1208 (9th Cir. 2013) (citations omitted). The FDCPA defines the phrase "debt collector" as: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts *owed or due or asserted to be owed or due another*." 15 U.S.C. § 1692a(6) (emphasis added).

Here, Plaintiff has not even alleged that Guardian fulfills one of these definitions. Instead, Plaintiff merely states that Guardian "is an [sic] security system business entity which collects consumer debts, bringing GPS well within the ambit's [sic] of the California Rosenthal Fair Debt Collection Practices Act[.]" Amended Compl. ¶ 8. Even under Rule 8's minimal pleading standards, this broad and conclusory statement is woefully inadequate.

Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204 (9th Cir. 2013), is instructive. There, the plaintiffs supported their contention that the defendant met the statutory definition of "debt collector" with the allegation that the defendant — there, Wells Fargo — "is in the business of collecting debts and uses instrumentalities of interstate commerce in that business." Id. at 1208. Although the plaintiffs conceded that they did not allege that Wells Fargo was engaged in a business the principal purpose of

-13-

which was debt collection, they argued that they clearly intended to invoke that definition.  Id. at 1208-09.  The Court rejected the plaintiffs' claim, finding that their allegation "establishe[d] only that debt collection is *some part of* Wells Fargo's business, *which is insufficient to state a claim under the FDCPA*."  Id. (emphasis added).[5]

The plaintiffs in Schlegel also argued that this allegation adequately pled Wells Fargo's "debt collector" status under the second definition, *i.e.*, one "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Id. at 1209.  Again, the Court rejected the plaintiffs' contention, noting that the language in the complaint "d[id] not allege that Wells Fargo collects the debts *of another*."  Id. (emphasis added).

Plaintiff's allegation that Guardian is a "security[-]system business entity which collects consumer debts" suffers from the same infirmities as the allegation in Schlegel.  Plaintiff has not even attempted to allege that debt collection is the principal purpose of any business in which Guardian is engaged, nor has she pled any facts from which this Court could draw such an inference.  Plaintiff's citation to her Guardian billing statements reveals the erroneous assumption underlying her FDCPA claims: that any business that collects a fee for its product or service is a "debt collector" under

---

[5]  The Court also made clear that this definition applies only where that collection is the "principal purpose" of the company itself, not the various activities in which it is engaged.  Id.

-14-

the Act.  At most, Plaintiff's Amended Complaint "establishes only that debt collection is some part of [Guardian]'s business, which is insufficient to state a claim under the FDCPA."  Id.

Likewise, although Plaintiff's Amended Complaint claims that Guardian "collects debts," it does not allege that Guardian collects the debts "of another." Therefore, Plaintiff has failed to state a claim under the Federal Fair Debt Collection Practices Act.

Accordingly, Counts I through IV of Plaintiff's Amended Complaint should be dismissed.

### 2.     Plaintiff has not alleged a violation of § 15 U.S.C. § 1692c(a)(1).

At Count I, Plaintiff alleges a claim for violation of 15 U.S.C. § 1692c(a)(1). That provision prohibits debt collectors from communicating with a consumer, without his or her express consent, about collection of a debt:

> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location[.]

15 U.S.C. § 1692c(a).

Here, Plaintiff alleges merely that Guardian made 40 calls to her cell phone that it "knew or should have known … were both inconvenient, annoying, and cost her money on her phone bill."  Amended Compl. ¶ 27.  However, the very exhibit attached

-15-

to Plaintiff's Amended Complaint shows that not a single one of those 40 calls took place before 8:00 AM or after 9:00 PM.  Indeed, according to Plaintiff's Exhibit E, the vast majority of the calls occurred between the hours 2:30 PM and 5:00 PM, with the earliest call being 8:44 AM and the latest being 6:54 PM.  Plaintiff has alleged no facts to show that Guardian should have known that something about the time or place of the calls would be inconvenient to her.  Accordingly, she has failed to state a claim under 15 U.S.C. § 1692c(a)(1).

