# EXHIBIT B

# AMP | SECURITY

1261 S 820 E #300, AMERICAN FORK, UT 84003
PHONE: 801-734-7070 • FAX: 801-356-6601

*F00GPS44590*

CA

CS ID: GS.8119
AMP # 292463

Guardian LIC # ACO 6494; ACO 5392. AMP LIC # ACO 6814
Registered by the Bureau of Security and Investigative Services, Department of
Consumer Affairs, P.O. Box 989002, West Sacramento, CA 95798-9002 (1-800-952-5210)
AMP LIC # 982163. Regulated by the California Contractors State License Board,
9821 Business Park Drive, Sacramento, CA 95827 (1-800-321-2752)

## AUTHORIZED DEALER SALES AND INSTALLATION AGREEMENT (SIA)

### A) CUSTOMER INFORMATION

THIS AGREEMENT is made this **29** day of **Jul**, 20**13** by and between Alarm Monitoring Protection, Inc ("Company") and **Clarice E. Tuck** ("Customer").

### B) CUSTOMER AND EMERGENCY CONTACT INFORMATION

| PRE-DISPATCH VERIFICATION PHONE # (Premises or Primary Number) | PRE-DISPATCH 2ND CALL VERIFICATION PHONE # | 2ND CALL VERIFICATION NAME | *PHONE TYPE |
|---|---|---|---|
| 760-724-9439 Cell | 760-310-9964 | Debbie McDonald | Cell |

| CUSTOMER MAILING ADDRESS | CROSS STREET / DEVELOPMENT |
|---|---|
| 1600 E Vista Way #110 Vista, CA 92084 | Arcadia Ave |

Phone Type: 104=HOME CL=CELL WX=WORK

**EMERGENCY CONTACTS** (At Least 1 Contact Required)

| FIRST NAME | LAST NAME | PHONE NUMBER (Include Area Code) | | KEYHOLDER |
|---|---|---|---|---|
| Roy | Tuck | 760-840-1551 | cell | ☒ YES ☐ NO |
| | | | | ☐ YES ☐ NO |
| | | | | ☐ YES ☐ NO |

PASSWORD (Word/Number Combination - 10 characters or less): **1 9 2 8**

AGENCY INFORMATION

| | PHONE NUMBER (Include Area Code) |
|---|---|
| POLICE | |
| FIRE | |
| MEDICAL | |

Last 4 digits of SS#: **9 2 3 5** Pin **1928**

### C) DESCRIPTION AND PRICE OF EQUIPMENT

**EQUIPMENT SOLD** (SECURITY CONSULTANT COMPLETES)

| ITEM | QTY | RETAIL PRICE | RETAIL TOTAL | TOTAL PRICE |
|---|---|---|---|---|
| Panel Type: LYKS 5100 | 1 | $499 | 499 | 0.0 |
| Doors / Smart thing | 2 | 99 | 198 | 0 |
| Smoke + Heat | 1 | | 298 | 0 |
| Medical pendent | 2 | 99 | 198 | 0 |
| 2way voice over cell | 1 | | 68mo | 0 |
| Life Alert Service | 1 | | 29mo | 0 |
| Fire Service | 1 | | 39mo | 0 |
| INT | | | 249 | 0 |
| SUB TOTAL: | | | 1,606 | 0 |

**EQUIPMENT INSTALLED** (TECHNICIAN COMPLETES)

| ITEM | QTY | RETAIL PRICE | RETAIL TOTAL | TOTAL PRICE |
|---|---|---|---|---|
| Panel Type: | | | | |
| Z-Wave Module | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL: | | | | |

*The equipment listed above in the "Equipment Sold" section was agreed to during the security consultation. If the Customer opts to change the equipment, it will be listed in the "Equipment Installed" section above. The Customer agrees to pay the total listed in the "Equipment Installed" section. Deposit/down payment not to exceed the lesser of $1,000 or 10% of the Total Sale and Installation Price.

