Clarice Tuck
1600 E. Vista Way #110
Vista, CA 92084
Ph: 760-724-9439

NUNC PRO TUNC

Jan 29 2016

**FILED**

Feb 01 2016

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY _____ s/ kennethm _____ **DEPUTY**

Plaintiff In Pro Se

## IN THE UNITED STATED DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

CLARICE TUCK )

            )        Case No. **15-CV-1376-JLS(JLB)**

            )        **2nd AMENDED COMPLAINT**
            )        **FOR DAMAGES AND**
            )        **INJUNCTIVE RELIEF**
      Plaintiff,  )        **PURSUANT TO:**
            )
            )        1) TELEPHONE COMMUNICATIONS
      vs.      )           CONSUMER PRACTICES ACT
            )           (TCPA) 47 U.S.C.§227 *et.seq.*;
            )
GUARDIAN PROTECTION SERVICES, INC. )  2) VIOLATIONS OF FEDERAL FAIR
            )           (FDCPA) §1692 *et seq.*
            )
      Defendants.  )        3) VIOLATIONS OF FEDERAL FAIR
            )           CREDIT REPORTING ACT;
            )           (FCRA) 15 U.S.C.§1681 *et seq.*
            )
            )        4) VIOLATIONS OF CALIFORNIA'S
            )           CONSUMER CREDIT REPORTING
            )           AGENCIES ACT;
            )           (CCRAA) CIV. CODE §1785 *et seq.*
            )
            )        5) VIOLATIONS OF CALIFORNIA'S
            )           ROSENTHAL FAIR DEBT
            )           COLLECTIONS PRACTICES ACT;
            )           CALIFORNIA CODE CIV.§1788 *et seq.*
            )
            )        6) DECLARATORY RELIEF
            )
            )        **DEMAND FOR JURY TRIAL**

## COMPLAINT

**1.**    Plaintiff, CLARICE TUCK, Plaintiff, In Pro Se in the above-entitled case

as an individual hereby sues the above named defendants and makes the following

Plaintiff Copy

allegations and claims against these same said Defendants for strict statutory violations of the Telephone Communications Consumer Practices Act (TCPA) 47 U.S.C.§227 *et.seq*, Consumer Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq*., for violations of the Telephone Communications Practices Act (TCPA) 47 U.S.C. §227(a)(iii), and also for violations of the California Rosenthal Fair Debt Collection Practices Act Civil Code Section 1788 *et seq*.

# PRELIMINARY STATEMENT

**1.** This is an action for damages and injunctive relief brought to this honorable Ninth Circuit U.S. District Court by Plaintiff CLARICE TUCK against Defendant GUARDIAN PROTECTION SERVICES, INC. ., for numerous statutory violations of the Telephone Consumer Practices Act (TCPA) 47 U.S.C. §227(b)(1)(A), and 47 U.S.C. §227(b)(1)(A)(iii), for strict statutory violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C.§1692c(a)(1), Fair Debt Collection Practices Act (FDCPA) 15U.S.C.§1692d(5), Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692d(6),Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692e(10), the California Rosenthal Fair Debt Collection Practices Act (CFDCPA) CAL. Civ. §1788 *et seq*.

**2.** Congress enacted the FCRA to establish rights to privacy over their credit and financial information and to insure the "*[a]ccuracy and fairness of credit reporting*. "FCRA provides several protections for consumers, including but not limited to the *right to be notified of any negative/unfavorable information reported in their name* and the *right to dispute inaccurate, outdated and/or incomplete information* on their personal consumer credit files and reports.

**3.** FCRA regulates credit reporting agencies as well as creditors, collection agencies and other parties who *provide consumer credit information to credit reporting agencies and/or obtain and use the consumer credit reports*.

1  FCRA Section 623, 15 U.S.C.§1681s-2, imposes obligations on furnishers of
2  information to the credit reporting agencies. Furnishers must report *accurate*
3  *information*, correct and update erroneous information, and provide certain notices
4  to consumers pertaining to furnished information.

5      **4.**   CCRAA was implemented to protect the credit information of California
6  consumers. CCRAA also regulates consumer credit reporting agencies and
7  furnishers of information with respect to personal, credit and other financial
8  information submitted and maintained in their consumer credit file. CCRAA in
9  California Civil Code §1785.25-1785.26 *refrains* furnishers of consumer credit
10 information from reporting information that *they know or should have known was*
11 *erroneous*, and obligates furnishers to *cease credit reporting* of information disputed
12 by consumers *after receiving a notice of such dispute* from individual consumers.

13     **5.**   CCRAA provides consumers with the *right to be informed of negative*
14 *credit reporting* and the *right to dispute information in their credit reports*, which
15 they believe is incomplete and/or inaccurate. Consumers also have the *right to bring*
16 *civil actions against violators of any provision of the CCRAA with respect to their*
17 *rights and their credit, and to seek monetary damages*. California Civil Codes
18 §1785.19 and §1785.31.

19     **6.**   The FDCPA regulates the behavior of collection agencies attempting to
20 collect a consumer debt *on behalf of another entity*. The United States Congress has
21 found *abundant evidence of the use of abusive, deceptive, and unfair consumer debt*
22 *collection practices contribute to a number of personal bankruptcies, marital*
23 *instability, loss of jobs, and invasions of individual privacy*. Congress enacted the
24 FDCPA to *eliminate abusive consumer debt collection practices by debt collectors*,
25 to ensure that those debt collectors who refrain from using abusive debt collection
26 practices are not competitively disadvantaged, and to promote uniform State action
27 to *protect consumers against debt collection abuses described* in[15 U.S.C.§1692(a)-(e)].
28 ///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**       **PAGE 3**

1   **7.**   The FDCPA is a strict liability statute, which provides for actual and

2   statutory damages upon the showing of *one violation*. The Ninth Circuit has held

3   that whether a debt collector's conduct violates the FDCPA should be judged from

4   the standpoint of the "*least sophisticated*" consumer. [Baker v. G.C. Services Corp.,

5   677 F.2d 775, 778 (9th Cir. 1982); *Swanson v. Southern Oregon Credit Service, Inc.*

6   869 F.2d 1222, 1227(9th Cir. 1988)]. This objective standard "ensure[s] that the

7   FDCPA *protects all consumers*, the *gullible as well as the shrewd ... the ignorant,*

8   the *unthinkable* and the *credulous*." [*Clomon v. Jackson*, 988 F.2d 1314, 1318-19

9   (2nd Cir. 1993)].

10   **8.**   To prohibit deceptive practices the FDCPA, at 15 U.S.C.§1692e,

11   outlaws the use of *false, deceptive*, and *misleading collection letters* and names a

12   non-exhaustive list of certain per se violations of *false* and *deceptive collection*

13   *conduct* 15 U.S.C.§1692e(1)-(16).

