Robert M. Linn (State Bar # 190387)
rlinn@cohenlaw.com
COHEN & GRIGSBY, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Phone: (412) 297-4900
Fax: (412) 209-0672

Attorneys for Defendant
Guardian Protection Services, Inc.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARICE TUCK,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>GUARDIAN PROTECTION SERVICES, INC.,<br><br>　　　　　Defendant. | CASE NO. 15-CV-1376-JLS(JLB)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Date:　March 31, 2016<br>Time:　1:30 p.m.<br>Ctrm:　4A<br>Judge:　Hon. Janis L. Sammartino |

-i-

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant Guardian Protection Services, Inc. ("Defendant" or "Guardian"), by and through its attorneys, Cohen & Grigsby, P.C., files the following Reply Memorandum of Points and Authorities in Further Support of Its Motion to Dismiss for Failure to State a Claim in response to the Second Amended Complaint filed by Plaintiff Clarice Tuck ("Plaintiff").

## I.     INTRODUCTION

In her most recent submissions, Plaintiff makes clear that this truly frivolous action is not what it purports to be — i.e., a suit arising from unauthorized bulk telemarketing calls and unfair debt collection practices — but is instead a Trojan horse through which she hopes to air an unrelated grievance with a stranger to the lawsuit, all in an effort to avoid paying the early-termination fee required under her contract and punish Guardian for holding her to her end of the bargain.  Plaintiff's latest attempt to twist the factual underpinnings of her claims — via her Response to Guardian's Motion — provides further confirmation of the baseless nature of this action.  Because Plaintiff has demonstrated that she cannot allege a cause of action against Guardian that is "plausible on its face," after three failed attempts at doing so, her claims should be swiftly dismissed, with prejudice.

## II.     DISCUSSION

**A.  Plaintiff Has Clearly Demonstrated That Further Amendment Would Be Futile Because Her Own Submissions Show That the Statutes upon Which She Bases Her Claims Have No Application Here.**

In responding to Guardian's Motion to Dismiss her Second Amended Complaint ("Guardian's Motion to Dismiss"), Plaintiff appears to criticize Guardian's reference to, and attachment of, her signed agreements.  However, Plaintiff expressly concedes in her Response to Guardian's Motion to Dismiss ("Plaintiff's Response") that the first

-1-

pages of the agreements attached as exhibits to Guardian's Motion are true and correct copies of the agreements that she had signed. Plaintiff's Response ¶ 13 ("One page [the only page this plaintiff has ever seen, agreed to or signed] is a Contract or Monitoring Agreement signed by plaintiff TUCK in front of AMP SECURITY salesm[a]n CLIFF COCKERALL with [] plaintiff[']s signature and phone number clearly indicated therein." (first alteration in original)).

While Plaintiff admits that the first pages of the agreements attached as exhibits to Guardian's Motion are true and correct copies of her written agreements with Guardian, she appears to contest the authenticity of the "terms and conditions" pages of those agreements. However, Plaintiff's suggestion that these pages are not the terms to which she had agreed is simply incredible and should not prevent this Court from considering them.[1] Moreover, although the terms and conditions provide further details on the assignor-assignee relationship between AMP Security and Guardian — as well as the mechanics of Guardian's monitoring service, which helps to explain why

---

[1] The second page of the Sales and Installation Agreement ("SIA") has an identification number printed in the bottom right-hand corner that corresponds exactly with the number in the bottom right-hand corner of the first page that Plaintiff had attached to her First Amended Complaint ("FAC"). See Guardian's Motion to Dismiss, Exhibit B, SIA, at 1, 2 (both listing the following identification number: CP-GP-AMP-2110-Dealer 4/13). As for the Monitoring Agreement, the first page of that Agreement contains the following provision directly beneath Plaintiff's handwritten initials: "By initialing above, You acknowledge receiving and reading the appropriate terms and conditions in Sections 2 and 3 and/or Addenda to this Agreement." Guardian's Motion to Dismiss, Exhibit A, Monitoring Agreement, Section B. Further, Section C of the Monitoring Agreement references specific sections in the terms and conditions in such a way as to make clear that the terms and conditions referenced in Section C are the terms and conditions attached as Exhibit A to Guardian's Motion to Dismiss. See id., Section C(III)(5) ("We may increase the Monthly Service Fee during any renewal term for any other reason pursuant to Section 11."); id., Terms and Conditions, ¶ 11 (dealing with price changes); see also id., Section H ("SEE SECTIONS 9 AND 11 OF THIS MRA FOR ADDITIONAL INFORMATION ABOUT NON-PAYMENT, DEFAULT AND RATE INCREASES"); id., Terms and Conditions, ¶¶ 9, 11 (discussing non-payment, default and rate increases).