### 3.   Plaintiff failed to state a claim for violation of 15 U.S.C. § 1692d(5).

At Count II, Plaintiff alleges a claim under 15 U.S.C. § 1692d(5).  That provision prohibits a debt collector from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

Plaintiff alleges, in a conclusory fashion consistent with the rest of her Amended Complaint, that Guardian violated § 1692d(5) by placing 39 calls to her cell phone.[6] However, Plaintiff's own Exhibit E shows that she was not called "repeatedly" or "continuously."  Indeed, that exhibit shows that the phone never rang twice in a row, and she was never called more than two times in one day.  Amended Compl., Ex. E. Therefore, Plaintiff has not stated a claim for violation of § 1692d(5).  See Arteaga v.

_____

[6]   As noted above, Plaintiff references a separate phone number in paragraph 33 of her Amended Complaint, which appears to be a typographical error.  To the extent paragraph 33 articulates a separate factual basis for Plaintiff's claim, the claim must be dismissed for Plaintiff's failure to articulate any details about the alleged phone calls.

-16-

Asset Acceptance, LLC, 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010) (finding that "daily" calls by debt collector, without more, "did not rise to the level of harassment under Section 1692d and fail[ed] to raise a triable issue of fact as to whether the phone calls were initiated with the intent to harass in violation of Section 1692d(5)").

**4.      Plaintiff has failed to state a claim for violation of 15 U.S.C. § 1692d(6).**

At Count III, Plaintiff has alleged a claim for violation of 15 U.S.C. § 1692d(6). That provision states that it is a violation of the Act for a debt collector to place calls to a consumer "without meaningful disclosure of the caller's identity."  15 U.S.C. § 1692d(6).

Here, Plaintiff merely parrots the language of the statute, stating that Guardian placed 40 calls "without meaningful disclosure of the caller GPS's identity[.]" Amended Compl. ¶ 38.  Curiously, the only allegations pertaining to the substance of these calls are inherently contradictory.  Specifically, at paragraph 20, Plaintiff states that "GPS asserted … the right to enforce or collect a debt[,]" but in the very same pleading, plaintiff alleges that "[o]n several occasions these very same calls were made without meaningful disclosure of the caller GPS's identity[.]"  Amended Compl. ¶¶ 20, 38.  Notably, these allegations are not pled in the alternative; both are expressly incorporated into Count III.  Plaintiff's conclusory allegation parroting the statutory language did not plead facts from which this Court could plausibly infer that Guardian placed calls to Plaintiff "without meaningful disclosure of [its] identity[,]" especially

-17-

considering these other, inherently contradictory allegations on the matter.

Accordingly, Count III of Plaintiff's Amended Complaint should be dismissed.

### 5.   **Plaintiff has failed to state a claim for violation of 15 U.S.C. § 1692e(10).**

At Count IV, Plaintiff alleges a claim for violation of 15 U.S.C. § 1692e(10). That provision prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning consumer." 15 U.S.C. § 1692e(10).

Here, Plaintiff again echoes the language of the statute without providing any factual detail whatsoever.  See Amended Compl. ¶ 46 (alleging that Guardian violated the statute "by the use of false representation or deception [sic] means to collect or attempt to collect a debt or to obtain information concerning consumer").  While Plaintiff alleges that Guardian "lied to [her] on numerous occasions during the months of February thru [sic] April to gain information about the Plaintiff[,]" id. ¶ 47, all of the "lies" she alleges were made, according to Plaintiff herself, exclusively by "AMP Security salesmen."[7]  Id. ¶¶ 47-48.  Plaintiff's Amended Complaint is entirely devoid of any well-pled facts suggesting that Guardian used any "false representation or deceptive means" of any kind.  Indeed, Plaintiff's only factual allegation against Guardian in Count IV is that Guardian continued to contact her regarding her

---

[7]  It is also worth noting that Plaintiff has failed to allege that any of these alleged "lies" by AMP Security were made to collect a debt or to obtain information from her.

-18-

outstanding balance and refused to extinguish the debt.  See id. ¶¶ 49-50.  Accordingly,

Count IV of Plaintiff's Amended Complaint must be dismissed.