Est. Installation Date: _____ Est. Completion Date: _____ 2-Way Cord #: **90342640** Upload Cord #: _____

**Estimate Only. Such dates are subject to change as described in section 5 and as permitted by applicable law.
The amount listed above is for equipment only and You are not being charged separately for the initial installation of the System. You are entitled to a list of any potential permit fees which may be required to be paid by You in connection with the installation. You acknowledge that such fees were made available to You at the time You entered into this Agreement.

### D) COMPLETION SURVEY

- ☒ Y ☐ N  I understand the "7-Day Customer Orientation Period and know the date the System will go live with the Center.
- ☒ Y ☐ N  I agree to notify Guardian in the event that I change my telephone service.
- ☒ Y ☐ N  I understand the Second Call Verification process and therefore understand the importance of updating my emergency contact information.
- ☒ Y ☐ N  The technician has shown me how to turn the System on and off, silence the siren and arm selective parts of the System, and has also shown me where the control panel, transformer and telco jack, if applicable, are located.
- ☒ Y ☐ N  The technician has also explained the Delay Times for Entry **90** (sec) and Exit **90** (sec) and how to test the System, including testing to Center.
- ☒ Y ☐ N  I have been provided with an instruction manual and summary operation sheet.
- ☒ Y ☐ N  The technician has explained Guardian false alarm reduction efforts and has advised me to check for any alarm ordinances within the jurisdiction of my Premises.
- **CT** Customer Initials  I certify that I answered the above questions to the best of my knowledge.

### E) ZONES

| ZONE | N/E¹ | TYPE² | DESCRIPTION³ | ZONE | N/E¹ | TYPE² | DESCRIPTION³ |
|---|---|---|---|---|---|---|---|
| 2 | N | Burg | Front Door | | | | |
| 3 | N | | Back Door | | | | |
| 4 | N | Fireball | Smoke | | | | |
| 5 | N | Mel | Medical Pendant | | | | |
| 6 | N | | Medical Pendant | | | | |

1. N/E = New or Existing  2. Type = Burg., Fire, Med.  3. Description = Door, Motion, Smoke, etc.

### F) NOTICE OF CANCELLATION

(CONSUMER TRANSACTIONS ONLY) YOU MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. PLEASE SEE THE NOTICE OF CANCELLATION FORM ATTACHED TO THE AUTHORIZED DEALER MONITORING AND REPAIR AGREEMENT (MRA) THAT YOU RECEIVED AS PART OF THIS TRANSACTION FOR AN EXPLANATION OF THIS RIGHT. IN ADDITION, YOU MAY HAVE ADDITIONAL CANCELLATION RIGHTS WITH RESPECT TO THE SERVICES.

### G) SIGNATURES

YOU ARE ENTITLED TO RECEIVE A COPY OF THE AGREEMENT SIGNED BY US BEFORE ANY WORK MAY BE DONE. TO THE EXTENT YOU AUTHORIZE WORK TO BE PERFORMED PRIOR TO RECEIVING A WRITTEN COPY OF THIS AGREEMENT, YOU ACKNOWLEDGE THAT DOING SO WAS AS A CONVENIENCE TO YOU AND YOUR ONLY RECOURSE IS TO ASK US TO DELIVER A WRITTEN COPY OF THE AGREEMENT TO YOU PROMPTLY UPON RECEIVING SUCH REQUEST.
If the Premises are jointly owned, and if all owners cannot personally execute this Agreement, the customer whose signature appears on the signature line warrants that he/she was granted power of attorney by the remaining owner(s) of the Premises to execute this Agreement on behalf of the remaining owner(s).