14   **9.**   To prohibit *harassment and abuses* by debt collectors the FDCPA, at

15   15 U.S.C.§1692d, provides that a debt collector *may not engage in any conduct the*

16   *natural consequences of which is to harass, oppress, or abuse any person in*

17   *connection with the collection of a consumer debt* and names a non-exhaustive list

18   of certain per se violations of harassing and abusive collection conduct

19   15 U.S.C.§1692d(1)-(6).  Among these per se violations prohibited by this section

20   are: *any collection activities and the placement of telephone calls without*

21   *meaningful disclosure of the callers identity* [15 U.S.C.§1692d(6)].

22   **10.**   The FDCPA also prohibits, at15 U.S.C.§1692c, *without the prior consent*

23   *of the consumer given directly to the debt collector*, or the *express written*

24   *permission of a court of competent jurisdiction*, or as reasonably necessary to

25   effectuate a post judgement judicial remedy, communication by a debt collector in

26   connection with the collection of *any consumer debt*., with any person other than the

27   consumer, his attorney, a consumer reporting agency if otherwise permitted by law,

28   the creditor, the attorney of the creditor, or the attorney of the consumer debt collector.

11.    The RFDCPA *regulates collection agencies and original creditors attempting to collect consumer debts on their own behalf.* The California legislature has determined that the banking and credit system and grantors of credit to consumers are *dependent upon the collection of just and owing debts* and that *unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.* The Legislature has further determined that there is a need that debt collectors *exercise their responsibility with fairness, honesty, and due regard for the debtor's rights* and that debt collectors must be *prohibited from engaging in unfair or deceptive acts or practices.*

# I.  JURISDICTION AND VENUE

12.    Jurisdiction of this Court arises under 47 U.S.C.§227(b)(3)  and 15 U.S.C. §1692(k)(d),  supplemental jurisdiction also exists for the state law claims pursuant to California Stat.§1788 and California Code of Civil Procedure §410.10.

13.    Defendant GUARDIAN PROTECTION SERVICES, INC., all conduct business in the State of California and therefore, personal jurisdiction is established. The jurisdiction of this court is furthermore conferred by 15 U.S.C. §1681p.

14.    Venue is proper pursuant to 28 U.S.C. §1391b and California Civil Procedure §395(a). Venue in this Ninth District is proper in that Plaintiff CLARICE TUCK resides in San Diego County, the GUARDIAN PROTECTION SERVICES, INC.,  transacts business in San Diego County, and the conduct complained of occurred in San Diego County.

15.    This is an action for damages which *exceeds $100,000.00 U.S. Dollars*

///
///

## II.   PRIVATE RIGHT TO ACTION

**16.**   FCRA Sections 616 and 617, U.S.C. §1681o, create private right of action consumers can bring against violators of any provision of the FCRA with regards to their credit. In *DiMezza v. First USA Bank, Inc.* supra, the court confirmed that "[...] the plain language of [CRA Sections 616 and 617, 15 U.S.C. §1681n and §1681o] provide a private right of action for a consumer against furnishers of information who have willfully or negligently failed to perform their duties upon notice of a dispute. [...] there is a private right of action for consumers to enforce the investigation reporting duties imposed on furnishers of information."

**17.**   *Gorman v. MBNA America Bank*, N.A., No. 06-17226 further established Private Remedy Against Furnishers by consumers and FCRA Section 1681s-2(b) *triggers Defendants' furnisher's liability under this section*, since Plaintiff made his initial written disputes with the credit reporting agencies.

**18.**   California Civil Code §1785.15(f) expressly states that consumers "have a right to bring civil action against anyone [...], who improperly obtains access to a file, knowingly or willfully misuses file data, or fails to correct inaccurate file data" concerning a consumer's credit report. Plaintiff has further right to action pursuant to Cal. Civ. Code §1785.31(a), which states that Plaintiff as "any consumer who suffers damages as a result of a violation of this title by any person may bring an action in a court of appropriate jurisdiction against that person to recover actual, statutory, and punitive damages together with attorneys fees and costs, pursuant to 15 U.S.C. §1692(d)(5), together with such other and further relief as the Court may deem reasonable and just under the circumstances.

**19.**   *Sanai v. Saltz, et al.*, 2009 Cal. App. LEXIS 83 (Cal. App. 2d Dist. Jan. 26, 2009) established that consumers may re-plead their FCRA claims as violations of the CCRAA and that State claims are not preempted by the FCRA. In further support, courts have uniformly rejected creditors' and consumer reporting agencies' arguments that the FCRA bars State law claims. See *Sehl v. Safari Motor*

*Coaches, Inc.*, 2001 U.S. Dist. Lexis 12638 (U.S.D.C. N.D. Cal. 2001)(for detailed discussion); *Harper v. TRW*, 881F. Supp. 294 (U.S.D.C. S.D. Mich. 1995); *Rule v. Ford Receivables,* 36 F. Supp.2d 335 (U.S.D.C. S.D. Va. 1999); *Watkins v. Trans Union*, 118F. Supp.2d 1217 (U.S.D.C. N.D. Ala. 2000); *Swecker v. Trans Union,* 31 F. Supp.2d 536 (U.S.D.C. E.D. Va. 1998); *Saia v. Universal Card Svc.*, 2000 U.S. Dist. Lexis 9494, 2000 Westlaw 863979 (U.S.D.C. E.D. La. 2000); *Sherron v. Private Issue by Discover*, 977 F. Supp.2d 804 (U.S.D.C. N.D. Miss 1997); *Hughes v. Fidelity Bank*, 709 F. Supp.2d 639 (U.S.D.C. E.D. Pa. 1989).

**20.**   15 U.S. C.§1692k(a) states that "... any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of-."

**21.**   Cal Civ. Code §1788.30(a) states that "any debt collector who violates this title with respect to any debtor shall be liable to that debtor only in an individual action..."

# III.   THE PARTIES

**3.**   Plaintiff CLARICE TUCK, (hereinafter "TUCK") is a natural person and a resident of the State of California, San Diego North county, Vista, 92084.

**4,**   Upon information and belief Defendant GUARDIAN PROTECT SERVICES, INC., (hereinafter "GPS") is a foreign Corporation authorized to conduct business and collect consumer debts in California.

# IV.   FACTUAL ALLEGATIONS

**9.**   Plaintiff TUCK *has no prior or present established oral or written relationship* with the Defendant GPS  as it pertains to the alleged consumer debt account in <u>ANY *alleged amount*</u>.

**10.** Plaintiff TUCK *has no contractual obligation to pay* Defendants Defendant GPS  *anything*.

**11.** Plaintiff TUCK *has never given* Defendant GPS,  *express written*

1   *permission* to call Plaintiffs cellular phone more than forty(40) times between the

2   dates of February 25, 2015  to the present date.