-2-

Plaintiff received calls after removing the equipment and throwing it in the trash — they are not essential to any of Guardian's arguments. Indeed, the Court need look no further than the first pages of Plaintiff's written agreements — the pages that Plaintiff herself had attached to her FAC, the authenticity of which is undisputed — to see that Plaintiff's claims fail as a matter of law.

On the first page of the Monitoring Agreement, in the very first section, the agreement states that it "may be assigned to Guardian Protection Services, Inc." and that "AMP and Guardian are sometimes referred to as 'Company', 'We', 'Us' or 'Our'." Monitoring Agreement, Section A. On the first page of the Sales and Installation Agreement, Plaintiff designated her cellular phone number — the very number Plaintiff claims Guardian violated federal law by calling — as the Pre-Dispatch Verification Phone Number, SIA, Section B, and she listed that same number as her preferred means of communication with Guardian on the first page of her Monitoring Agreement, see Monitoring Agreement, Section B (selecting "cellular" as preferred means of communication); id., Section A (listing cell phone number as 760-724-9439). Together, these facts show that the phone calls alleged by Plaintiff were not automated bulk telemarketing calls or unfair debt collection practices, but were instead Guardian's efforts to fulfill its contractual obligation to place the very calls about which Plaintiff now complains. Because both of these facts are evident from the first page of each agreement — the pages that Plaintiff admits to signing — and therefore do not require this Court's consideration of the terms and conditions that were attached thereto, Plaintiff's incredible assertion that she never received the terms and conditions that accompanied her agreements — even if taken as true — has no impact on the proper disposition of Guardian's Motion to Dismiss.

As Guardian noted in its principal Memorandum, "[p]rior express consent is a complete defense to Plaintiff[']s TCPA claim[,]" and it "can be demonstrated when the called party gives her wireless number to the person initiating the phone call 'without

-3-

instructions to the contrary.'" Reardon v. Uber Techs., Inc., No. 14-CV-05678-JST, 2015 WL 4451209, at **6-7 (N.D. Cal. July 19, 2015) (citation omitted).  Not only did Plaintiff "g[i]ve[] her wireless number to the person initiating the phone call 'without instructions to the contrary[,]'" she indicated unequivocally that she "*preferred*" that *any* communication from AMP Security, or its assignee Guardian, come through that very number.  Because the unchallenged portion of Plaintiff's signed agreements establish that the phone calls that form the basis of this lawsuit were made with her "prior express written consent," her claims under 47 U.S.C. § 227(b)(1)(A) fail as a matter of law.  See Baird v. Sabre Inc., 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014).

Likewise, even without the terms and conditions — which, as noted in Guardian's principal Memorandum, clearly show that the calls she received were "distress signals" caused by her improper removal of the system,[2] not "debt collection" calls — it is abundantly clear that the Federal Fair Debt Collection Practices Act and the California Rosenthal Fair Debt Collection Practices Act are entirely inapplicable to this lawsuit.  The first pages of Plaintiff's agreements show that — to the extent that Plaintiff alleges that she received phone calls relating to a "debt" — Guardian was acting not as a "debt collector," but rather as a provider of services that Plaintiff had actually contracted to receive.

Both the federal FDCPA and the California Rosenthal FDCPA apply *only* to those who satisfy the appropriate statutory definition of the term "debt collector."  See Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1208 (9th Cir. 2013) (noting the FDCPA "appl[ies] only to debt collectors' as defined by the [Act]" (citations omitted)); Rosal v. First Federal Bank of California, 671 F.Supp.2d 1111, 1135 (N.D. Cal. 2009) ("To be held liable for violation of the RFDCPA, a defendant must fall

---

[2] In her Response, Plaintiff returns to her narrative involving "the fact that she had disconnected the same system on her own and thrown it in the trash."  Plaintiff's Response ¶ 6.

-4-

within the Act's definition of 'debt collector.'" (citations omitted)). Therefore, Plaintiff's claims cannot survive unless she can allege facts from which this Court could plausibly infer that Guardian meets those statutory definitions. Specifically, to state a claim under the federal FDCPA, Plaintiff must demonstrate that the "principal purpose" of Guardian Protection Services, Inc. is debt collection or that Guardian "regularly collects … debts … *owed or due another*." Id.; 15 U.S.C. § 1692a(6) (emphasis added). Similarly, to plead a cause of action under the RFDCPA, Plaintiff must show that Guardian "in the ordinary course of business, regularly … engages in debt collection." Id. (quoting Cal. Civ. Code § 1788.2(c)).