### D. Plaintiff Has Failed to State a Claim Under the California Rosenthal Fair Debt Collection Practices Act.

At Count VI, Plaintiff purports to state a claim under the California Fair Debt

Collection Practices Act, Cal. Civ. Code § 1788 et seq., alleging a violation of

§ 1788.11(d) and § 1788.17.  The former prohibits a debt collector from attempting to

collect a debt by "causing a telephone to ring repeatedly or continuously to annoy the

person called."  Cal. Civ. Code § 1788.11(d).  The latter provides a remedy against

debt collectors who violate the federal Fair Debt Collection Practices Act.  See id.

§ 1788.17.  Both claims fail for several reasons.

First, "[t]o be held liable for violation of the RFDCPA, a defendant must fall

within the Act's definition of 'debt collector.'"  Rosal v. First Federal Bank of

California, 671 F.Supp.2d 1111, 1135 (N.D. Cal. 2009) (citations omitted).  That

definition is "any person who, in the ordinary course of business, regularly, on behalf

of himself or herself or others, engages in debt collection."  Id. (quoting Cal. Civ. Code

§ 1788.2(c)).

Here, as noted above, Plaintiff alleges merely that Guardian "is an [sic]

security[-]system business entity which collects consumer debts."  Amended Compl.

¶ 6.  Plaintiff has pled no facts suggesting that Guardian "collects debts" of any kind

"in the ordinary course of business," nor has she made any allegations that Guardian

-19-

engages in this activity "regularly."  Cal. Civ. Code § 1788.2(c).  Even coupled with the conclusory and inaccurate assertion that "collecting debts," without more, "bring[ it] well within the ambit's [sic] of the California Rosenthal Fair Debt Collection Practices Act[,]" Amended Compl. ¶ 6, this bare allegation falls far short of the pleading standards set forth by Iqbal.  Because Plaintiff "does not allege facts giving rise to the inference that any of the defendants is a debt collector as defined by the RFDCPA," she "has not satisfied the minimal notice pleading requirements of Rule 8." Rosal, 671 F. Supp.2d at 1135.

Moreover, Plaintiff has not adequately alleged conduct violating the two provisions upon which she bases her claims.  Specifically, as noted *supra*, Plaintiff's own exhibit shows that she never received more than two calls in a single day, and no calls were placed back to back.  Thus, Guardian did not cause Plaintiff's phone to ring "repeatedly or continuously to annoy" her.  See Arteaga, at 1229 (finding that "daily" calls by debt collector, without more, "fail[ed] to raise a genuine issue of material fact as to whether [debt collector]'s communications were so frequent as to be unreasonable or to constitute harassment under the circumstances" and dismissing the plaintiff's Rosenthal Act claims). As for Plaintiff's allegation that Guardian violated § 1788.17, this claim fails because Plaintiff has failed to allege a violation of the Federal Fair Debt Collection Practices Act, for the reasons discussed herein.

Accordingly, Plaintiff has not pled a claim under § 1788.11 or § 1788.17 of the California Rosenthal Fair Debt Collection Practices Act.

-20-

**V.**     **CONCLUSION**

For the reasons set forth herein, Defendant respectfully requests that this

Honorable Court dismiss Plaintiff's Amended Complaint, with prejudice.

Dated: December ___, 2015

                                        Respectfully submitted,

                                        COHEN & GRIGSBY, P.C.

                                        By:_s/ Robert M. Linn_____
                                        Robert M. Linn (SBN 190387)
                                        625 Liberty Avenue
                                        Pittsburgh, PA 15222-3152
                                        rlinn@cohenlaw.com
                                        (412) 297-4900
                                        (412) 209-0672 (fax)

                                        Attorneys for Defendant
                                        Guardian Protection Services, Inc.

2195068.v1

<u>Clarice Tuck v. Guardian Protection Services, Inc.</u>
United States District Court Case No. 15-CV-1376-JLS(JLB)

## **CERTIFICATE OF SERVICE**

I, Robert M. Linn, hereby certify that I caused to be served upon the Plaintiff a copy of the following document:

- **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

via U.S. Mail, First Class, at Plaintiff's last reported address as follows:

Clarice Tuck
1600 E. Vista Way #110
Vista, CA 92084

Executed on **December ___, 2015**, in Pittsburgh, Pennsylvania.


 s/ Robert M. Linn
Robert M. Linn