BY: **Scott Clinkscales**          *Clarice E. Tuck*          DATE: **7-29-13**
COMPANY REPRESENTATIVE (PRINT NAME)   CUSTOMER SIGNATURE

_____           _____          DATE: _____
COMPANY REPRESENTATIVE SIGNATURE        CUSTOMER SIGNATURE

WHITE: COMPANY   YELLOW: CUSTOMER          CP-GP-AMP-2110-Dealer 4/13

## GENERAL TERMS AND CONDITIONS

**1. GUARDIAN IS PARTY TO AGREEMENT UPON ASSIGNMENT.** Customer is sometimes called "You" or "Your" and Company (and Guardian Protection Services, Inc. ("Guardian"), if this Agreement is assigned to Guardian), is sometimes called "We", "Us" or "Our". AMP is an authorized dealer for Guardian. AMP assigns certain customer agreements to Guardian. Upon assignment, (i) Guardian becomes a party to this Agreement and is afforded all of the rights and protections of AMP hereunder, (ii) Guardian assumes all of Company's duties toward You as those duties are more fully described below.

**2. SCOPE OF SALES AND REPAIR SERVICES.** You have elected to purchase the equipment, described as the "Equipment Sold" in Section C, if any (the "System"). The services selected herein and any other services to be provided at the Premises, as defined in the Authorized Dealer Monitoring and Repair Agreement (the "MRA"), pursuant to the Agreement are hereinafter referred to collectively as the "Services". The term "System" refers to the new system, new control panel, or the pre-existing system, as applicable, plus, in each case, any additional equipment connected to the System at any time. By signing this Agreement, You acknowledge and agree that You have been provided with a description to Your satisfaction of the following (to the extent applicable by You): the work to be done, the materials to be used, the cost for the work (subject to applicable taxes), the components of Your System, and/or the Services to be performed by, or on behalf of, Us.

**3. LIMITATION OF LIABILITY.** THIS SECTION LIMITS OUR LIABILITY TO $1,000.00 IF YOU OR ANYONE ELSE SUFFERS ANY HARM BECAUSE THE SYSTEM FAILED TO OPERATE PROPERLY OR WE WERE CARELESS OR ACTED IMPROPERLY. YOU AGREE THAT YOU MAY OBTAIN A HIGHER LIMITATION OF OUR LIABILITY BY PAYING AN ADDITIONAL PERIODIC CHARGE TO US AS SET FORTH IN AN ATTACHED RIDER. YOU HAVE SELECTED THE SYSTEM AND SERVICE WITH A FULL UNDERSTANDING OF THEIR LIMITATIONS AND THE LIMITATION OF OUR LIABILITY.

**3.1. WE ARE NOT AN INSURER; LIMITATION OF LIABILITY.** YOU UNDERSTAND THAT (A) WE ARE NOT AN INSURER OF YOUR PROPERTY OR PERSONAL SAFETY; (B) YOU SHOULD INSURE YOUR PREMISES AND ITS CONTENTS; (C) THE AMOUNT YOU PAY TO US AND OUR LIMITED LIABILITY ARE BASED UPON THE VALUE OF THE SYSTEM AND SERVICES; (D) THE SYSTEM AND ALARM RESPONSE MAY NOT ALWAYS OPERATE PROPERLY; (E) IT IS DIFFICULT TO DETERMINE IN ADVANCE (i) THE VALUE OF PROPERTY; (ii) HOW FAST EMERGENCY SERVICES WOULD RESPOND TO AN ALARM SIGNAL; AND (iii) WHAT PORTION OF ANY LOSS OR INJURY WOULD BE CAUSED BY A FAILURE (INCLUDING NEGLIGENCE). TO THE EXTENT PERMITTED BY LAW, AND UNLESS PROHIBITED BY LAW, YOU AGREE THAT OUR LIABILITY SHALL BE LIMITED TO $1,000.00, OR SUCH HIGHER AMOUNT AS IDENTIFIED IN THE SPECIFIC RIDER ATTACHED TO THIS AGREEMENT, AND THAT THIS SHALL BE YOUR ONLY REMEDY REGARDLESS OF WHAT LEGAL THEORY IS USED TO DETERMINE THAT WE WERE LIABLE FOR THE INJURY OR LOSS.