3      **12.**   Defendant GPS called Plaintiff's cell phone private cell phone number

4   (760)-724-9439, from phone numbers (724) 741-3500, (484) 668-4033, more than

5   forty (40) times, ***many times more than once in the same business day***,  clearly

6   violating 15 U.S.C. §1692c(a).

7      **12.**   Plaintiff TUCK hereby moves this honorable court to take

8   "Judicial Notice" that none of the more than forty (40)  harassing consumer debt

9   collection calls placed  by  Defendant GPS ,  between the dates of

10   February 25, 2015 to the present date, *were made for emergency purposes* clearly

11   violating 47 U.S.C. §227(b)(1)(A)(iii).

12      **13.**   Plaintiff TUCK moves this honorable court that between the dates of

13   February 25, 2015 to the present date,  Defendant GPS, called Plaintiff TUCK's

14   private cell phone numbers (760)-724-9439, from phone numbers (724) 741-3500,

15   (484) 668-4033 more than forty(40) times, many times more than once in the same

16   business day violating the TCPA's strict statutory guidelines *by using automatic*

17   *telephone dialing system capabilities or artificial or prerecorded messages or*

18   *voices* on the Plaintiff's cell phone clearly violating 47 U.S.C. §227(b)(1)(A).

19      **14.**   Between the dates of February 25, 2015 and present day, Defendant GPS

20   called Plaintiff's private cell phone numbers (760)-724-9439, from phone numbers

21   (724) 741-3500, (484) 668-4033 more than forty(40) times. Defendant GPS

22   *asserted a right which is lacks to wit, the right to enforce* ANY consumer debt

23   allegedly owed by TUCK.

24      **15.**   Between the dates February 25, 2015 and present date Defendant

25   GPS  called Plaintiff's private cell phone numbers (760)-724-9439, which is

26   assigned to San Diego county cell phone service provider T-MOBILE, from phone

27   numbers (724) 741-3500, (484) 668-4033 from phone number (310) 649-0990

28   more than FORTY (40) times.

**16.**   Defendant GPS called Plaintiff TUCK's cell phone more than forty(40) times. Defendant GPS *failed to identify that they were consumer debt collectors* trying to collect alleged consumer debt originating during the year of 2014, allegedly owed by the Plaintiff TUCK.

**16.**   On numerous occasions the Plaintiff has demanded in writing that Defendants GPS provide TUCK with written "verification" and consumer debt validation and defined by 15 U.S.C. §1692g(1)(2)(5)(b) and the California Consumer Protection Statutes and Laws clearly demonstrate willful and non-compliance with 47 U.S.C. §227(b)(1)(A).

**17.**   Defendants GPS, by and thru their above-described actions violated the strict statutory guidelines set forth in §1692d of the Fair Debt Collections Practices Act (FDCPA) *by engaging in conduct the natural consequences of which is to harass, oppress, or abuse* the Plaintiff by calling her cell phone on more than forty (40) separate occasions over a four month period of time from February 25, 2015 thru April 17, 2015 {SEE EXHIBIT A attached herein} *Many of these cell phone calls were placed before the early morning hours of 8:00 am,* and many of *these same abusive calls* were placed multiple times on the very same day, all of which the Plaintiff has to pay for.

**18.**   Defendants GPS, *clearly violated* section §1692d(5) of the Fair Debt Collection Practices Act (FDCPA) and at the *very same time* violated the California Rosenthal Fair Debt Collection Practices Act (CFDCPA) Section §1788.17 by calling Plaintiff TUCK on her personal cell phone on more than forty (40) separate occasions and causing Plaintiff TUCK's cellular phone to ring repeatedly and continuously with the intent to annoy, abuse, or harass.

**19.**   This same consumer debt to GPS by Plaintiff TUCK arose out of a transaction that was primarily for *personal, family, or household purposes*.

**20.**   As Plaintiff *TUCK has no business debt* with the Defendant GPS, the alleged $1,700 plus U.S. dollar debt *presently sought now by Defendant GPS*

1  could only have been used _for personal purposes._

2  **21.**  During this same six month period of time the Defendant GPS ignored

3  all written attempts by Plaintiff TUCK to have the defendant GPS  _cease and desist_

4  all collection activities _immediately, instead,_ the Defendants _commenced an_

5  _ongoing daily six month campaign to harass, abuse and coerce Plaintiff TUCK_

6  _into paying the alleged_ $1,700 _plus dollar consumer debt._

7  **22.**  On June 26, 2015, Plaintiff TUCK sent Defendant GPS a Notice of

8  Intention to Commence Action by United States Certified

9  Mail Receipt No# 7014 0510 0001 5651 5908 _which the Defendant received and_

10  _signed for on July 1, 2015_. To date GPS  has not responded

11  to any/all communication efforts made by Plaintiff TUCK.

12

13

14

15

16

17

18

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

# V.  COUNT I
## VIOLATIONS OF THE TELEPHONE COMMUNICATIONS PRACTICES ACT (TCPA) 47 U.S.C. §227(b)(1)(A) AGAINST DEFENDANT GPS

23.     Plaintiff TUCK re-alleges and restates all fo the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 22 herein.

24.     In 1991, Congress enacted th TCPA [1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

25.     The TCPA regulates, among other things, the use of Voice and ATDS. Specifically, the plain language of Section §227(b)(1)(A) prohibits the use of an ATDS to make any call to a wireless number, or to use a Voice during such a call, in the absence of *an emergency* or the *prior express written consent* of the called party.[2]

26.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, telephone calls using a Voice or an ATFS are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the cell phone minutes are used. [3]

27.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that Voice and ATDS consumer debt collection calls to a wireless cell phone number by creditor or consumer debt collector are permitted only if the calls are made with the "prior express written consent" of the called party. [4] The FCC "emphasize[d] that prior express written consent is deemed to be granted only if the wireless number was provided during the transaction that resulted in the debt owed [5]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codiified at 47 U.S.C. §227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §201 et. seq.

[2] 47 U.S.C. §227(b)(1)(A).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

**27.**   The Declaratory Ruling further dictates that: " a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party consumer debt collector on behalf of that creditor are treated as if the creditor itself placed the call ."[6]

**28.**   Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on the Defendant GPS, to *demonstrate* that Plaintiff TUCK gave her *prior express written consent* to a Voice or an ATDS call to his cell phones within the meaning of the statute. [7]

**29.**   At all times pertinent hereto, GPS  has carried on its business by engaging in consumer debt collection practices. The Defendants both of them have made telephone calls to the cellular telephones of consumers for purposes of collecting consumer debts allegedly owed to them.

**I.    Defendant GPS Placed Debt Collectors' Calls To Plaintiff TUCK's Cellular Telephone Using a Voice And/Or An ATDS System;**

**30.**   At all times pertinent hereto, the Defendant GPS are Debt Collectors, have utilized a Voice during consumer debt collection calls made to the cellular telephones of consumers who had not, during the transaction that resulted in the alleged consumer debt, previously given GPS *express written permission or consent* to receive such calls.