Plaintiff here has done neither. Indeed, the exhibits attached to Plaintiff's own FAC — the authenticity of which Plaintiff has conceded — confirm that Guardian is not a "debt collector," but is instead a provider of home-security services that — like any other for-profit business — charges a fee for its service. Because Plaintiff has demonstrated that she cannot establish Guardian's status as a "debt collector" under the FDCPA or the RFDCPA, she cannot plead a viable claim against Guardian for violating those statutes.[3]

Finally, as explained in Guardian's principal Memorandum, out of all of the new claims asserted for the first time in Plaintiff's Second Amended Complaint ("SAC") — i.e., Counts VI through VIII — the only claim that could, in theory, be asserted in a private civil action against an entity that is not a credit reporting agency — i.e.,

---

[3] At this juncture, it bears repeating that although Plaintiff does not allege facts to establish that Guardian is a "debt collector" under either statutory definition, she does allege that "all of the calls" that she claims violated the TCPA "were placed by [Guardian] to Plaintiff TUCK's cellular phone solely to collect a consumer debt allegedly owed to [it]." SAC ¶ 48. Because the FCC has recognized that debt-collection calls are categorically "not autodialer calls[,]" In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 7 FCC Rcd 8752, 8769, ¶ 39, 1992 WL 690928 (Oct. 16, 1992), these allegations in Plaintiff's SAC necessarily preclude her TCPA claims as a matter of law.

-5-

1  Plaintiff's claim under 15 U.S.C. § 1681b — is rendered, at the least, factually
2  implausible by the first pages of Plaintiff's agreements and Plaintiff's own allegation
3  that all of the alleged calls were made "solely to collect a consumer debt[,]" SAC ¶ 48.
4  See Guardian's Principal Memorandum, at 19-22 n.10.  In her Response, Plaintiff has
5  made no effort to refute — or even address, for that matter — Guardian's arguments in
6  this regard.[4]

7        The Ninth Circuit Court of Appeals has held that "if a complaint is dismissed for
8  failure to state a claim upon which relief can be granted, leave to amend may be
9  denied, even if prior to a responsive pleading, if amendment of the complaint would be
10 futile."  Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir.) amended, 856 F.2d 111 (9th
11 Cir. 1988).  Accordingly, "[i]f [a] district court determines that the 'allegation of other
12 facts consistent with the challenged pleading could not possibly cure the deficiency,'
13 then [] dismissal without leave to amend is proper."  Id. (citation omitted).

14       Given the allegations in Plaintiff's SAC, and the first pages of Plaintiff's written
15 contracts, it is abundantly clear that the factual basis of this lawsuit — to wit, the
16 phone calls that Guardian allegedly placed to the cell phone number that Plaintiff had
17 designated in her contracts — has absolutely nothing to do with "bulk telemarketing
18 calls" or "fair debt collection practices."  Indeed, Plaintiff's own submissions
19 conclusively establish that the statutes under which she has filed this lawsuit *could not*
20 *have been* violated by Guardian's alleged phone calls.  Because "allegation of other
21 facts consistent with the challenged pleading could not possibly cure the
22 deficienc[ies]" in Plaintiff's SAC, it should be dismissed with prejudice.

---

[4] For this reason, Counts VI through VIII of Plaintiff's SAC should be summarily dismissed, as Guardian's Motion to Dismiss is unchallenged with respect to those claims.

-6-

### B. Plaintiff's Repeated Contradiction of the Key Facts Underlying Her Claims Precludes This Court As a Matter of Law from Finding That She Has Stated a Claim That Is Plausible on Its Face.

As Guardian explained in its principal Memorandum, the vast majority of Plaintiff's allegations are little more than a parroting of statutory language, completely devoid of any factual detail whatsoever. These pleading deficiencies are compounded by the fact that the few factual allegations offered by Plaintiff are inconsistent not only with allegations that she has made in other pleadings, but also with allegations appearing in the very same submission.