**3.2 THIRD PARTY INDEMNIFICATION AND SUBROGATION.** TO THE EXTENT PERMITTED BY LAW, AND UNLESS PROHIBITED BY LAW, IF ANY PERSON OTHER THAN YOU ASKS US TO PAY FOR DAMAGES, YOU WILL PAY US (A) ANY AMOUNT WHICH A COURT ORDERS US TO PAY OR WHICH WE REASONABLY AGREE TO PAY, AND (B) THE AMOUNT OF OUR REASONABLE ATTORNEYS' FEES AND COSTS. YOUR OBLIGATION TO PAY US SHALL NOT APPLY IF THE DAMAGE OCCURS WHILE ONE OF OUR EMPLOYEES OR SUBCONTRACTORS IS AT YOUR PREMISES AND SOLELY CAUSES SUCH DAMAGE. TO THE EXTENT PERMITTED BY LAW, AND UNLESS PROHIBITED BY LAW, YOU AGREE TO (Y) RELEASE US FROM ANY CLAIMS OF ANY PARTIES SUING THROUGH YOUR AUTHORITY OR IN YOUR NAME (e.g. INSURANCE COMPANY), AND (Z) DEFEND US AGAINST ANY SUCH CLAIM. YOU AGREE TO NOTIFY YOUR INSURANCE COMPANY OF YOUR OBLIGATIONS HEREIN.

**4. LIMITED WARRANTY (V.I.P. SERVICE PLAN)**

**4.1. WHAT IS COVERED:** REPAIR OF THE SYSTEM IS OUR ONLY DUTY UNDER THIS LIMITED WARRANTY. WE WILL REPAIR OR REPLACE ANY PART OF THE SYSTEM WE DETERMINE IS DEFECTIVE WITHOUT CHARGE TO YOU USING NEW OR USED PARTS OF THE SAME QUALITY. AFTER THE FIRST 90 DAYS FOLLOWING THE COMMENCEMENT OF MONITORING, YOU AGREE TO PAY A $25.00 FEE FOR EACH SERVICE CALL UNDER WARRANTY. If You do not purchase the V.I.P. Service Plan, Your limited warranty will be ninety (90) days. Following the expiration of Your warranty, You will pay Our standard parts and labor charges for all repair calls.

**4.2. HOW TO GET SERVICE:** CALL US AT OUR CUSTOMER SERVICE DEPT. WE WILL PROVIDE SERVICE DURING OUR NORMAL SERVICE HOURS EXCLUDING HOLIDAYS. SERVICE IS AVAILABLE AT OTHER TIMES AT OUR PREMIUM LABOR RATE.

**4.3. WHAT IS NOT INCLUDED:** BATTERIES; FIRE ALARM TESTS, INSPECTIONS AND/ OR REPAIRS THAT ARE DUE TO AN ACCIDENT, YOUR MISUSE, FAILURE TO PROPERLY MAINTAIN, OR UNAUTHORIZED REPAIRS OR CHANGES TO THE SYSTEM. AT YOUR REQUEST WE WILL PROVIDE SUCH REPAIRS AT OUR PREVAILING RATES. IF ANY CHANGES TO THE SYSTEM ARE REQUIRED AFTER IT IS INSTALLED, YOU AGREE TO PAY OUR STANDARD PARTS AND LABOR CHARGES FOR SUCH CHANGES.