**31.**   Calls utilizing Voice allow GPS to collect more debt.

**32.**   At all times pertinent hereto, GPS have utilized a Voice during debt collection calls which is one of this "industries newest innovations" which is "agentless" recorded messages as reminders."

**33.**   At all times pertinent hereto, GPS consumer debt collectors, have utilized a Voice, including a predictive dialer, to make debt collection calls to the private cellular telephones of consumers who had not, during the transaction that resulted in the alleged consumer debt, *ever* previously given GPS  *express written*

1   *permission or consent* to receive such calls.

2   **34.**   A predictive dialer is an ATDS within the meaning of the TCPA,

3   because it is equipment that, when paired with certain computer software,   has the

4   capacity to store or produce telephone numbers to be called and without human

5   intervention to dial such numbers at random, in sequential order, and/or from a

6   database of numbers.

7   **35.**   GPS  has entered into written contracts with all of its subsidiaries to use

8   predictive dialers, for example, the terms of the Collection Services Agreement

9   utilized by GPS require that consumers be contacted "via mail and predictive dialer

10   in an effort to collect on past due balances."

11   *See Lee v. Credit Mgmt., LP*, 2012 WL 113793, at *11 & n.17 (S.D. Tex. 2012).

12   **36.**   Calls utilizing an ATDS allow GPS to *collect  more debt*.

13   **37.**   At all times pertinent hereto, GPS has been aware that its

14   employees/personnel have utilized an ATDS because, *inter alia*, the use of an

15   ATDS is standard industry practice among consumer debt collectors., the

16   "predictive dialer enables us to reach more of our client's while maintaining a cost-

17   effective approach"and that the "dialer *** completes call campaigns more

18   quickly*** conducts the most effective calling strategies ***."

19   **38**   On information and belief, within the past four years, GPS have

20   ten of thousands of Voice and/or ATDS calls to the cellular telephones of

21   consumers *who had not*, during the transaction that resulted in the alleged consumer

22   debt, *previously given* GPS *prior written express consent* to receive such calls.

23
    **II.**   **Second Challenged Practice: GPS Making Calls To Cellular Telephones**
24                      **Using A Voice And/Or An ATDS**

25   **39.**   At all times pertinent hereto, GPS has utilized a Voice during consumer

26   debt collection calls to the cellular telephones of consumers who had not, during

27   the transaction that resulted in the consumer debt,  previously given GPS *express*

28   *written consent* to receive such calls.

**39.** At all times pertinent hereto, GPS has also utilized an ATDS, including a predictive dialer, to make consumer debt collection calls to the cellular telephones of consumers who had not, during the transaction that resulted in the debt, previously given GPS *express written consent* to receive such calls.

**40.** On information and belief, within the past four years, GPS has made thousands of Voice and/or ATDS calls to the cellular telephones to consumers who had not, during the transaction that resulted in the alleged debt, previously given GPS *prior express written consent to receive such calls.*

## III.   Plaintiff CLARICE TUCK

**41.** Plaintiff CLARICE TUCK is a "person" as defined by 47U.S.C.§153(39).

**42.** In 2015, Plaintiff TUCK began receiving automated telephone calls from GPS on her cellular telephone number (760) 724-9439.

**43.** For Example, Plaintiff TUCK's T-Mobile cell phone records show that he received incoming call from HCC and ACIC on at least the following dates:

| | | |
|---|---|---|
| a. | February 25, 2015; | (Two calls) |
| b. | February 26, 2015; | (Two calls) |
| c. | February 27, 2015; | |
| d. | February 28, 2015; | |
| e. | March 1, 2015; | |
| f. | March 2, 2015; | (Two calls) |
| g. | March 4, 2015; | (Two calls) |
| h. | March 5, 2015; | |
| g. | March 7, 2015; | |
| h. | March 8, 2015; | (Two calls) |
| i | March 10, 2015; | |
| j | March 11, 2015; | (Two calls) |
| k. | March 12, 2015; | (Two calls) |
| l . | March 13, 2015. | |

**44.** Defendant GPS made other calls, too, of which Plaintiff TUCK was unable to make a record of to date, the finding of and exact amount of these *multiple harassing calls* can be found out by the Plaintiff TUCK during the Discovery process of this matter set for Jury trial.

**45.** Plaintiff TUCK *has no relationship with the defendants* GPS .There exists *no contract* between Plaintiff TUCK and GPS for arbitration or otherwise.

**46.** GPS *utilized a predictive dialer to make all of the calls described above*.

**47.** GPS *utilized a Voice during at least some of the calls described above*.

**48.** *All of the calls described above were placed by* GPS to Plaintiff TUCK's cellular phone *solely to collect a consumer debt allegedly owed to GPS.*

**49. (TCPA) 47 U.S.C. §227(b)(1)(A) states in part;**

**(b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT**

**(1)** PROHIBITIONS - It shall be unlawful for any person within the United States, or person outside the United States if the recipient is inside the United States -

**(A)** to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice .

**50.** Defendant GPS *have demonstrated willful and knowing non-compliance* with 47 U.S.C. §227(b)(1)(A) *by using an automatic telephone dialing system* to call the Plaintiff's cell phone numbers from February 25, 2015 to the present date more than 40 times. All of these same call's were made to Plaintiff's cell phone (760) 724-9439, from phone numbers (724) 741-3500, (484) 668-4033 , all of Plaintiff TUCK's cell phone numbers have been listed on the "National Do Not Call List" since December 17, 2003.

**51.** Defendant GPS have committed more than forty (40) separate strict statutory violations of 47 U.S.C. §227(b)(1)(A). Accordingly Plaintiff TUCK is *entitled* to statutory damages in the amount of $500 dollars U.S. for the first *"unintentional"*

consumer collection call made to Plaintiff TUCK by the Defendant GPS placed on February 25, 2015 pursuant to 47 U.S.C. §227(b)(1)(A).

**52.** Plaintiff TUCK is *also entitled to* treble damages or $1500.00 dollars U.S. for *each* of the additional thirty nine (39) "*intentional*" debt collection calls placed by Defendant GPS to the Plaintiff's cell phone numbers (760) 724-9439 after this initial first "*unitentional*" call pursuant to 47 U.S.C. §227(b)(3)(B).

**53.** Defendant GPS have demonstrated *willful and knowing non-compliance* with 47 U.S.C. §227(b)(3)(B) as those calls were ALL "*intentional*", meaning the last thirty nine (39) consumer debt collection calls placed by Defendants GPS to Plaintiff TUCK's cellular phones are *subject to treble damages, or $1500 per call* pursuant to 47 U.S.C. §227(b)(3)(B) .