In her original Complaint, Plaintiff premised this action upon the allegation that Guardian had placed 40 calls to her cell phone. Compl. ¶ 13. Then, in response to Guardian's Motion to Dismiss her Complaint, Plaintiff filed her FAC. In certain parts of her FAC, Plaintiff asserted that Guardian had placed 39 calls to her cell phone, while in other parts continuing to aver that 40 phone calls were made. See, e.g., FAC ¶¶ 26-27. Subsequently, in her SAC, Plaintiff claimed that Guardian had placed *over 40* calls to her cell phone. SAC ¶ 15. Now, in Plaintiff's Response to Guardian's Motion to Dismiss her SAC, Plaintiff claims that "in reality," Guardian actually placed *over 200* calls to her cell phone. Plaintiff's Response ¶ 9. Plaintiff offers no explanation for the discrepancy.

Not only is the factual narrative presented in Plaintiff's Response inconsistent with her SAC, as well as her prior pleadings, but it is also internally inconsistent. For example, in one section of her Response, Plaintiff suggests that Guardian is "trying to hold [her] to a five[-]year contract she does not remember … signing with her signature." Plaintiff's Response ¶ 7. However, as noted above, later in the very same pleading, Plaintiff alleges that the first page of each agreement — which she states is "the only page [she] has ever seen, agreed to or signed" — "is a Contract or Monitoring Agreement signed by plaintiff TUCK in front of AMP SECURITY

-7-

salesm[a]n CLIFF COCKERALL with [] plaintiff[']s signature and phone number clearly indicated therein." Id. ¶ 13.

Plaintiff's false and inconsistent allegations could — depending on the circumstances — support a finding of bad faith, which, as this Court is aware, would empower the Court to not only dismiss the action, but also require Plaintiff to pay Guardian's attorney's fees. See Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S. Ct. 2123, 2132-33 (1991) (noting that the power to order "outright dismissal of the lawsuit … is within the court's discretion[, and c]onsequently, the 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power as well." (citations omitted)). Although Guardian reserves the right to pursue bad faith sanctions at a later date, it is not presently seeking that remedy. However, that does not in any way diminish the role that Plaintiff's repeated self-contradiction on the factual underpinnings of this action should play in this Court's analysis of Guardian's Motion.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). To satisfy the "plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). Here, because Plaintiff has utterly failed to allege a consistent factual narrative, this Court could not reasonably infer from her pleadings that Guardian violated *any* state or federal statute. Accordingly, Plaintiff's false and woefully inconsistent allegations preclude this Court from finding that she has stated a claim that is "plausible on its face."

While Plaintiff is proceeding *pro se*, her ever-changing, inconsistent factual narrative — and her steadfast refusal even to attempt to satisfy federal pleading standards — cannot be blamed on her lack of representation. It is well established that

-8-

"*pro se* litigants are bound by the rules of procedure" just like parties represented by counsel.  Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (citation omitted). Therefore, "even though proceeding *pro se*, [Plaintiff] must comply with the Federal Rules of Civil Procedure or risk being subject to sanctions." Ramondetta v. Philips Elecs. Ltd., No. C-07-3329 EMC, 2007 WL 4209443, at *1 (N.D. Cal. Nov. 27, 2007). Accordingly, although Guardian is keenly aware that Plaintiff is not represented by counsel, it is she who has initiated this action, and her status as a *pro se* litigant does not exempt her from the obligation to comply with federal pleading standards.  See Ghazali, 46 F.3d at 54.  Because Plaintiff has thrice demonstrated that she cannot plead a cause of action against Guardian, this Court should dismiss her SAC, with prejudice.

### III.   CONCLUSION

For the reasons set forth herein, and in Guardian's principal Memorandum, Guardian respectfully requests that this Honorable Court dismiss Plaintiff's Second Amended Complaint, with prejudice.

Dated:  March 17, 2016

Respectfully submitted,

COHEN & GRIGSBY, P.C.

By: s/ Robert M. Linn
Robert M. Linn (SBN 190387)
625 Liberty Avenue
Pittsburgh, PA 15222-3152
rlinn@cohenlaw.com
(412) 297-4900
(412) 209-0672 (fax)

Attorneys for Defendant
Guardian Protection Services, Inc.

2240318.v1

-9-

Clarice Tuck v. Guardian Protection Services, Inc.
United States District Court Case No. 15-CV-1376-JLS(JLB)

# CERTIFICATE OF SERVICE

I, Robert M. Linn, hereby certify that I caused to be served upon the Plaintiff a copy of the following document:

- **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

via U.S. Mail, First Class, at Plaintiff's last reported address as follows:

Clarice Tuck
1600 E. Vista Way #110
Vista, CA 92084

Executed on **March 17, 2016**, in Pittsburgh, Pennsylvania.

                                s/ Robert M. Linn
                                   Robert M. Linn