**4.4.** TO THE EXTENT PERMITTED BY LAW AND UNLESS PROHIBITED BY LAW, WE MAKE NO OTHER EXPRESS OR IMPLIED WARRANTY INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WE DO NOT WARRANT THAT THE SYSTEM WILL ALWAYS DETECT, OR PREVENT, ANY INTRUSION, FIRE, OR OTHER EMERGENCY. WE HAVE NO CONTROL OVER THE RESPONSE TIME OF EMERGENCY SERVICES OR OTHER PERSONS. WE DO NOT WARRANT THAT THE SYSTEM CANNOT BE DEFEATED, BYPASSED, OR COMPROMISED OR THAT IT WILL ALWAYS OPERATE. TO THE EXTENT PERMITTED BY LAW, AND UNLESS PROHIBITED BY LAW, (A) ALL WARRANTIES ARE LIMITED IN DURATION TO THE TERM OF THIS AGREEMENT AND (B) WE ARE NOT LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES.

**4.5. STATE LAW:** THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS. YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

**5. INSTALLATION OF A SYSTEM.** We agree to install the System and You agree to pay the Total listed in the Equipment Installed section. Substantial commencement of the installation shall be deemed to occur when Our technician begins the installation of the System. To the extent We are required to substantially commence such installation within twenty (20) days from the estimated Work Start Date and we have not, it shall be a violation of the California Alarm Company Act. Any monitoring and/or extended repair services, if selected, will be offered pursuant to the MRA. You will permit Us to install a new System or control panel, or take over a pre-existing system, including the control panel, during normal business hours and give Us uninterrupted access to Your Premises in order to perform such Services. The estimated installation and completion dates in Section C are for reference only and are subject to change. You warrant that You have full authority from the owner and/or other person(s) in control of the Premises to permit the installation and operation of the System. You acknowledge that the design of the System is Your responsibility and that You have designed the System and, if required by applicable law, You have confirmed the design of the System in writing, as well as the number of devices and locations of the control panel, keypads, audible devices, and all other devices that will be installed. Upon completion of the installation, You are entitled to instruction on proper use of the System installed by Us. You acknowledge that Your right to receive instruction has been communicated to You. To the extent You have not received such instruction, You acknowledge that doing so was at Your election. If the System includes an exterior audible bell, horn, or siren, it is designed to shut off after sounding for not more than five (5) minutes. You agree to (i) provide 24 hour - 110 volt electrical service, including non-switched electrical outlets for the System's transformers and other electrical needs; (ii) make repairs to the Premises (such as fixing loose doors, broken windows, etc.) that We deem reasonably necessary to facilitate the installation and operation of the System; (iii) provide the proper environment for the System as We may reasonably request; and (iv) provide necessary telephone services or cables, at Your expense. To the extent permitted by law, and unless prohibited by law, We are not responsible if the installation and/or completion is delayed, for any reason including weather, labor disputes, Acts of God or other reasons beyond Our control and without Our fault or negligence, or Your failure to obtain any permit which You are required to obtain. You will provide Us with the name of any insurance rating bureau that may have jurisdiction for the System. You must inform Us, prior to the beginning of installation, where We should not (because of concealed obstructions or hazards) enter or drill holes. Unless so notified, We will determine where to drill holes in order to place the equipment where You specified. We will take reasonable precautions to avoid concealed obstructions, but have no means of determining if they exist. Any costs incurred to repair pipes, wires or other obstructions, and any resulting damage shall be Your sole expense and responsibility including costs to remove the System if You cancel this Agreement, to the maximum extent permitted by applicable law. If asbestos or other hazardous material is encountered during installation, We will cease work until You have obtained clearance from a licensed asbestos removal or hazardous material contractor that continuation of work will not pose any danger to Our personnel. We are not liable for discovery or exposure of hidden asbestos or other hazardous material. After installation of the System, You and Our representative will inspect it. If something is missing or not properly installed, You will advise Us in writing within ten (10) days, otherwise the System will have been accepted by You. Upon payment of the applicable fees set forth in the MRA, You will own the System, except for the control/transmitting device which contains Our proprietary data and which We will always own. YOU UNDERSTAND THAT THE ALARM SYSTEM MAY NOT WORK WITH EQUIPMENT USED BY OTHER ALARM COMPANIES. To the extent We are required to return the System to its default factory settings, You agree to provide us access to Your Premises within the required time frame upon Our request. You agree that, unless a written agreement executed by You and Us provides to the contrary, any additional work, services, installation, repair, maintenance or replacement products provided at the Premises shall be deemed to be performed and/or provided pursuant to the terms and conditions of this Agreement and the MRA. Upon request, and at no charge, We will provide You with a Certificate of Installation. The Certificate of Installation is a document of convenience for You. In the event the Certificate of Installation differs from this Agreement, this Agreement shall govern. It is solely Your responsibility to verify that the information contained in the Certificate of Installation accurately describes the System.