**54.** Defendants GPS have also demonstrated *willful or knowing non-compliance* with 47 U.S.C. §227(b)(1)(A)(iii) as 28 of the consumer debt collection calls made by the Defendants GPS to the Plaintiff are subject to *treble damages* pursuant to U.S.C. §227(b)(3) as these calls were *intentional*.

**55.** Plaintiff TUCK and Defendants GPS do not have an *established business relationship* within the meaning of 47 U.S.C. §227 *et seq.*

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against Defendants GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant to 15 U.S.C. §227(b)(1)(A), together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# VI.   <u>COUNT II</u>

### <u>VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT(FDCPA)</u><br><u>15 U.S.C. §1692(c)(a)(1) AGAINST DEFENDANT GPS</u>

**56.** Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 55 herein.

**57. 15 U.S.C. §1692(c)(a)(1) states in part;**

**COMMUNICATION WITH THE CONSUMER GENERALLY** without the *prior express written consent* of the consumer given directly to the consumer debt collector or the *express permission* of a court of competent jurisdiction, a consumer debt collector *may not* communicate with the consumer in connection with the collection of the consumer debt.

**58.**   As previously alleged, Defendant GPS are "debt collectors"within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. Section §1692 *et seq.* Defendants GPS engaged in conduct proscribed by 15 U.S.C. Section §1692e(8), namely, "Communicating or threatening to communicate to any person negative consumer credit information which is known or which should have known to be false, including the failure to communicate that a disputed consumer debt is disputed" Plaintiff TUCK reserves the right to allege other violations of the FDCPA as the facts of this case unfold.

**59.**   Plaintiff TUCK alleges Defendant GPS *violated other statutory provisions* of the Federal Fair Debt Collection Practices Act, as follows:

a. 15 U.S.C. Section §1692d: Defendant GPS has engaged in consumer debt collection efforts after they knew, and had determined, that it had no basis for continuing to pursue  Plaintiff TUCK. This had the natural consequences of harassing, abusing and oppressing Plaintiff TUCK.

b. 15 U.S.C. Section §1692e: Defendant GPS have threatened action, or taken action, including threats of negative credit reporting, threats of lawsuits and implicit or explicit threats of derogatory negative credit reporting, that cannot legally be taken because the alleged debt is not Plaintiff TUCK's debt.

c. 15 U.S.C. Section §1692f:  Defendant GPS have each used unfair or unconscionable means to collect or attempt to collect the alleged debt. Specifically, each has attempted to collect amounts not expressly authorized by law or by any agreement, and have continued to attempt collection in spite of cancellation of the underlying agreement.  In essence, there is no agreement and no obligation by which Mr. Tuck owes any monies to Defendant GPS, yet Defendant GPS persists to this day in its collection efforts.

**60.**   Defendant GPS knew or should have known that they placed more than forty (40) Voice and/or automated ADTS telephone calls to Plaintiff TUCK'S personal T-Mobile cellular phone numbers (760) 724-9439 between the dates of

February 25, 2015 to the present day were both inconvenient, annoying, and cost him money on his cell phone bills, defendant GPS *deliberately and intentionally* committed more than forty (40) separate and distinct statutory violations of 15 U.S.C. §1692(c)(a) . *Every single one* of these illegally placed calls was made by Defendants GPS *without* the *prior express written consent* of the consumer Plaintiff TUCK.

**61.**   As a result of these statutory violations of the Federal Fair Debt Collection Practices Act by Defendants GPS, Plaintiff TUCK has suffered general and special damages according to proof, and is entitled to a statutory penalty for each separate violation of Act.

**WHEREFORE,** Plaintiff TUCK demands judgement for damages and injunctive relief against Defendants GPS for actual statutory and punitive damages, attorney's fees and costs pursuant to 15 U.S.C. §1692(c)(a), together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# VII.   COUNT III
## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) §1692(d)(5) BY DEFENDANT GPS

**62.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 61 herein.

**63**. **15 U.S.C. §1692(d) states in part;**

> A debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**64. 15 U.S.C. §1692(d)(5) states in part;**
> Causing a telephone to ring or engaging any person in a telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number.

**65**. Defendants GPS violated 15 U.S.C. §1692(d)(5) by calling Plaintiff TUCK on her personal cell phone number (760) 724-9439

more than forty (40) separate times {*many times before 8:00 am in the morning*} {many times calling multiple times in the same day} directly causing the Plaintiff's personal cell phone to ring repeatedly and continuously with the *intent* to *annoy, abuse, or harass* the Plaintiff.  Every single one of these placed calls was made by Defendants GPS *without* the *prior express written consent* of the consumer, Plaintiff TUCK.

**66.**  During this same period of time between February 25, 2015 to the present day Defendant GPS's staff intentional and repeatedly called Plaintiff TUCK more than forty (40) times on her personal cell phone number (760) 724-9439. This has caused this 87 year old Plaintiff undue *stress, confusion*, and *long term nervousness* and *embarrassment*, including *unexpected increased cell phone bills that this Plaintiff could ill afford.*

**67.**  Plaintiff Tuck alleges that Defendants GPS caused her cell phone to ring on more than forty (40) separate occasions  between the dates of February 25, 2015 and the present day,  by causing her to answer these calls and either engage in a conversation with Defendant GPS's staff or have to listen to numerous pre-recorded messages left by Defendants GPS's  staff on TUCK'S cell phone message service accounts, which Plaintiff TUCK *has to pay monies for* .

**WHEREFORE**, Plaintiff demands judgement against Defendant GPS for actual, statutory, and punitive damages, attorneys fees and costs, pursuant to 15 U.S.C. §1692(d)(5),  together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# VIII.   COUNT IV
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) 15 U.S.C. §1692(d)(6) BY DEFENDANT GPS

**68.**  Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 67 herein.

**69**. **15 U.S.C. §1692(d)  states in part;**

> A consumer debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged consumer debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> *The placement of telephone calls without meaningful disclosure of the caller's identity.*

**70.**    Defendant GPS's staff/personnel violated 15 U.S.C. §1692(d)(6) by placing more than forty (40) automated and/or voice calls to  Plaintiff TUCK'S cell phones between the dates of February 25, 2015 and the present day. On several occasions these very same calls were made without meaningful disclosure of the caller GPS's true identity.  All forty (40) calls were independently placed at different times.

**71.**    Every single one of these more than forty (40) phone calls placed by Defendant GPS's staff personnel were being made *without* the *prior express written consent* of the consumer,  Plaintiff TUCK. This added to the Plaintiff's daily confusion and anxiety about these very same calls.

> *i.e.*    *Who is this person or machine on the other end of the phone?*
> *Why are they calling me almost every day, many times a day?*
> *Why are they leaving these strange messages?*
> *Why won't the people (when they do come on the line)*
> *not listen to me and stop calling me?*

**72.**    Defendant GPS are using the Plaintiff's age (87 years old) and inability to properly hear correctly in both ears against her, by continually calling her *sometime's more than once a day*, to *harass*, *annoy* and *coerce* her into paying an *alleged grossly inflated, non-existent consumer debt*.