**6. NFPA STANDARDS.** The National Fire Protection Association (NFPA) recommends, among other things, installation of smoke detectors on each level of a residence (including, without limitation, basements and outside each separate sleeping area). The NFPA also recommends that a smoke detector be installed in each sleeping room (crawlspaces and attics excluded) in all new construction. You acknowledge that You considered these NFPA minimum standards when You designed Your System. You understand and acknowledge that heat detection devices are not the safety devices and promote limited fire detection. Heat detection devices should only be used in those areas in which a smoke detector device may operate erratically, such as an attic, kitchen, unfinished garage or other appropriate areas.

**7. TRANSMISSION LINES.** The System includes a panel that sends signals to Our central monitoring center (the "Center") through a telephone, cellular and/or other communication service ("Communication Services"). You will pay for all charges associated with the Communication Services. We recommend the use of an RJ31X or equivalent telephone jack to give the System priority over other telephones. When the System is activated, You will be unable to use Your telephone to make other calls. You may wish to have the System connected to a second Communication Service. If Your Communication Service is not working, signals cannot be transmitted to the Center. If required by government regulation, We may discontinue the use of one Communication Service and substitute another. Cellular or radio transmissions may be impaired or interrupted by weather, power failures or other conditions beyond Our control. You understand that You will not have any property rights in the telephone number assigned to the cellular or radio system. You agree to pay for any costs to reprogram the panel because of area code or other dialing pattern changes. The use of DSL, BPL, VoIP or other Internet-based telephone service may prevent the System from transmitting signals to the Center and/or interfere with the telephone line-seizure feature of the System, even if an RJ31X jack is installed. Such services should only be installed on a telephone number that is not used for alarm signal transmission. You will notify Us if You have installed DSL, VoIP, BPL or other Internet service. IMMEDIATELY AFTER INSTALLATION OF SUCH SERVICE YOU MUST TEST THE SYSTEM'S COMMUNICATION.

**8. ASSIGNEES AND SUBCONTRACTORS.** We may assign this Agreement without notice to You. Upon assignment, We will be relieved of any further obligations hereunder. Without Our consent, You may not assign this Agreement (including to someone who purchases or rents Your Premises). We may use subcontractors or vendors to provide the Services hereunder. This Agreement, and particularly Section 3, shall apply to all such services, and shall apply to them in the same manner as it applies to Us. You do not have any contractual relationship with Our subcontractors or vendors, and You are not a third-party beneficiary of Our agreements.

**9. CHANGES TO THE SYSTEM.** If You or any governmental agency or insurance interest want Us to change the System described herein, or change it after it is installed, You agree to pay Our standard parts and labor charges for such changes.

**10. LIMITATION ON LAWSUITS; JURY WAIVER.** Except for collection actions instituted by Us, no legal proceeding connected with this Agreement shall be filed more than one (1) year after the incident giving rise to the claim. UNLESS PROHIBITED BY LAW, BOTH PARTIES HEREBY WAIVE ANY RIGHT TO JURY TRIAL.

**11. INFORMATION AND PRIVACY.** You agree We may monitor and/or record video and audio related the System, as well as conversations with You. You understand that privacy cannot be guaranteed on any communication system, and We will not be liable to You for any claims, loss, damages or costs which may result from a lack of privacy.