**73.**    Defendant GPS *thru mailed  dunning letters and phone numerous harassing phone calls*  to Plaintiff TUCK *threatening* to report this same alleged non-existent consumer debt as a negative consumer debt item to be placed by Defendant GPS on all three National consumer credit reporting agencies that record and report Plaintiff TUCK's credit. *These very same*

1 | *illegal business activities  border  on the edge of professional business*
2 | *extortion practices*.

3 | **WHEREFORE,** Plaintiff TUCK demands judgement for damages
4 | against Defendant GPS for actual, statutory, and punitive damages, attorney's
5 | costs and fees pursuant to 15 U.S.C. §1692(d)(6) together with such other and
6 | further relief as the Court may deem reasonable and just under the circumstances.

7 | ## VIIII.   COUNT V
8 | **VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)**
**15 U.S.C.§1692(e)(10) BY DEFENDANT GPS**

9 | **74.** Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional
10 | allegations and general factual allegations in paragraphs 1 thru 73 herein.

11 | **75.** Defendant GPS violated 15 U.S.C. §1692(e)(10) by the use of *false*
12 | *representation* or *deception means* to *collect* or *attempt to collect a debt* or to *obtain*
13 | *information concerning a consumer.*

14 | **76.** Defendant GPS's staff *lied* to Plaintiff TUCK on numerous occasions
15 | from February 25, 2015 to the present day to gain information about the 87 year old
16 | Plaintiff CLARICE TUCK.

17 | **77.** **15 U.S.C. §1692(e) states in part;**
18 | A debt collector may not use any false, deceptive, or misleading
19 | representation or means in connection with the collection of any
consumer debt.Without limiting the general application of the
20 | foregoing.The following conduct is a violation of this section:

21 | **78.** **15 U.S.C. §1692(e)(10) states in part;**
22 | The use of any false representation or deceptive means to collect
or attempt to collect a consumer debt or obtain information
23 | about a consumer.

24 | **79.** Plaintiff TUCK received many more than (40) illegally placed calls by
25 | Defendant GPS staff personnel *months after* she had  requested in writing via
26 | certified mail on December 02, 2014 for *certification/validation* of the alleged
27 | consumer debt pursuant to U.S.C. §1692(g)(1)(2)(5)(b).

28 |

**80.**   Defendant GPS  received this same certified communication and GPS's staff personnel signed for it's receipt by U.S. postal mail on December 5, 2014 *not only ignored* this same *demand for certification/validation* of the alleged consumer debt, they *commenced a campaign in the early months of 2015* to harass, oppress, threaten, confuse this 87 year old Plaintiff. Plaintiff TUCK *experience long term emotional distress and confusion.*

**81.**   These same forty (40) illegally placed calls by Defendant GPS's staff constitute more than forty (40) separate and distinct statutory violations as defined by 15 U.S.C. §1692g(1)(2)(5)(b) and the California Consumer Protection Statutes/Laws.

**WHEREFORE,** Plaintiff TUCK demands judgement for damages against GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant to 15 U.S.C. §1692(e)(10)  together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## X.   COUNT VI
### VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 et seq. WILLFUL OR NON-COMPLIANCE BY DEFENDANT GPS

**82.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 81 herein.

**83.**   Defendant GPS is a  California Corporation.

**84.**   In or around March of 2015 Plaintiff TUCK, who is not a minor, checked her consumer credit report from all three national credit reporting agencies, Experian, Equifax, and Trans Union (collectively "CRAs"), and discovered multiple credit accounts reported by Defendant GPS in negative status.  These negative credit accounts were unfamiliar to Plaintiff TUCK, as she did not recall ever opening them and she was never informed by these furnishers of their negative credit reporting.

**85.**   On or about December of  2014 Plaintiff TUCK contacted the Defendant GPS and disputed in writing the unknown negative credit accounts being reported by

1   the Defendant GPS and collectively, pursuant to 15 U.S.C. §1681s-2(b). On or
2   about December 18, 2014, following his credit bureau disputes, Plaintiff TUCK
3   sent letters to these Defendants, in which he _demanded_ documentation
4   substantiating the existence, ownership and _accuracy_ of the negative consumer
5   credit accounts reported by each of them, _otherwise their immediate deletion from_
6   _his credit file_.

7       **86.**   Upon receipt of Plaintiff's disputes, Defendant GPS, each continued to
8   report disputed accounts to CRAs, without notice that the accounts had been
9   disputed by Plaintiff, all throughout the investigation period and thereafter. They
10  further failed to properly address Plaintiff's direct disputes with them and _failed to_
11  _provide for his requested_ "verification" and "validation" for these disputed negative
12  consumer accounts.

13      **87.**   On or about February and March of 2015,  Plaintiff TUCK followed up
14  with the Defendant GPS on multiple occasions in writing, resubmitted his requests
15  and demanding immediate deletion of the unverified accounts due to lack of
16  verification, but each of this correspondences went unanswered or were improperly
17  handled and responded to, all of his efforts and correspondences proved
18  unsuccessful in attaining Defendants GPS's cooperation.

19      **88.**   Regardless of Plaintiffs' numerous attempts to seek Defendant GPS's
20  continuously failed to answer back to Plaintiff TUCK with _appropriate proof of_
21  _investigation_ and _verification_ of the information in dispute and _grossly failed to_
22  _take corrective action_.

23      **89.**   These inaccurate consumer credit accounts negatively reflect upon
24  Plaintiff as a consumer, borrower/debtor and they negatively impact her
25  _creditworthiness_ and _financial standing_.

26      **90.**   Plaintiff TUCK has suffered financial and emotional distress as a direct
27  result of Defendant GPS's  violations, which include but are not limited to the
28  following:

1          a.   Actual damages arising from monetary losses related to denials to

2 new credit, loss of use funds, loss of credit and loan opportunities, excessive and/or

3 elevated interest in financial charges;

4          b.   Out of pocket expenses associated with communicating with

5 Defendants', disputing the negative credit information, and fees paid to attorneys

6 and credit professionals for the assistance attained in the process;

7          c.   Emotional distress and mental anguish associated with having

8 derogatory credit information transmitted about Plaintiff to other people both

9 known and unknown;

10         d.   <u>Decreased credit score and creditworthiness</u>, which may result in

11 the *<u>inability to obtain credit, employment or affordable housing without larger</u>*

12 *<u>security deposits on future attempts</u>*.