**12. ENTIRE AGREEMENT; DOCUMENT RETENTION; MISCELLANEOUS.** This Agreement is subject to, and includes all of the General Terms and Conditions set forth in the MRA between You and Company as if such Terms and Conditions were fully set forth herein. The entire and only agreement between You and Company is written in this Agreement, and as incorporated herein, the MRA, and any applicable Company attachments and work orders. It replaces any earlier or contemporaneous oral or written understandings or agreements. You may not amend or modify this Agreement with any restrictive endorsements (such as "paid in full"), releases, or other statements on or accompanying checks or other payments accepted by Company, and any such notations shall have no legal effect. THIS AGREEMENT MAY NOT BE CHANGED BY ANY ORAL STATEMENTS MADE BY US OR BY OUR REPRESENTATIVES. The interpretation of this Agreement shall not be construed against the preparer of the Agreement. If You have given or ever give Us a purchase order for the System or Service that provides for different terms other than this Agreement, this Agreement will govern and be controlling. The terms and conditions of this Agreement apply to any work done for You in the future with respect to the Premises and the System.

**13. SEVERABILITY; INTERPRETATION.** If any provision of this Agreement is invalid or illegal (or renders the Agreement void or voidable), the remaining provisions shall remain in effect, and the offending provision shall be deemed to be removed or modified to make such provision enforceable, consistent with applicable law and the intent of the parties. Nothing contained in this Agreement is intended to be a waiver of any rights You may be specifically entitled to under applicable law that are not waivable, or to contain any provision that is prohibited by law. This Agreement shall be governed by the law of the state where the Premises is located.

**14. ELECTRONIC MEDIA.** You agree that We may scan, image or otherwise convert this Agreement into an electronic format of any nature. You also agree that a copy of this Agreement produced from such electronic format is legally equivalent to the original for any and all purposes, including litigation.

**15. CREDIT REPORT AND FACT ACT DISCLOSURE.** You authorize Us to investigate independently and/or share Your credit record, and to report Your payment performance under this Agreement to credit agencies and credit reporting services. A credit report is a record of Your credit history. It includes information about whether You pay Your bills on time and how much You owe to creditors.

We used information from Your credit report(s) to set the terms of the sale We are offering You, such as whether You must supply a security deposit or whether You are subject to minimum purchase requirements. The terms offered to You may be less favorable than the terms offered to consumers who have better credit histories.

As required by law, You are hereby notified that a negative credit report reflecting on Your credit record may be submitted to a credit reporting agency if You fail to fulfill the terms of your credit obligations.

You have a right to dispute any inaccurate information in Your credit report(s).

If You find mistakes on Your credit report(s), contact one of the credit reporting agencies listed below. We use these consumer reporting agencies to obtain Your credit report(s). It is a good idea to check Your credit report(s) to make sure the information it/they contain(s) is accurate.

Under federal law, You have the right to obtain a copy of Your credit report(s) without charge for 60 days after You receive this notice. To obtain Your free report(s), contact:

| Equifax | Experian (NCAC) | TransUnion |
|---|---|---|
| P.O. Box 740256 | P.O. Box 9556 | Customer Disclosure Center |
| Atlanta, GA 30374 | Allen, TX 75013 | TransUnion Consumer Relations |
| 1-800-685-1111 | 1-888-397-3742 | P.O. Box 2000 |
| www.equifax.com | www.experian.com | Chester, PA 19022-2000 |
| | | 1-800-916-8800 |
| | | www.transunion.com |

For more information about credit reports and Your rights under federal law, visit the Federal Reserve Board's web site at www.federalreserve.gov, or the Federal Trade Commission's web site www.ftc.gov. Neither Our firm, an Authorized Guardian Dealer, nor Guardian Protection Services is responsible for creating Your credit report(s) or establishing Your credit score, therefore We cannot answer any questions regarding Your credit report or credit score. We encourage You to contact one or more of the credit reporting agencies listed above.

CP-GP-AMP-2110-Dealer 4/13