13    **91.**   Defendant GPS  knowingly and willfully violated the FCRA violations

14 include, but are not limited to the following:

15          a.   Failing to inform Plaintiff about negative credit reporting made on

16 his credit report, prior to within five (5) days of furnishing a collection account to

17 the CRAs, in violation of 15 U.S.C. §1681s-2(a)(7)(A);

18          b.   Failing to conduct a proper and complete investigation of disputed

19 negative consumer credit information upon the receipt of Plaintiff TUCK's disputes

20 in violation of 15 U.S.C.§1681s-2(a)(8)(E);

21          c.   Verifying disputed accounts with the CRAs prior to conducting

22 through investigation and without having substantiating support for such

23 verification;

24          d.   Reporting disputed information to the CRAs, without notice of

25 Plaintiff's dispute, during the investigation period and prior to providing

26 verification of accuracy in violation of 15 U.S.C.§1681s-2(a)(3);

27          e.   Out of pocket expenses associated with the communication with

28 Defendants, disputing the negative consumer credit information, and fees paid to

1  attorneys and credit professionals for their assistance attained in the process.;

2  **WHEREFORE**, Plaintiff TUCK demands judgement for damages against

3  GPS  for actual, statutory, and punitive damages, attorney's costs and fees

4  pursuant to 15 U.S.C. §1681 *et seq.* together with such other and further relief as

5  the Court may deem reasonable and just under the circumstances.

6  ## XI.   COUNT VII

7  ## VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA),
## 15 U.S.C. §1681b WILLFUL AND/OR KNOWING NON-COMPLIANCE
## BY DEFENDANT GPS

8

9  **92.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional

10  allegations and general factual allegations in paragraphs 1 thru 91 herein.

11  **93.**   The FCRA, 15 U.S.C.§1681b defines the *permissible purpose* for which

12  a person may obtain a consumer credit report.

13  **94.**   Such *permissible purposes* as defined by 15 U.S.C.§1681b are

14  generally, if the consumer makes application for credit, makes application for

15  employment, for underwriting of insurance involving the consumer, or is offered a

16  bona fide offer of credit as a result of the inquiry.

17  **95.**   Plaintiff TUCK has never had any business dealings or any accounts

18  with, made application for credit from, made application for employment with,

19  applied for insurance from, nor received a bona fide offer of credit from Defendant

20  GPS.

21  **96.**   At no time did Plaintiff TUCK give his consent for Defendant GPS to

22  acquire his consumer credit report from any consumer reporting agency.

23  **97.**    Defendant GPS has demonstrated willful and/or knowing non-

24  compliance with the FCRA, 15 U.S.C.§1681b and repeatedly violating Plaintiff

25  TUCK's right to privacy

26  **98.**   Defendant GPS had a duty to properly ascertain if there was any

27  legitimate permissible purpose before obtaining Plaintiff's consumer credit report

28  and Defendant GPSbreached said duty by failing to do so.

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant to 15 U.S.C. §1681b together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## XII.   COUNT VIII
### VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT AGAINST GPS

**99.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 98 herein.

**100.**   Within two years prior to the filing of the complaint in this action, Defendant GPS willfully and negligently violated the California Consumer Credit Reporting Agencies Act in at least the following ways:

  a.   By willfully and negligently failing, in the furnishing of derogatory credit information for the consumer report concerning Plaintiff TUCK, to follow reasonable procedures to assure maximum possible accuracy of the information in the report;

  b.   By willfully and negligently furnishing to credit reporting agencies information about the Plaintiff which Defendant GPS knew, or should have known, was incomplete, inaccurate and/or unverifiable;

  c.   By willfully and negligently failing to correct and/or delete the incomplete and inaccurate information in Plaintiff's consumer credit file after conducing an investigation;

  d.   By willfully and negligently failing to conduct an adequate investigation of Plaintiff's complaints, and by willfully and negligently failing to implement corrective actions once the outcome of such investigations were known, or should have been known to the Defendant GPS..

  e.   By willfully and negligently failing to have proper procedures and apparatus in place which would promptly and accurately delete or correct and incorrect, incomplete or inaccurate credit reporting.

**101.**    Each of the Defendant GPS willfully and negligently failed in their obligations to reinvestigate and correct the derogatory marks in Plaintiff's consumer credit reports. Plaintiff TUCK hereby alleges that the Defendant GPS inclusive policies and practices hinder and obstruct adequate and meaningful re-investigations, and that each Defendant knows of this effect of its policies and practices.

**102.**    As a proximate result of the willful and negligent actions of the Defendant GPS, Plaintiff TUCK has suffered both general and special damages in an amount which will be proven at time of trial. As provided under the cited laws, Plaintiff is entitled to actual damages, loss of wages, damage to credit reputation for may years, pain and suffering, costs and attorneys fees. Plaintiff is also entitled to punitive damages and statutory penalties for willful statutory violations of the California Consumer Credit Reporting Agencies Act.

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant to the California Consumer Credit Reporting Agencies Act  together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## XIII.   COUNT VIIII
### VIOLATIONS OF THE CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CALIFORNIA CIVIL CODE §1788 *et seq.* BY DEFENDANT GPS

Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 102 herein.

**103.**    Plaintiff TUCK is a *consumer* within the meaning of 15 U.S.C. §1692 *et seq.*

**104.**    Defendant GPS seeking to collect an alleged consumer debt from Plaintiff TUCK as defined by California Civil Procedure §1788(f).

**105.** The alleged GPS consumer debt account in question is a consumer transaction as defined by California Civil Procedure §1788(e), as the Plaintiff TUCK has allegedly received property, services or money from Defendant GPS, or an extension of credit, and such property, services or money was used primarily for personal, family or household purposes.

**106.** Defendant GPS also violated §1788.11(d) of the California Rosenthal Fair Debt Collection Practices Act (CFDCPA) by placing collection calls to the Plaintiff's cellular phone repeatedly and continuously so as to annoy, harass or embarrass the Plaintiff. *Plaintiff TUCK contends he has always paid all of his consumer bills in as timely manner as possible.*

**107.** Defendant GPS violated §1788.17 of the California Rosenthal Fair Debt Collection Practices Act (CFDCPA) by placing numerous harassing debt collection calls to the Plaintiff with *such frequency* as to be *unreasonable* and to *constitute direct intentional harassment* of the Plaintiff under the circumstances.

**108.** Defendant GPS also violated Section §1788.17 of the California Rosenthal Fair Debt Collections Practices Act (CFDCPA) by *continuously* failing to comply with the statutory regulations contained within the United States Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq.*

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against GPS for actual statutory and punitive damages, attorney's fees pursuant to §1788.30(b) and costs pursuant to §1788.30(c), the California Rosenthal Fair Debt Collection Practices Act CC1788 *et seq.*, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## VERIFICATION
## DECLARATION OF PLAINTIFF - CLARICE TUCK

I, CLARICE TUCK, declare as follows:

**111.** I am the In Pro Se Plaintiff in the above-entitled 9th Circuit District case.

**112.** I am of age, sound mind and competent to testify to all of the facts

based on first-hand knowledge of all of the aforementioned items so stated.

**113.** I have been damaged *financially*, *socially* and *emotionally* since February 2015 as a direct result of Defendant GPS's unlawful actions and conduct including more than twenty forty (40) calls to my cellular phones.

**114.** have read the foregoing pleading's in their entirety and believe all of the fact's therein so stated to be both *true and correct*.

**115.** I declare under the penalty of perjury pursuant to the laws of California and the Courts of the United States, that the foregoing is true and correct to the best of my knowledge, information and belief.

**116.** Plaintiff TUCK demands judgement for damages against Defendant GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant to pursuant to §1788.30(b) and costs pursuant to §1788.33(c) together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

**117.** Plaintiff CLARICE  TUCK hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully submitted to this court this 29 th day of January  2016.

**WHEREFORE,** Plaintiff CLARICE TUCK,   prays for judgment as follows:

1. For actual, general and special damages according to the proof at trial;

2. For statutory penalties or civil penalties for each separate statutory violation where allowed by statute.

3. For punitive damages against Defendants according to proof at trial and using the applicable punitive damages standards from the involved statutes;

4. For attorney's fees where authorized by statute or law;

5. For costs and expenses of suit; and

6.  For such other relief as the court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL**

Dated this _29th_ day of January 2016   By: _____

                                        Clarice Tuck, Plaintiff In Pro Se

///
///
///
///
///
///
///
///
///
///

1  **CLARICE TUCK v. GUARDIAN PROTECTION SERVICES, INC.,**

2  **United States District Court Case No.** 15-CV-1376-JLS-(JLB)

3  **CERTIFICATE OF SERVICE**

4       I, Richard Caruse, hereby certify that I am over the age of 18 and

5  not a party to this action caused to be served upon the Defendants

6  GUARDIAN PROTECTION SERVICES, a true and correct copy

7  of the following document(s):

8       **\* 2ND AMENDED COMPLAINT FOR DAMAGES**
         **AND INJUNCTIVE RELIEF**
9

10 Via U.S. mail, first class, addressed to Defendant's last known reported

11 address as follows:

12      Robert M. Linn (State Bar #190387)
        COHEN & GRIGSBY, P.C.
13      625 LIBERTY AVENUE
        PITTSBURG, PA 15222-3152
14      Ph: (412) 297-4900

15      Attorneys for Defendant
        GUARDIAN PROTECTION SERVICES, INC.,
16

17

18      _Richard Caruso   1-28-16_
        _____

19          Richard Caruso - Mailer of Defendants Conformed Copies

20

21

22

23

24

25

26

27

28

## EXHIBIT E

| Call Total | Date | Time | Called From |
|---|---|---|---|
| Call #1 | February 25, 2015 | 9:51 a.m. | From (724) 741-3500 |
| Call #2 | February 25, 2015 | 10:59 a.m. | From (484) 668-4033 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| Call #3 | February 26, 2015 | 1:39 p.m. | From (484) 668-4033 |
|---|---|---|---|
| Call #4 | February 26, 2015 | 2:36 p.m. | From (724) 741-3500 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| Call #5 | February 27, 2015 | 2:36 p.m. | From (724) 741-3500 |
|---|---|---|---|
| Call #6 | February 28, 2015 | 2:36 p.m. | From (724) 741-3500 |
| Call #7 | March 1, 2015 | 2:37 p.m. | From (724) 741-3500 |
| Call #8 | March 2, 2015 | 12:15 p.m. | From (484) 668-4033 |
| Call #9 | March 2, 2015 | 2:37 p.m. | From (724) 741-3500 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| Call #10 | March 4, 2015 | 12:17 p.m. | From (484) 668-4033 |
|---|---|---|---|
| Call #11 | March 4, 2015 | 2.37 p.m. | From (724) 741-3500 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| Call #12 | March 5, 2015 | 2:37 p.m. | From (724) 741-3500 |
|---|---|---|---|
| Call #13 | March 7, 2015 | 2:37 p.m. | From (724) 741-3500 |
| Call #14 | March 8, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #15 | March 10, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #16 | March 11, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #17 | March 11, 2015 | 6:53 p.m. | From (484) 668-4033 |

*Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

Exibit A

Page 1

| | | | |
|---|---|---|---|
| 1 | Call #18 | March 12, 2015 | 3:37 p.m. | From (724) 741-3500 |
| 2 | Call #19 | March 12, 2015 | 6:04 p.m. | From (484) 668-4033 |

3  *Note \* Plaintiff TUCK's cell phone was called twice on the above day from*
4  *two different separate  phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| 5 | Call #20 | March 13, 2015 | 3:37 p.m. | From (724) 741-3500 |
| 6 | Call #21 | March 14, 2015 | 3:37 p.m. | From (724) 741-3500 |
| 7 | Call #22 | March 15, 2015 | 3:38 p.m. | From (724) 741 3500 |
| 8 | Call #23 | March 16, 2015 | 3:38 p.m. | From (724) 741-3500 |
| 9 | Call #24 | March 18, 2015 | 11:47 a.m. | From (484) 668-4033 |
| 10 | Call #25 | March 18, 2015 | 3:38 p.m. | From (724) 741-3500 |

11  *Note \* Plaintiff TUCK's cell phone was called twice on the above day from*
    *two different separate  phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| 12 | Call #26 | March 19, 2015 | 9:43 a.m. | From (484) 668-4033 |
| 13 | Call #27 | March 21, 2015 | 8:44 a.m. | From (484) 668-4033 |
| 14 | Call #28 | March 23, 2015 | 3:39 p.m. | From (724) 741-3500 |
| 15 | Call #29 | March 24, 2015 | 9:45 a.m | From (484) 668-4033 |
| 16 | Call #30 | March 24, 2015 | 4:50 p.m. | From (724) 741-3500 |

17  *Note \* Plaintiff TUCK's cell phone was called twice on the above day from*
18  *two different separate  phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| 19 | Call #31 | March 25, 2015 | 4:50 p.m. | From (724) 741-3500 |
| 20 | Call #32 | March 26, 2015 | 4:50 p.m. | From (724) 741-3500 |
| 21 | Call #33 | March 27, 2015 | 4:50 p.m. | From (724)-741-3500 |
| 22 | Call #34 | March 28, 2015 | 4:50 p.m. | From (724) 741-3500 |
| 23 | Call #35 | March 30, 2015 | 4:50 p.m. | From (724) 741-3500 |
| 24 | Call #36 | April 1, 2015 | 4:50 p.m. | From (724) 741-3500 |
| 25 | Call #37 | April 2, 2015 | 4:50 p.m. | From (724) 741-3500 |
| 26 | Call #38 | April 3, 2015 | 4:51 p.m. | From (724) 741-3500 |
| 27 | Call #39 | April 12, 2015 | 4:52 p.m. | From (724) 741-3500 |
| 28 | Call #40 | April 17, 2015 | 4:52 p.m. | From (724) 741-3500 |

Exibit A