1  Clarice Tuck
   1600 E. Vista Way #110
2  Vista, CA 92084
   Ph: 760-724-9439
3

4  Plaintiff In Pro Se

5

6

7

FILED

OCT 07 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8  **IN THE UNITED STATED DISTRICT COURT**
   **SOUTHERN DISTRICT OF CALIFORNIA**
9

10  CLARICE TUCK,                              Case No. 3:15-CV-1376-JLS(JLB)

11          Plaintiff,                         **3rd AMENDED COMPLAINT FOR**
                                               **DAMAGES AND INJUNCTIVE**
12  vs.                                        **RELIEF PURSUANT TO:**

13  GUARDIAN PROTECTION SERVICES, INC.         **1) TELEPHONE CONSUMER**
                                               **PROTECTION ACT**
14          Defendant.                         **(TCPA) 47 U.S.C. §227** *et. seq.*

15                                             **2) DECLARATORY RELIEF**

16

17

18

19

20                                             **DEMAND FOR JURY TRIAL**

21                                             **Hon. Judge Janis L. Sammartino**
                                               **United States District Judge**
22

23              **3rd AMENDED COMPLAINT**

24

25       COMES NOW, CLARICE TUCK  Plaintiff proceeding In Pro Se in the

26  above-entitled case, as an individual hereby sues the above-named Defendant

27  GUARDIAN PROTECTION SERVICES, INC., for strict statutory violations of the

28  United States Telephone Consumer Protection Act (TCPA) 47 U.S.C. §227 *et. seq.*

-1-

*Court Copy (1)*

# I. JURISDICTION AND VENUE

**1.** Jurisdiction of this Court arises under 47 U.S.C.§227(b)(3) and 15 U.S.C.§1692(k)(d), supplemental jurisdiction also exists for the state law claims pursuant to California Stat.§1788 and California Code of Civil Procedure §410.10.

**2.** Defendant GUARDIAN PROTECTION SERVICES, INC., conducts business in the State of California and therefore, personal jurisdiction is established. The jurisdiction of this court is furthermore conferred by 15 U.S.C. §1681p.

**3.** Venue is proper pursuant to 28 U.S.C. §1391b and California Civil Procedure §395(a). Venue in this Ninth District is proper in that Plaintiff CLARICE TUCK resides in San Diego County. GUARDIAN PROTECTION SERVICES, INC., transacts business in San Diego County, and the conduct complained of occurred in San Diego County.

**4.** This is an action for damages which *exceeds $50,000.00 U.S. Dollars* .

# II. THE PARTIES

**5.** Plaintiff CLARICE TUCK, (hereinafter "TUCK") is a natural person and a resident of the State of California, San Diego North county, Vista, 92084.

**6.** Upon information and belief Defendant GUARDIAN PROTECTION SERVICES, INC., (hereinafter "GPS") is a foreign Corporation authorized to conduct business and collect consumer debts in California.

# III. FACTUAL ALLEGATIONS

**7.** On July 29, 2013, Plaintiff TUCK had a perfectly good "Life Alert" home security system up and running and easy for her to use. Within moments she was conned and lied to by a trespassing salesmen selling her a home security and personal monitoring system she *did not even need, nor had the knowledge to use*. This same salesmen took advantage of the Plaintiff's 86 years of age by lying to the Plaintiff stating he was sent by "Life Alert" to check her present home security system, after gaining access to her home he talked her into a new updated security system and changed his story mid-spiel and claimed to represent a Utah based company named "AMP SECURITY".

-2-

**8.** After several months of nothing but problems with her AMP SECURITY SYSTEM Plaintiff TUCK decided to call AMP SECURITY and disconnect her highly complicated troublesome home security system. When Plaintiff TUCK called AMP SECURITY's corporate offices located in American Fork, Utah to have her system disconnected and her billing ceased she was informed that her signed home security system contract had been assigned [sold] (without her knowledge) to a third party company named GUARDIAN PROTECTION SERVICES [above-named ' Defendant] "GPS" with their corporate office located in Warrendale, Pennsylvania.

**9.** Plaintiff TUCK in her original contract with AMP SECURITY had authorized the trespassing salesman to pay for her new home security system with a monthly "auto-pay" service which was deducted directly out of her Los Angeles Fireman's Credit Union bank account on a monthly basis and paid directly to the Warrendale, PA offices of GPS.

**10.** On or about November of 2014 after only four (4) months of using a home security system that caused her nothing but problems and was impossible to understand the Plaintiff at 86 years of age was left with the challenge of dealing with a third party company she had never dealt with before and had no idea was taking monies out of her personal bank account every month, i.e. GPS, **[SEE EXHIBIT "A"]**.

**11.** On or about November of 2014 Plaintiff TUCK was told a story by her personal hair dresser of many years that her hair dressers 89 year old mother had recently been sold four (4) separate home security systems by this same AMP/GUARDIAN business collusion at her home in Temecula, CA. **[That's three (3) more billed security systems then any home or person would ever require or need]**, she went on to say that GPS was *well known on the internet for targeting and ripping off old people.* Soon thereafter Plaintiff TUCK perused the internet for other unsuspecting older people's reviews regarding AMP/GUARDIAN and she was shocked and appalled at what she was quickly able to discover and learn in a very short period of time,
**[SEE EXHIBIT "B" - NEGATIVE ONLINE REVIEW #1]** and also
**[SEE EXHIBIT "C" - AMP SECURITY NEGATIVE ONLINE REVIEW #2 & REVIEW #3 ]**

**12.** Plaintiff TUCK soon thereafter called GPS offices on several occasions to try to amicably resolve her issues by phone explaining many of the issues she had with GPS and soon learned that not only was GPS not going to turn off her security service signal they were going to continue to charge her bank account on a monthly basis until 08/17/2018 or for more than four (4) more years, she went on to say there was nothing else she or GPS could do, [**SEE EXHIBIT 'D"**] This letter was dated December 02, 2014, and was attempt to resolve this home security issue informally, cease and desist collection activities immediately and all harassing consumer collection calls. [*GPS went on to ignore this communication and demand in it's entirety*].

**13.** Over a month and a half went by after Plaintiff TUCK mailed her initial demand letter to GPS *which went un-answered and ignored*. During this same time period Plaintiff TUCK had her son disconnect the entire AMP/GUARDIAN home security system and *since it was her equipment had him throw the system in the trash*. GPS barraged the Plaintiff with phone calls, dunning letters demanding payment, and sent technicians or employees by her home at very late hours [9 p.m. in the evening] banging on her door and yelling through her window at her.

**14.** Plaintiff TUCK later called GPS by phone complaining about her situation and informing their phone employees to quit harassing her, the employee stated that there was nothing she could do and GPS would continue to bill her until 08/17/2018. Plaintiff Tuck followed up these telephone conversations with written certified letters [**SEE EXHIBIT "E"**] . This second letter dated January 05, 2015 is self-explanatory.

**15.** More than eighty (80) days- almost three (3) months after receiving Plaintiffs first *cease and desist demand letter* dated December 02, 2014 and more than fifty six (56) days- nearly two months after receiving plaintiff second *cease and desist demand letter* dated January 05, 2015, Defendant GPS *waged an all out consumer debt collect campaign against Plaintiff TUCK* by mailing dunning payment demand letters and also illegally placing more than forty (40) illegal consumer collection calls to her Cricket Wireless GREATCALL personal cell phone number (760) 724-9439,[**SEE EXHIBIT'S "F" & "G"**] of which she had to pay for

-4-

**16.** Defendant GPS not only totally ignored all of Plaintiff TUCK'S numerous emails, telephone calls and certified mail written requests to *cease and desist all collection activities and reporting* over a more than three (3) month period of time, GPS continued on vigorously with their illegal consumer collection harassment campaign against the 86 year old Plaintiff almost on a daily basis for more than one hundred and twenty five (125) days (more than four (4) months **[SEE EXHIBIT "H"]**, and as stated in writing by Alicia Lyons, Customer Service Department in this letter dated April 06,2015, this GPS employee continues on this highly illegal consumer collection threat/activity by bluntly stating in writing here that GPS fully intends to continue to selectively construe any requests made by Plaintiff TUCK and will continue to bill Plaintiff TUCK for years to come [08/07/2018]. Redundantly claiming 180,000 satisfied customers.

**17.** On numerous occasions Plaintiff TUCK has demanded in writing that Defendant GPS provide Plaintiff TUCK with written "verification" and consumer debt validation and defined by 15 U.S.C. §1692g(1)(2)(5)(b) and the California Consumer Protection Statutes and Laws. To date, GPS has completely ignored all written requests mailed via U.S. certified mail, Defendant GPS has clearly demonstrated willful and non-compliance with 47 U.S.C. §227(b)(1)(A).

**18.** Defendant GPS has been requested in writing via certified mail <u>on more than one occasion</u> for "verification" and debt validation request as defined by 15 U.S.C. §1692 *et. seq*. Plaintiff TUCK has also tried to use U.S. Civil Codes and this very same Ninth District Court **[SEE EXHIBIT "I"]** to move Defendant GPS to verify/validate this same alleged consumer debt by and through their attorney, but even this federal civil pleading motion properly pled and filed in this Court *has gone utterly ignored by Defendant GPS to date*.

**19.** Plaintiff TUCK'S personal cell phone number (760) 724-9439 has been on the "National Do Not Call List"since December 17, 2003.

-5-

20. Plaintiff TUCK *has no prior or present established oral or written relationship* with the Defendant GPS as it pertains to the alleged consumer debt account in ANY *alleged amount[s]*.

21. Plaintiff TUCK *has no contractual obligation to pay* Defendant GPS *anything*.

22. Plaintiff TUCK *has never given* Defendant GPS, *express written permission,* to call Plaintiffs cellular phone more than forty (40) times between the dates of February 25, 2015 and April 17, 2015. *GPS ignored cease and desist efforts.*

23. Defendant GPS called Plaintiff's private cell phone number (760)-724-9439, from phone numbers (724) 741-3500, (484) 668-4033, more than forty (40) times, *many times more than once in the same business day,* clearly violating 15 U.S.C. §1692c(a).

24. Plaintiff TUCK alleges that none of the more than forty (40) *intentional* harassing consumer debt collection calls placed by Defendant GPS between the dates of February 25, 2015 and April 17, 2015 *were made for emergency purposes* clearly violating 47 U.S.C. §227(b)(1)(A)(iii).

25. Plaintiff TUCK further alleges that between the dates of February 25, 2015 and April 17, 2015 the Defendant GPS, called Plaintiff TUCK's private cell phone number (760)-724-9439, from phone numbers (724) 741-3500, (484) 668-4033 more than forty(40) times, *many times more than once in the same business day* clearly violating the TCPA's strict statutory guidelines by using an automatic telephone dialing system and/or a telephone with automatic telephone dialing system **"capabilities"** or leaving artificial or prerecorded messages or voices on the Plaintiff's cell phone clearly violating 47 U.S.C. §227(b)(1)(A).

26. Between the dates of February 25, 2015 and April 17, 2015, Defendant GPS called Plaintiff TUCK'S private cell phone number (760)-724-9439 from phone numbers (724) 741-3500 and (484) 668-4033 more than forty(40) times. Defendant GPS *asserted a right which is lacks to wit, the right to enforce* ANY consumer debt allegedly owed by TUCK.

-6-

**27.** Between the dates February 25, 2015 and April 17, 2015 Defendant GPS called Plaintiff's private cell phone numbers (760)-724-9439, which is assigned to San Diego county cell phone service provider Cricket Wireless Greatcall, from phone numbers (724) 741-3500, (484) 668-4033 from phone number (310) 649-0990  more than forty (40) times *failing to identify that they were consumer debt collectors* trying to collect alleged consumer debt originating during the year of 2014, allegedly owed by the Plaintiff TUCK to GPS.

**28.** This same  consumer debt allegedly owed to GPS by Plaintiff TUCK arose out of a transaction that was primarily for *personal, family, or household purposes*.

**29.** As Plaintiff TUCK *has no business debt* with Defendant GPS, the alleged $1,700 plus U.S. dollar debt presently sought now by Defendant GPS *could only have been used for personal purposes.*

**30.** On June 26, 2015, Plaintiff TUCK sent Defendant GPS a Notice of Intention to Commence Action by United States Certified Mail Receipt No# 7014 0510 0001 5651 5908 *which the Defendant received and signed for on July 1, 2015*. To date GPS has not responded to any/all communication efforts made by Plaintiff TUCK.

///
///
///
///
///
///
///
///
///

# IV.  COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) 47 U.S.C. §227(b)(1)(A) AGAINST DEFENDANT GPS

**31.** Plaintiff TUCK re-alleges and restates all fo the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 30 herein.

**32.** In 1991, Congress enacted th TCPA [1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

**33.** The TCPA regulates, among other things, the use of Voice and ATDS. Specifically, the plain language of Section §227(b)(1)(A) prohibits the use of an ATDS to make any call to a wireless number, or to use a Voice during such a call, in the absence of *an emergency* or the *prior express written consent* of the called party.[2]

**34.** According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, telephone calls using a Voice or an ATFS are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are **charged for incoming calls** whether they pay in advance or after the cell phone minutes are used. [3]

**35.** On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that Voice and ATDS consumer debt collection calls to a wireless cell phone number by creditor or consumer debt collector are permitted only if the calls are made with the "prior express written consent" of the called party. [4] The FCC "emphasize[d] that prior express written consent is deemed to be granted only if the wireless number was provided during the transaction that resulted in the debt owed [5]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codiified at 47 U.S.C. §227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §201 et. seq.

[2] 47 U.S.C. §227(b)(1)(A).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

**36.**     The Declaratory Ruling further dictates that: " *a creditor* on whose behalf an auto-dialed or prerecorded message call is made to a wireless number *bears the responsibility for any violation of the Commission's rules*. Calls placed by a third party consumer debt collector on behalf of that creditor are treated as if the creditor itself placed the call ."[6]

**37.**     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on the Defendant GPS, to *demonstrate* that Plaintiff TUCK gave her *prior express written consent* to GPS to use a Voice and/or a ATDS system to call to her cell phones within the meaning of the statute. [7]

**38.**     At all times pertinent hereto, GPS  has carried on its daily National business by engaging in *consumer debt collection practices*.

## V. Defendant GPS Placed Debt Collection Calls To Plaintiff TUCK'S Cellular Telephone Using a Voice And/Or An ATDS System;

**39.**     Calls utilizing Voice and/or an ATDS System allow GPS to ***collect more debt***.

**40.**     At all times pertinent hereto, GPS has utilized a Voice and/or ATDS System during debt collection calls which is one of this "***industries newest innovations***" which is "agentless" delivering thousands of recorded messages as reminders."

**41.**     At all times pertinent hereto, GPS are consumer debt collectors, have utilized a Voice and/or ATDS System , including a predictive dialer to make debt collection calls to the private cellular telephones of thousands of consumers who *had not*, during the transaction that resulted in the alleged consumer debt, *ever* previously given GPS ***express written permission or consent*** to receive such calls.

**42.**     A predictive dialer is an ATDS System within the meaning of the TCPA, because it is equipment that, when paired with certain computer software,  has the capacity to store or produce telephone numbers to be called and without human intervention to dial such numbers at random, in sequential order, and/or from a database of numbers.

**43.** At all times pertinent hereto, GPS has been aware that its employees/personnel have utilized ATDS System's because, *inter alia*, the use of an ATDS System is standard industry practice among consumer debt collectors, the "predictive dialer enables us to reach more of our client's while maintaining a cost-effective approach"and that the "dialer *** completes call campaigns more quickly *** conducts the most effective calling strategies ***."

## VI. PLAINTIFF CLARICE TUCK

**44.** Plaintiff CLARICE TUCK is a "person" as defined by 47U.S.C.§153(39).

**45.** In February of 2015, Plaintiff TUCK began receiving numerous almost daily automated telephone calls from GPS, and calls from GPS employees who wanted to talk to her about her alleged outstanding GPS bill on her cellular telephone number (760) 724-9439. Many of these calls required Plaintiff TUCK to enter into long unwanted conversations with GPS bill collecting personnel. All of these harassing calls cost Plaintiff TUCK monies on her monthly cell phone bill and depleted the battery power on her cell phone battery.

**46.** For Example, Plaintiff TUCK's Cricket Wireless Greatcall cell phone records show that she received incoming calls from Defendant GPS on more than forty (40) separate and distinct times **[SEE EXHIBIT'S "F" & "G"]**.

**47.** Defendant GPS made numerous other calls to Plaintiff TUCK'S cell phone of which Plaintiff TUCK was unable to make a record of to date, the finding of and exact amount of these *multiple harassing calls* can be found out by Plaintiff TUCK during the Discovery process of this matter set for Jury trial.

**48.** Plaintiff TUCK *has no relationship with the defendants* GPS .There exists *no contract* between Plaintiff TUCK and GPS for arbitration or otherwise.

**49.** GPS *utilized a predictive dialer to make all of the calls described above*.

**50.** GPS *utilized a Voice and/or ATDS System during at least some of the calls described above*.

3rd AMENDED COMPLAINT FOR DAMAGES
CASE NO. 3:15-CV-01376-JLS-JLB

1   **51.** *All of the forty (40) calls described above were placed by* GPS to Plaintiff
2   TUCK's cellular phone *solely to collect a consumer debt allegedly owed to GPS.*

3   **52. (TCPA) 47 U.S.C. §227(b)(1)(A) states in part;**

4   **(b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT**

5   **(1) PROHIBITIONS - It shall be unlawful for any person within the**
    **United States, or person outside the United States if the recipient is**
6   **inside the United States -**

7   **(A) to make any call (other than a call made for emergency purposes or**
    **made with the prior express written consent of the called party) using**
8   **any automatic telephone dialing system or an artificial or**
    **pre-recorded voice.**
9

10  **53.** Defendant GPS *has demonstrated willful and knowing non-compliance*
11  with 47 U.S.C. §227(b)(1)(A) *by using an automatic telephone dialing system* to
12  call the Plaintiff's cell phone numbers from February 25, 2015 to April 17, 2015
13  more than 40 times. All of these same call's were made to Plaintiff's cell phone
14  (760) 724-9439from phone numbers (724) 741-3500 and (484) 668-4033, all of
15  Plaintiff TUCK's cell phone numbers have been listed on the
16  "National Do Not Call List" since December 17, 2003.

17  **54.** Defendant GPS has committed more than forty (40) separate strict
18  statutory violations of 47 U.S.C. §227(b)(1)(A). Accordingly Plaintiff TUCK is
19  *entitled* to statutory damages in the amount of $500 dollars U.S. for the first
20  *"unintentional"* consumer collection call made to Plaintiff TUCK by Defendant
21  GPS placed on February 25, 2015 pursuant to 47 U.S.C. §227(b)(1)(A).

22  **55.** Plaintiff TUCK is *also entitled to* treble damages or $1500.00 dollars
23  U.S. for *each* of the additional thirty nine (39) *"intentional"* debt collection calls
24  placed by Defendant GPS to the Plaintiff's cell phone numbers (760) 724-9439
25  after this initial first *"unitentional"* call pursuant to 47 U.S.C. §227(b)(3)(B).

26  **56.** Plaintiff TUCK and Defendant GPS **do not have** an *established*
27  *business relationship* within the meaning of 47 U.S.C. §227 *et seq.*

28

-11-

# **PRAYER**

**WHEREFORE,** Plaintiff CLARICE TUCK, prays for judgment as follows:

1. For actual, general and special damages according to the proof at trial;
2. For statutory penalties or civil penalties for each separate statutory violation where allowed by statute.
3. For punitive damages against Defendants according to proof at trial and using the applicable punitive damages standards from the involved statutes;
4. For attorney's fees where authorized by statute or law;
5. For costs and expenses of suit; and
6. For such other relief as the court deems just and proper.

# **DEMAND FOR JURY TRIAL**

**57.** Plaintiff CLARICE TUCK hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully submitted to this court this $\underline{6^{th}}$ day of October 2016.

By: _Clarice Tuck_____
     Clarice Tuck, Plaintiff In Pro Se

-12-

## VERIFICATION DECLARATION
## OF PLAINTIFF - CLARICE TUCK

I, CLARICE TUCK, declare as follows:

**58.** I am the In Pro Se Plaintiff in the above-entitled 9th Circuit District case.

**59.** I am of age, sound mind and competent to testify to all of the facts based on first-hand knowledge of all of the aforementioned items so stated.

**60.** I have been damaged *financially*, *socially* and *emotionally* since February 2015 as a direct result of Defendant GPS's unlawful actions and conduct including more than twenty forty (40) calls to my cellular phones.

**61.** have read the foregoing pleading's in their entirety and believe all of the fact's therein so stated to be both *true and correct*.

**62.** I declare under the penalty of perjury pursuant to the laws of California and the Courts of the United States, that the foregoing is true and correct to the best of my knowledge, information and belief.

**63.** Plaintiff TUCK demands judgement for damages against Defendant GPS for actual, statutory, and punitive damages, attorney's costs and fees pursuant to pursuant to §1788.30(b) and costs pursuant to §1788.33(c) together with such other and further relief as the Court may deem reasonable and just under the circumstances.

Respectfully submitted to this court this ⅄ day of October 2016.

By: _Clarice Tuck_
Clarice Tuck, Plaintiff In Pro Se

-13-

**CLARICE TUCK v. GUARDIAN PROTECTION SERVICES, INC.,**

**United States District Court Case No.** 15-CV-1376-JLS-(JLB)

**CERTIFICATE OF SERVICE**

I, Richard Caruso, hereby certify that I am over the age of 18 and not a party to this action caused to be served upon the Defendants GUARDIAN PROTECTION SERVICES, a true and correct copy of the following document(s):

> \* 3ND AMENDED COMPLAINT FOR DAMAGES
>    AND INJUNCTIVE RELIEF

Via U.S. mail, first class, addressed to Defendant's last known reported address as follows:

Robert M. Linn (State Bar #190387)
COHEN & GRIGSBY, P.C.
625 LIBERTY AVENUE
PITTSBURG, PA 15222-3152
Ph: (412) 297-4900

Attorneys for Defendant
GUARDIAN PROTECTION SERVICES, INC.,


_____Richard Caruso_____       Oct 6th 2016

Richard Caruso - Mailer of Defendants Conformed Copies

# EXHIBIT "A"



**GUARDIAN**
protection services
*One of the Amazing Group of Companies*

174 Thorn Hill Rd. • Warrendale, PA • 15086

IF YOU HAVE ANY QUESTIONS PLEASE CALL:

BILLING RELATED QUESTIONS: 1-800-250-6426

ALARM SYSTEM ASSISTANCE: 1-888-895-4805

| STATEMENT DATE |
| :---: |
| 11/18/2014 |
| CUSTOMER NUMBER |
| 6012236 |

0000058188  **AUTO**MIXED AADC 350

TUCK, CLARICE
1600 E VISTA WAY
UNIT 110
VISTA CA  92084-3433

### PAYMENT DUE UPON RECEIPT

Save Postage and go GREEN - make your payment at https://customercare.guardianprotection.com/

| DATE | DESCRIPTION | | AMOUNT |
| :---: | :--- | :---: | ---: |
| | PREVIOUS BALANCE | | .00 |
| | TUCK, CLARICE      1600 E VISTA WAY      92084 | | |
| 11/18/2014 | Security Services 11/18/14 to 12/17/14 | 34274769 | 57.99 |
| 11/18/2014 | SERVICE CHARGE 11/18/14 to 12/17/14 | 34274769 | 2.00 |
| | | **TOTAL AMOUNT DUE** | **59.99** |

---

**TO INSURE PROMPT CREDIT PLEASE RETURN THIS PORTION OF BILL WITH YOUR PAYMENT.**



**GUARDIAN**
protection services
*One of the Amazing Group of Companies*

174 Thorn Hill Rd. • Warrendale, PA • 15086

| CUSTOMER NUMBER | AMOUNT DUE | AMOUNT PAID |
| :---: | :---: | :---: |
| 6012236 | 59.99 | |

TUCK, CLARICE
1600 E VISTA\WAY
UNIT 110
VISTA, CA  92084

PLEASE ENTER YOUR ACCOUNT NO. ON CHECK AND
MAKE PAYABLE TO:

**GUARDIAN PROTECTION SERVICES**
P.O. Box 37751
Philadelphia, PA 19101-5051

01 006012236 00000005999 1        "EXHIBIT A"

EXHIBIT "B"

# I. NEGATIVE REVIEW #1

Agnes Johnson said the alarm installer gently took her hand and placed it on the signature line. The <u>89-year-old</u> Sun City resident is nearly blind and couldn't see what she was signing. But she said the helpful, friendly AMP SECURITY representative told her "<u>it was to acknowledge that her alarm was installed.</u>" It wasn't until after the installer left that Johnson said she discovered she had signed a five-year contract.

In Sun City West, Beatrice Anderson signed a similar contract with Guardian Protection Services Inc., agreeing to pay $45 a month for the next five years. <u>Anderson is 93 and has dementia.</u> Her care giver said she had no idea what she was signing. The new contract came on top of an existing contract with an affiliated alarm company already charging Anderson $36 a month.

Security companies sell alarm systems as a form of protection. But what happened to these Valley seniors reflects dozens of consumer complaints about *aggressive sales tactics and deceptive marketing ploys*. "I think what they are doing is taking advantage of the elderly, especially when one woman is blind and the other has dementia," said Sharon Price, a Sun City West resident who helps care for Anderson. "It is wrong." Anderson said when AMP installed Anderson's new system, she had about 3 1/2 years left on her contract with Guardian Protection Services, which continued billing her each month.

AMP is an authorized dealer for Guardian Protection Services, Inc., Price said she made several calls last month to officials with AMP Alarm in American Fork, Utah and Guardian Protection Services in Warrendale, Pa., on Anderson's behalf. Customer-service representatives gave her the runaround, she said.

Frustrated, she took Anderson's case to the Arizona Attorney General's Office, and a consumer advocate called AMP. Price said company officials refused to resolve the issue and demanded a letter directly from the AG's office.

That changed last week after Price asked Call 12 for Action to contact AMP on Anderson's case. Within hours, the company notified Price that it would cancel Anderson's contract and was working with Guardian to do the same.

"We would never intentionally sell something to somebody who has dementia," AMP spokesman Mike Melzer said last week, adding that company sales representatives were unaware of her condition when they signed her up for coverage.

This is not the first time AMP has battled deceptive-practices allegations. In a 2011 lawsuit, the Minnesota Attorney General's Office accused the company of "false and deceptive tactics to sell security alarm systems door-to-door." AMP in November settled the case, which prohibited the company from selling new alarm systems in the state. The company also agreed to cancel systems for customers who raised prior concerns about misrepresentations and deceptive conduct.

Melzer said AMP had only billed Anderson once and would not bill her again. The cancellation of AMP and Guardian contracts will save Anderson about $81 a month, for a total savings of about $3,940 over the life of both contracts.

Price said Anderson does not need an alarm system. Price said she was thankful that AMP did the right thing. But she said it likely would not have happened were it not for Call 12 for Action.

Johnson's case ended a little differently. She said she was tricked by the promise of free service from a local alarm company, AMP sales representative.

"I just opened the door to this guy in my face," Johnson said last week. "He kept saying it was a promotion and it was free."

She said the installer arrived the same afternoon, removed her existing Guardian Security system and put in the new system; then he helped her sign the form committing her to a contract with Guardian Protection Services Inc., compliance director Joseph Shields said Friday that he was appalled by the report.

EXHIBIT B

1 "We absolutely don't condone any kind of illegal activity," Shields said.

2 Guardian Protection Services monitors alarm systems for more than 250,000

3 customers and <u>doesn't make direct sales</u>. Shields said the company <u>relies</u> on

4 authorized dealers to make sales and has strict policies for dealing with complaints

5 over deceptive practices. He said when deception is suspected, their policy is to

6 make sure the customer contracts are immediately canceled, costs are charged

7 back to the dealer, and the dealer is fined.

8 In some cases, contracts with the dealer are terminated.

9 Consumer complaint websites, including Consumer Affairs and

10 Ripoff Report.com., show dozens of complaints from people alleging they were

11 deceived by AMP SECURITY representatives. Many complaints point directly at

12 the five-year contract.

13 The Better Business Bureau gives the company an F rating. It shows the company

14 has received 498 complaints in the past three years; 170 related to sales and

15 advertising and 263 for product and service's. Many of these cases go on for

16 months and months and are later reported as un-resolved.

17 Johnson said she is blind in her left eye and losing sight in her right.

18 "I couldn't read the contract." Once she went over the contract with a magnifying

19 glass, she said she filed a complaint with the Maricopa County Sheriff's Office.

20 Johnson said AMP canceled her contract within days of the installation.

21 But Guardian Protection Services continues to send her bills, even though the

22 security system installer took all of the Guardian equipment.

23 She said she is paying about $59 each month for a security system she doesn't

24 have."All I want is my old system back," she said.

25 <u>The aforementioned negative review was found on the internet by</u>

26 <u>the Plaintiff TUCK in early 2015 and copied by her from AZCentral.com</u>

27 <u>an Arizona based National consumer business reviewing company that is in the</u>

28 <u>business of posting consumer reviews on the internet.</u>

---

1   By Robert Anglen The Republic | azcentral.com Mon Nov 5, 2012 11:39 PM

2   http://archive.azcentral.com/business/call12foraction/articles/20121101security-co

3   ntracts-draw-complaints.html   - "(Internet link)"

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B

# EXHIBIT "C"

# I. AMP SECURITY NEGATIVE REVIEW #2

AMP Security is a scam and should be reported on every TV, radio and newspaper in the country! Two young men suckered my 84 year old mother into installing their security system at her home, even though she said they needed to talk to her daughter first! They showed up at her door un-announced at 4:00 p.m. on a Saturday and within and hour, had toured her home and installed their Guardian Protection Services system. When my sister and I found out what happened it took a week to get someone from Guardian to cancel everything. We got the runaround from every person we spoke with on the phone, or we were left on hold. One person told my mother the AMP security salesmen look for homes with "No Soliciting" signs because that usually means that an elderly person lives there and most likely, they are elderly females and are an easier sale. It makes me sick there are people like Guardian Protection Services and AMP security with no ethics operating companies that are supposed to make you feel safer in your home. Actually, people with no ethics make me sick.

{**Yelp Review posted on the internet by Jane N. Of Long Beach, CA 5/20/2015**}

# I. AMP SECURITY NEGATIVE REVIEW #3

Scammers; came by my house, told me everything would be totally free since AMP Security was testing out my area and wanted advertising. After four hours of aggressive and pushy sales pitches and having hardware installed I was totally worn down, and then I find out that I am paying $55 per month for FIVE years. Then I am told I can only cancel if I pay $1,250.00 dollars up front for early termination fee's which I cannot afford. I still have another four (4) years to go and I'm struggling to pay the monthly fee, but they could care less. FALSE sales pitch, aggressive salespeople. I felt worn down and pressured into this service!!!

///

///

///

EXHIBIT "D"

Clarice Tuck
1600 E. Vista Way #110
Vista, Ca 92084
Ph: 760-724-9439

Guardian Protection Services
174 Thorn Hill Road
Warrendale, PA 15086
Ph: 1-800-250-6426

Re: Demand for Disconnection of Service Demand to End Contract (Secret Code No# 1928)
    Demand for Payment of $200.00 to Repair my Thermostat Wiring

Date: December 2, 2014

Attention Guardian Services,

My name is Clarice Tuck and I am writing you this letter to demand that you disconnect my security services account immediately as well as negate any outstanding bills with a zero balance.

Approximately one year ago a third party salesmen peddling your security system "**illegally**" entered my private adult mobile home park and knocked on my door. *Soliciting is illegal and banned in my community park.*

At the time I was already hooked up and very happy with my "Life Alert" system but this same third party salesman went on to tell me that if I decided to go with his security system "Guardian" that he could convert me over to this newer advanced Guardian service and receive more feature's *"for free"* and save me money. He went on to tell me that if I advertised for your company and placed your Guardian Security sign in my yard that for doing this I would get all of the equipment and all of the installation services **for free** as well.

I am now finding out that this is not the case at all. This salesmen did not represent your company at all and illegally led me to believe he did. He told me things that were not true and lied to me directly. He also never informed me that I was to be held to any kind of written contract or terms whatsoever. Now that time has gone on (one year) I now have learned what a con artist this same salesmen really was.

During the year I did pay for and receive your protections services I had nothing but problems with my system. I had several service calls and every month it seemed like there was some sort of problem. I also found out in short order that the system was extremely difficult to understand and so was the instruction manual. I even had technicians come out from your company and try to teach me how to use the equipment but this did not help.

This system compounded into me going many days and night's without heating or air-conditioning because I was unable to have the acute knowledge it takes to operate the complicated thermostat which your system also controlled. I was perfectly happy with my old generic basic thermostat. The third party salesmen also never mentioned that Guardian would be cutting my furnace and AC wires to install sensors for the new system or completely changing the original factory wiring to my furnace. I would have never allowed this to happen if it was explained to me ahead of time.

-1-

"EXHIBIT D"

After a year of nothing but problems and paying a lot more per month for an advanced system I did not need nor did I understand, I decided to call in and shut off my service and turn in my equipment. When doing so I was told by your company several different things on several different phone calls by different people;

Call #1 - *Your staff person told me by phone that the salesmen who came to my door had no connections whatsoever with your Guardian company and that Guardian Security was not liable in any way for anything this third party salesmen told me or anything we agreed upon. This same Guardian staff person went on to tell me in the very next sentence that I was going to be penalized or fined/charged a $750.00 dollar "early disconnection fee", .*

Call #2 - *When I called Guardian a second time I explained to your company that the third party salesmen told me my equipment was free in exchange for advertising for your company. I was told at this time from this person that this was not true. I was being charged $750.00 dollars for the equipment. Which statement is true by which staff member?*

Note * Even though your staff person told me that this third party salesmen was not a legal representative or was employed by Guardian Security, your Guardian company did not have a problem using this third party salesmen agreement with me to withdraw monthly payments for this security system I had nothing but problems with, Guardian Security is also using this same agreement to exploit a $750.00 early termination fee from me.

I would like to hereby notice your Guardian Security company of the following;

1 - I do not intend to pay any more monthly fee's for a cumbersome expensive Guardian Security system which has been un-installed by me and placed in a box.

2 - I do not intend to have to pay or be forced to pay $750.00 dollars for a early termination fee, Equipment fee or otherwise.

3 - I am 86 years old and I firmly believe that I was taken advantage of by your Guardian Company Third party salesmen, I was coerced into signing a five year contract with early termination fee's and never properly informed of this. (Elderly abuse)

4 - I am presently seeking legal assistance with my local Senior Citizens legal assistance network to protect myself from this entire bogus coerced Guardian Security five year contract and your companies continued monthly billing practices. (Elderly abuse)

5 - I am also hereby demanding that Guardian Security company reimburse me $200 dollars that I had to pay a local licensed heating and AC Technician to remove your wiring from my system and repair the system back to provide heat and AC to my home.

Please respond to me directly with your future intentions.

Sincerely submitted,

*Clarice Tuck*

Clarice Tuck

-2-

EXHIBIT D "

# EXHIBIT "E"

**Clarice Tuck**
**1600 E. Vista Way #110**
**Vista, Ca 92084**
**Ph: 760-724-9439**

**Guardian Protection Services**
**174 Thorn Hill Road**
**Warrendale, PA 15086**
**Ph: 1-800-250-6426**

**Re: Demand to End Signed Contract and Quit Billing Cycle.**

**Date: January 15, 2015**

Attention Guardian Services,

Please read the enclosed two (2) page letter I mailed to your office on December 2nd slowly and carefully.

I have been instructed by my senior citizens legal aide attorney to mail you this second demand letter along with my first one under her direction.

I am again hereby requesting again that your company discontinue my Guardian service and I am here to contest with my attorney any penalties or early termination fee's. The original contract was consummated by a trespassing third party illegal solicitor and was not explained to me in it's entirety. That same solicitor lied to me and told me everything was free.

Please send me proof in writing that you have received this letter to your office.

I am an 86 year old women who was taken advantage of by your company thru this illegal third party trespassing salesmen.

Sincerely submitted,

_Clarice Tuck_
Clarice Tuck

CC: Vista Senior Citizens Lawyers support

"EXHIBIT E"

 # EXHIBIT “F”

**greatcall.**

# Have Questions? Call our member services line at
**800-733-6632 (tel:800-733-6632)**



Hello, CLARICE
TUCK
**Jitterbug**
760-724-9439

# Usage Details

Account #1727605 | Logout
(/MemberSection/Login/Logout)

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 2/25/2015 9:51:59 AM | In | 1 | 724-741-3500 | $0.00 | *CALL #1* |
| 2/25/2015 10:36:17 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 2/25/2015 10:59:11 AM | In | 1 | 484-668-4033 | $0.00 | *CALL #2* |
| 2/25/2015 1:07:20 PM | In | 1 | 760-310-9964 | $0.00 | |
| 2/25/2015 1:09:02 PM | Out | 2 | VOICE MAIL | $0.00 | |
| 2/25/2015 1:10:51 PM | Out | 2 | VOICE MAIL | $0.00 | |
| 2/26/2015 10:12:31 AM | Out | 2 | 760-510-3996 | $0.00 | |
| 2/26/2015 10:16:02 AM | Out | 1 | 760-724-5800 | $0.00 | |
| 2/26/2015 10:20:52 AM | Out | 4 | 760-940-1700 | $0.00 | |
| 2/26/2015 10:31:55 AM | Out | 5 | 760-757-7546 | $0.00 | |
| 2/26/2015 10:53:46 AM | In | 3 | 760-510-3996 | $0.00 | |
| 2/26/2015 11:08:33 AM | Out | 2 | 800-726-5648 | $0.00 | |
| 2/26/2015 12:59:08 PM | In | 3 | 760-840-1551 | $0.00 | |
| 2/26/2015 1:02:06 PM | In | 1 | 760-840-1551 | $0.00 | |
| 2/26/2015 1:39:41 PM | In | 1 | 484-668-4033 | $0.00 | *CALL #3* |
| 2/26/2015 2:36:50 PM | In | 1 | 724-741-3500 | $0.00 | *CALL #4* |
| 2/26/2015 2:37:39 PM | Out | 2 | VOICE MAIL | $0.00 | |

*"EXHIBIT F"*

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 2/26/2015 7:25:13 PM | In | 1 | 760-518-9090 | $0.00 |
| 2/27/2015 9:48:07 AM | Out | 1 | 760-330-6173 | $0.00 |
| 2/27/2015 10:06:57 AM | Out | 2 | 760-726-1909 | $0.00 |
| 2/27/2015 12:40:01 PM | Out | 1 | VOICE MAIL | $0.00 |
| 2/27/2015 2:36:47 PM | In | 1 | 724-741-3500 | $0.00 |
| 2/27/2015 2:38:12 PM | Out | 2 | 760-310-9964 | $0.00 |
| 2/27/2015 4:05:00 PM | In | 14 | 760-840-1551 | $0.00 |
| 2/27/2015 6:31:06 PM | In | 2 | 760-758-2008 | $0.00 |
| 2/27/2015 7:01:17 PM | Out | 5 | 800-726-5648 | $0.00 |
| 2/28/2015 10:41:07 AM | Out | 4 | 800-654-6100 | $0.00 |
| 2/28/2015 11:31:56 AM | Out | 1 | 800-543-2644 | $0.00 |
| 2/28/2015 2:36:57 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/1/2015 11:01:21 AM | In | 5 | 760-840-1551 | $0.00 |
| 3/1/2015 2:37:04 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/2/2015 9:35:41 AM | Out | 2 | 760-330-6173 | $0.00 |
| 3/2/2015 12:15:05 PM | In | 1 | 484-668-4033 | $0.00 |
| 3/2/2015 1:04:42 PM | Out | 20 | 800-543-2644 | $0.00 |
| 3/2/2015 2:37:02 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/2/2015 4:01:47 PM | Out | 1 | 760-726-1990 | $0.00 |
| 3/2/2015 4:04:04 PM | Out | 2 | 760-726-1909 | $0.00 |
| 3/3/2015 11:26:05 AM | Out | 1 | 760-310-9964 | $0.00 |
| 3/3/2015 11:37:22 AM | Out | 1 | 760-310-9964 | $0.00 |
| 3/3/2015 3:04:34 PM | Out | 1 | VOICE MAIL | $0.00 |

*Handwritten annotations:* 'CALL #5 (next to 2/27/2015 2:36:47 PM row), CALL #6 (next to 2/28/2015 2:36:57 PM row), CALL #7 (next to 3/1/2015 2:37:04 PM row), CALL #8 (next to 3/2/2015 12:15:05 PM row), CALL #9 (next to 3/2/2015 2:37:02 PM row), "EXHIBIT F"*

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 3/3/2015 3:05:00 PM | Out | 4 | VOICE MAIL | $0.00 |
| 3/3/2015 4:22:28 PM | In | 1 | 760-440-3680 | $0.00 |
| 3/4/2015 10:28:31 AM | In | 1 | 760-310-9964 | $0.00 |
| 3/4/2015 12:17:17 PM | In | 1 | 484-668-4033 | $0.00 |
| 3/4/2015 2:37:12 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/5/2015 2:37:18 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/5/2015 3:13:43 PM | In | 1 | 712-823-0500 | $0.00 |
| 3/6/2015 9:15:25 AM | Out | 2 | 760-758-2008 | $0.00 |
| 3/6/2015 11:24:07 AM | In | 4 | 760-840-1551 | $0.00 |
| 3/6/2015 12:06:36 PM | In | 2 | 760-757-7546 | $0.00 |
| 3/6/2015 1:17:29 PM | In | 1 | 760-631-3062 | $0.00 |
| 3/6/2015 6:31:04 PM | In | 2 | 760-758-2008 | $0.00 |
| 3/7/2015 2:37:23 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/7/2015 5:19:53 PM | In | 7 | 760-840-1551 | $0.00 |
| 3/7/2015 5:26:25 PM | In | 2 | 760-840-1551 | $0.00 |
| 3/8/2015 3:37:22 PM | In | 2 | 724-741-3500 | $0.00 |
| 3/9/2015 12:01:45 PM | In | 3 | 760-330-6173 | $0.00 |
| 3/9/2015 12:26:04 PM | In | 1 | 212-545-1215 | $0.00 |
| 3/9/2015 3:23:42 PM | Out | 2 | 760-726-1909 | $0.00 |
| 3/10/2015 12:15:56 PM | Out | 2 | 760-310-9964 | $0.00 |
| 3/10/2015 2:48:21 PM | In | 1 | 661-839-6469 | $0.00 |
| 3/10/2015 3:26:42 PM | In | 12 | 760-840-1551 | $0.00 |
| 3/10/2015 3:30:36 PM | In | 1 | 760-440-3680 | $0.00 |

*Handwritten annotations:*
Call #10
Call #11
Call #12
CALL #13
CALL #14
"EXHIBIT F"

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/10/2015 3:37:28 PM | In | 2 | 724-741-3500 | $0.00 | CALL #15 |
| 3/10/2015 3:39:46 PM | Out | 3 | VOICE MAIL | $0.00 | |
| 3/10/2015 4:13:31 PM | In | 9 | 661-839-6469 | $0.00 | |
| 3/10/2015 5:54:20 PM | Out | 7 | 760-840-1551 | $0.00 | |
| 3/11/2015 10:38:32 AM | In | 3 | 760-840-1551 | $0.00 | |
| 3/11/2015 1:14:51 PM | In | 1 | 760-840-1551 | $0.00 | |
| 3/11/2015 3:37:42 PM | In | 1 | 724-741-3500 | $0.00 | CALL #16 |
| 3/11/2015 6:53:49 PM | In | 1 | 484-668-4033 | $0.00 | CALL #17 |
| 3/12/2015 10:55:19 AM | In | 2 | 760-840-1551 | $0.00 | |
| 3/12/2015 11:21:02 AM | In | 1 | 760-840-1551 | $0.00 | |
| 3/12/2015 11:58:39 AM | In | 2 | 619-235-6560 | $0.00 | |
| 3/12/2015 12:22:29 PM | In | 2 | 760-310-9964 | $0.00 | |
| 3/12/2015 12:53:44 PM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/12/2015 2:34:47 PM | Out | 3 | VOICE MAIL | $0.00 | |
| 3/12/2015 3:37:43 PM | In | 1 | 724-741-3500 | $0.00 | CALL #18 |
| 3/12/2015 6:04:13 PM | In | 1 | 484-668-4033 | $0.00 | CALL #19 |
| 3/13/2015 12:02:52 PM | In | 1 | 760-310-9964 | $0.00 | |
| 3/13/2015 12:04:31 PM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/13/2015 3:37:42 PM | In | 1 | 724-741-3500 | $0.00 | CALL #20 |
| 3/14/2015 9:04:11 AM | In | 2 | 760-724-5800 | $0.00 | |
| 3/14/2015 11:44:28 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/14/2015 11:54:53 AM | In | 2 | 760-840-1551 | $0.00 | |
| 3/14/2015 3:37:47 PM | In | 1 | 724-741-3500 | $0.00 | CALL #21 |

"EXHIBIT F"

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/15/2015 3:38:01 PM | In | 1 | 724-741-3500 | $0.00 | CALL #22 |
| 3/16/2015 7:28:09 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/16/2015 7:29:23 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/16/2015 7:36:28 AM | In | 4 | 760-310-9964 | $0.00 | |
| 3/16/2015 10:25:56 AM | In | 2 | 760-840-1551 | $0.00 | |
| 3/16/2015 12:24:22 PM | In | 2 | 760-310-9964 | $0.00 | |
| 3/16/2015 2:19:41 PM | Out | 4 | 760-724-9000 | $0.00 | |
| 3/16/2015 2:27:11 PM | In | 1 | 760-726-1907 | $0.00 | |
| 3/16/2015 3:38:05 PM | In | 1 | 724-741-3500 | $0.00 | CALL # 23 |
| 3/16/2015 4:06:40 PM | In | 11 | 760-840-1551 | $0.00 | |
| 3/17/2015 3:46:07 PM | Out | 4 | VOICE MAIL | $0.00 | |
| 3/17/2015 6:18:46 PM | In | 1 | 858-277-0000 | $0.00 | |
| 3/18/2015 11:47:54 AM | In | 1 | 484-668-4033 | $0.00 | CALL # 24 |
| 3/18/2015 12:50:22 PM | In | 1 | 800-555-1212 | $0.00 | |
| 3/18/2015 3:11:50 PM | In | 1 | 760-743-8784 | $0.00 | |
| 3/18/2015 3:38:20 PM | In | 1 | 724-741-3500 | $0.00 | CALL #25 |
| 3/18/2015 5:56:38 PM | In | 13 | 760-840-1551 | $0.00 | |
| 3/19/2015 9:43:09 AM | In | 1 | 484-668-4033 | $0.00 | CALL # 26 |
| 3/19/2015 11:02:41 AM | Out | 2 | 760-310-9964 | $0.00 | |
| 3/19/2015 11:24:25 AM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/19/2015 3:38:46 PM | In | 1 | 760-840-1551 | $0.00 | |
| 3/19/2015 3:39:26 PM | In | 4 | 760-840-1551 | $0.00 | |
| 3/19/2015 4:02:09 PM | Out | 3 | VOICE MAIL | $0.00 | |

"EXHIBIT F"

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/20/2015 9:30:56 AM | In | 1 | 760-631-3060 | $0.00 | |
| 3/20/2015 3:38:41 PM | In | 1 | 724-741-3500 | $0.00 | CALL #27 |
| 3/21/2015 8:44:30 AM | In | 1 | 724-741-3500 | $0.00 | CALL #28 |
| 3/21/2015 9:33:08 AM | In | 7 | 760-840-1551 | $0.00 | |
| 3/21/2015 12:14:22 PM | In | 1 | 703-272-4699 | $0.00 | |
| 3/21/2015 3:42:55 PM | Out | 2 | VOICE MAIL | $0.00 | |
| 3/22/2015 10:20:40 AM | Out | 7 | 661-946-9000 | $0.00 | |
| 3/22/2015 3:50:24 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/22/2015 4:21:22 PM | In | 1 | 619-260-6110 | $0.00 | |
| 3/22/2015 5:27:24 PM | In | 1 | 760-840-1551 | $0.00 | |
| 3/23/2015 9:16:45 AM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/23/2015 9:19:33 AM | In | 7 | 760-840-1551 | $0.00 | |
| 3/23/2015 9:51:24 AM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/23/2015 11:51:09 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/23/2015 12:38:15 PM | In | 2 | 760-840-1551 | $0.00 | |
| 3/23/2015 3:39:00 PM | In | 1 | 724-741-3500 | $0.00 | CALL #29 |
| 3/24/2015 9:45:52 AM | In | 1 | 484-668-4033 | $0.00 | CALL #30 |
| 3/24/2015 10:20:14 AM | In | 1 | 760-724-6650 | $0.00 | |
| 3/24/2015 1:51:20 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/24/2015 4:50:10 PM | In | 1 | 724-741-3500 | $0.00 | CALL #31 |
| 3/24/2015 4:51:01 PM | Out | 4 | VOICE MAIL | $0.00 | |

"EXHIBIT 'F'"





**Have Questions? Call our member services line at 800-733-6632 (tel:800-733-6632)**



Hello, CLARICE
TUCK
**Jitterbug**
760-724-9439

Account #1727605 | Logout
(/MemberSection/Login/Logout)

# Usage Details

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 3/25/2015 9:50:51 AM | Out | 1 | 760-639-6161 | $0.00 |
| 3/25/2015 1:05:39 PM | In | 2 | 760-941-0140 | $0.00 |
| 3/25/2015 1:21:14 PM | In | 5 | 760-840-1551 | $0.00 |
| 3/25/2015 2:33:37 PM | In | 2 | 760-888-7418 | $0.00 |
| 3/25/2015 2:48:24 PM | Out | 2 | VOICE MAIL | $0.00 |
| 3/25/2015 2:51:08 PM | Out | 5 | 888-272-8394 | $0.00 |
| 3/25/2015 2:56:33 PM | Out | 2 | 760-847-4101 | $0.00 |
| 3/25/2015 2:59:12 PM | Out | 1 | 760-639-6161 | $0.00 |
| 3/25/2015 3:18:49 PM | In | 2 | 760-847-4101 | $0.00 |
| 3/25/2015 4:50:20 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/26/2015 4:50:27 PM | In | 1 | 724-741-3500 | $0.00 |

*(handwritten: "32 CALL #32" next to the 3/25/2015 4:50:20 PM row)*

*(handwritten: "CALL #33" next to the 3/26/2015 4:50:27 PM row)*

*(handwritten: "EXHIBIT F")*

| Date / Time | Direction | Minutes | Number | Charges | |
|---|---|---|---|---|---|
| 3/27/2015 11:01:28 AM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/27/2015 11:15:20 AM | In | 1 | 760-310-9964 | $0.00 | |
| 3/27/2015 11:19:00 AM | In | 2 | 760-840-1551 | $0.00 | |
| 3/27/2015 12:23:21 PM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/27/2015 4:50:37 PM | In | 1 | 724-741-3500 | $0.00 | *CALL #34* |
| 3/27/2015 5:04:41 PM | In | 10 | 661-839-6469 | $0.00 | |
| 3/27/2015 6:25:44 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/28/2015 1:10:38 PM | In | 1 | 513-940-1370 | $0.00 | |
| 3/28/2015 1:24:50 PM | Out | 1 | VOICE MAIL | $0.00 | |
| 3/28/2015 4:50:37 PM | In | 1 | 724-741-3500 | $0.00 | *CALL #35* |
| 3/29/2015 10:04:31 AM | In | 5 | 760-840-1551 | $0.00 | |
| 3/29/2015 10:38:23 AM | In | 2 | 760-310-9964 | $0.00 | |
| 3/29/2015 11:45:31 AM | Out | 1 | 760-840-1551 | $0.00 | |
| 3/29/2015 11:57:32 AM | Out | 1 | 760-310-9964 | $0.00 | |
| 3/29/2015 5:02:58 PM | Out | 5 | VOICE MAIL | $0.00 | |

"EXHIBIT F"

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 3/30/2015 3:55:00 PM | In | 8 | 760-840-1551 | $0.00 |
| 3/30/2015 4:03:01 PM | In | 2 | 760-840-1551 | $0.00 |
| 3/30/2015 4:50:44 PM | In | 1 | 724-741-3500 | $0.00 |
| 3/31/2015 5:08:26 PM | Out | 2 | VOICE MAIL | $0.00 |
| 4/1/2015 9:10:04 AM | Out | 1 | 760-945-7387 | $0.00 |
| 4/1/2015 11:24:41 AM | In | 3 | 619-236-1058 | $0.00 |
| 4/1/2015 11:38:15 AM | In | 1 | 760-945-7387 | $0.00 |
| 4/1/2015 12:04:54 PM | Out | 1 | 760-840-1551 | $0.00 |
| 4/1/2015 12:38:41 PM | Out | 11 | 760-941-4266 | $0.00 |
| 4/1/2015 3:26:12 PM | In | 2 | 760-840-1551 | $0.00 |
| 4/1/2015 4:09:26 PM | In | 1 | 760-547-0217 | $0.00 |
| 4/1/2015 4:50:54 PM | In | 1 | 724-741-3500 | $0.00 |
| 4/2/2015 9:33:05 AM | In | 1 | - | $0.00 |
| 4/2/2015 10:43:39 AM | Out | 3 | 888-272-8394 | $0.00 |
| 4/2/2015 1:59:13 PM | In | 24 | 323-867-9737 | $0.00 |
| 4/2/2015 4:55:48 PM | In | 1 | 619-236-1058 | $0.00 |
| 4/2/2015 4:58:04 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/2/2015 4:58:18 PM | In | 1 | 619-236-1058 | $0.00 |

*CALL #36* (handwritten, next to 3/30/2015 4:50:44 PM row)

*CALL #37* (handwritten, next to 4/1/2015 4:50:54 PM row)

"EXHIBIT F" (handwritten)

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 4/2/2015 5:06:09 PM | Out | 4 | VOICE MAIL | $0.00 |
| 4/2/2015 6:15:45 PM | In | 18 | 760-840-1551 | $0.00 |
| 4/2/2015 7:10:22 PM | Out | 8 | 760-840-1551 | $0.00 |
| 4/3/2015 8:13:15 AM | In | 1 | 760-310-9964 | $0.00 |
| 4/3/2015 9:05:21 AM | Out | 1 | 760-724-5800 | $0.00 |
| 4/3/2015 9:28:10 AM | Out | 1 | 888-272-6053 | $0.00 |
| 4/3/2015 9:29:50 AM | Out | 2 | 951-764-6053 | $0.00 |
| 4/3/2015 9:31:57 AM | Out | 2 | 888-272-8394 | $0.00 |
| 4/3/2015 9:34:04 AM | Out | 1 | 619-236-0616 | $0.00 |
| 4/3/2015 9:35:26 AM | Out | 1 | 760-724-5800 | $0.00 |
| 4/3/2015 11:19:41 AM | Out | 2 | 760-724-5800 | $0.00 |
| 4/3/2015 12:25:13 PM | In | 1 | 619-241-3520 | $0.00 |
| 4/3/2015 3:43:00 PM | Out | 3 | VOICE MAIL | $0.00 |
| 4/3/2015 4:51:09 PM | In | 1 | 724-741-3500 | $0.00 |
| 4/3/2015 5:44:00 PM | Out | 11 | 760-840-1551 | $0.00 |
| 4/3/2015 5:58:32 PM | Out | 4 | 760-840-1551 | $0.00 |
| 4/4/2015 12:20:57 PM | In | 2 | 760-840-1551 | $0.00 |
| 4/4/2015 2:20:27 PM | Out | 2 | VOICE MAIL | $0.00 |
| 4/4/2015 2:22:18 PM | Out | 2 | VOICE MAIL | $0.00 |
| 4/4/2015 2:28:29 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/4/2015 2:30:17 PM | Out | 2 | VOICE MAIL | $0.00 |
| 4/4/2015 2:33:39 PM | Out | 3 | VOICE MAIL | $0.00 |

CALL #38

"EXHIBIT F"

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 4/9/2015 11:03:19 AM | In | 1 | 858-764-3680 | $0.00 |
| 4/9/2015 5:07:48 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/10/2015 9:11:31 AM | In | 1 | 760-310-9964 | $0.00 |
| 4/10/2015 1:21:26 PM | Out | 5 | 760-840-1551 | $0.00 |
| 4/10/2015 2:50:15 PM | In | 1 | 760-310-9964 | $0.00 |
| 4/10/2015 2:51:22 PM | In | 1 | 760-847-4101 | $0.00 |
| 4/10/2015 4:40:57 PM | In | 1 | 760-310-9964 | $0.00 |
| 4/10/2015 4:58:54 PM | In | 2 | 760-310-9964 | $0.00 |
| 4/10/2015 8:11:27 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/11/2015 1:21:52 PM | In | 5 | 760-840-1551 | $0.00 |
| 4/12/2015 6:27:34 AM | Out | 1 | VOICE MAIL | $0.00 |
| 4/12/2015 10:52:13 AM | Out | 3 | 760-840-1551 | $0.00 |
| 4/12/2015 4:52:32 PM | In | 1 | 724-741-3500 | $0.00 |
| 4/13/2015 10:20:43 AM | In | 2 | 760-840-1551 | $0.00 |
| 4/13/2015 10:28:30 AM | Out | 4 | 323-254-1700 | $0.00 |

CALL #39

" EXHIBIT F "

| Date / Time | Direction | Minutes | Number | Charges |
|---|---|---|---|---|
| 4/17/2015 10:31:47 AM | In | 8 | 760-840-1551 | $0.00 |
| 4/17/2015 11:00:56 AM | Out | 1 | 760-310-9964 | $0.00 |
| 4/17/2015 11:19:38 AM | Out | 2 | 760-840-1551 | $0.00 |
| 4/17/2015 4:31:16 PM | In | 29 | 480-993-9912 | $0.00 |
| 4/17/2015 4:52:56 PM | In | 2 | 724-741-3500 | $0.00 |
| 4/17/2015 5:01:03 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/18/2015 5:05:58 PM | Out | 1 | VOICE MAIL | $0.00 |
| 4/18/2015 7:42:04 PM | In | 1 | 760-840-1551 | $0.00 |
| 4/19/2015 9:52:52 AM | Out | 1 | VOICE MAIL | $0.00 |
| 4/19/2015 9:53:55 AM | Out | 3 | 760-840-1551 | $0.00 |
| 4/19/2015 1:24:16 PM | Out | 1 | 760-726-7794 | $0.00 |
| 4/19/2015 1:48:50 PM | In | 38 | 760-726-7794 | $0.00 |
| 4/20/2015 8:41:50 AM | Out | 2 | VOICE MAIL | $0.00 |
| 4/20/2015 8:43:04 AM | Out | 3 | 760-840-1551 | $0.00 |
| 4/20/2015 8:44:16 AM | In | 1 | 360-807-5350 | $0.00 |

CALL #40

"EXHIBIT F"

**EXHIBIT "G"**

## EXHIBIT E

| Call Total | Date | Time | Called From |
|------------|------|------|-------------|
| Call #1 | February 25, 2015 | 9:51 a.m. | From (724) 741-3500 |
| Call #2 | February 25, 2015 | 10:59 a.m. | From (484) 668-4033 |

*Note \* Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|------------|------|------|-------------|
| Call #3 | February 26, 2015 | 1:39 p.m. | From (484) 668-4033 |
| Call #4 | February 26, 2015 | 2:36 p.m. | From (724) 741-3500 |

*Note \* Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|------------|------|------|-------------|
| Call #5 | February 27, 2015 | 2:36 p.m. | From (724) 741-3500 |
| Call #6 | February 28, 2015 | 2:36 p.m. | From (724) 741-3500 |
| Call #7 | March 1, 2015 | 2:37 p.m. | From (724) 741-3500 |
| Call #8 | March 2, 2015 | 12:15 p.m. | From (484) 668-4033 |
| Call #9 | March 2, 2015 | 2:37 p.m. | From (724) 741-3500 |

*Note \* Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|------------|------|------|-------------|
| Call #10 | March 4, 2015 | 12:17 p.m. | From (484) 668-4033 |
| Call #11 | March 4, 2015 | 2.37 p.m. | From (724) 741-3500 |

*Note \* Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|------------|------|------|-------------|
| Call #12 | March 5, 2015 | 2:37 p.m. | From (724) 741-3500 |
| Call #13 | March 7, 2015 | 2:37 p.m. | From (724) 741-3500 |
| Call #14 | March 8, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #15 | March 10, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #16 | March 11, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #17 | March 11, 2015 | 6:53 p.m. | From (484) 668-4033 |

*Note \* Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS.*

| | | | |
|---|---|---|---|
| Call #18 | March 12, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #19 | March 12, 2015 | 6:04 p.m. | From (484) 668-4033 |

**_Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS._**

| | | | |
|---|---|---|---|
| Call #20 | March 13, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #21 | March 14, 2015 | 3:37 p.m. | From (724) 741-3500 |
| Call #22 | March 15, 2015 | 3:38 p.m. | From (724) 741 3500 |
| Call #23 | March 16, 2015 | 3:38 p.m. | From (724) 741-3500 |
| Call #24 | March 18, 2015 | 11:47 a.m. | From (484) 668-4033 |
| Call #25 | March 18, 2015 | 3:38 p.m. | From (724) 741-3500 |

**_Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS._**

| | | | |
|---|---|---|---|
| Call #26 | March 19, 2015 | 9:43 a.m. | From (484) 668-4033 |
| Call #27 | March 21, 2015 | 8:44 a.m. | From (484) 668-4033 |
| Call #28 | March 23, 2015 | 3:39 p.m. | From (724) 741-3500 |
| Call #29 | March 24, 2015 | 9:45 a.m | From (484) 668-4033 |
| Call #30 | March 24, 2015 | 4:50 p.m. | From (724) 741-3500 |

**_Note * Plaintiff TUCK's cell phone was called twice on the above day from two different separate phone numbers assigned to the Defendant GPS._**

| | | | |
|---|---|---|---|
| Call #31 | March 25, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #32 | March 26, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #33 | March 27, 2015 | 4:50 p.m. | From (724)-741-3500 |
| Call #34 | March 28, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #35 | March 30, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #36 | April 1, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #37 | April 2, 2015 | 4:50 p.m. | From (724) 741-3500 |
| Call #38 | April 3, 2015 | 4:51 p.m. | From (724) 741-3500 |
| Call #39 | April 12, 2015 | 4:52 p.m. | From (724) 741-3500 |
| Call #40 | April 17, 2015 | 4:52 p.m. | From (724) 741-3500 |

" EXHIBIT G "    Page 2

# EXHIBIT "H"



One of the Armstrong Group of Companies

April 06, 2015

CLARICE TUCK
1600 E VISTA WAY
UNIT 110
VISTA, CA 92084

Dear Valued Customer:

We are unable to honor your request to cancel monitoring service at this time. We have enclosed a copy of your current monitoring agreement for your review. Please note that this agreement is not due to renew until **8/17/18**. Your system was sold as a package that included the monitoring agreement; therefore, Guardian Protection Services will continue to monitor your system.

If you are having a service related problem with your system or we can be of other assistance, please do not hesitate to call us. Our customer base of over 180,000 accounts shows our commitment to satisfying customers. We will do everything we can to help you.

Sincerely,

Alycia Lyons
Customer Service Department

hjh

Enclosure

Account # 6012236



174 THORN HILL ROAD • WARRENDALE, PA 15086 • (724) 741-3500 • FAX (724) 741-3540

AL 14-823; AR E 2006 0001; AZ ROC208756, 18259-0; CA ACO 6464, ACO5362; DC 396504182, ECS900301, DMS200495; DE 1995110043, FAL0197, 95-73; FL EF-0001052; GA LVA204655; IL 127.001224; IN LAC-000028; KY 145654; MD 107-496, 48576 (888) 218-5925), 15721026; MI 3601205553; MO LC9707050; NC 2181-CSA, BPN 00301BP6, 20481-SP-FAV; NJ P00851, NJ Burglar and Fire Alarm License 34BF00009100, 156800, 11 Penns Trail, Suite 400, Newtown, PA 18940, ((800) 776-6328); NV 20081367594, 0076423; NY 12000234101; OK 53 89 1300; OK 951; OR 48921; PA 009679; RI 0609A; SC FAC3227, BAC5191; TN 00001438; TX B10340, ACR-1750845; UT 7437864-6501; VA 11-1907, 2705-025965; WA UBI 602619804; WI Sheboygan: 1679; WV WV033013

# EXHIBIT "I"

Clarice Tuck
1600 E. Vista Way #110
Vista, CA  92084
Ph: 760-724-9439

_In Pro Se_

FILED

JUN 2 3 2015

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CLARICE TUCK,** | ) CASE NO: **15 CV 1376 JLS JLB** |
| Plaintiff, | ) |
| | ) |
| vs. | ) **CONSUMER NOTICE OF** |
| | ) **DISPUTE OF DEBT** |
| **GUARDIAN PROTECTION SERVICES, INC** | ) |
| **CHARLES D. SCHOLZ Division Council,** | ) |
| **Does 1-25,** | ) |
| | ) |
| Defendants, | ) |

## CONSUMER NOTICE OF DISPUTE OF DEBT

COMES NOW, CLARICE E. TUCK, pursuant to 15 U.S.C. §1692g, Fair Debt Collection Practices Act(F.D.C.P.A.) hereby disputes the alleged $1,288.26 debt the Defendant claims that I the Plaintiff CLARICE E. TUCK owes in the above-entitled matter.

**THEREFORE,** this NOTICE shall be deemed a request/demand for "verification" and debt validation request as defined by 15 U.S.C. §1692(g) (1) (2) (5) (b), and California Consumer Protection Statutes/Laws.

Plaintiff CLARICE TUCK hereby requests validation pursuant to 15 U.S.C. 1692 _et seq._

SPECIFICALLY, I dispute as to the identity of the true owner(s) (if any) of this same alleged $1,288.26 dollar debt, the alleged $1,288.26 amount due and owing, I dispute all signatures on the Defendant's unauthenticated hearsay documents, and the Defendant's alleged authority and capacity to collect and/or sue on behalf of the same. The Defendant's in the above-entitled case are "debt collectors" as that term is defined by 15 U.S.C. 1692a(3).

---

CONSUMER NOTICE OF DISPUTE OF DEBT          " EXHIBIT I "          PAGE 1

1     GUARDIAN PROTECTION SERVICES, INC. is attempting to collect a

2 "household debt" as that is defined by 15 U.S.C. §1692a(5).

3     **LASTLY,** Plaintiff CLARICE TUCK upon viewing my consumer credit reports whereby

4 it was revealed that the Defendant's are reporting an alleged negative report in the amount of

5 $1,288.26.

6     I, CLARICE TUCK, hereby request the Defendant to delete the inaccurate information

7 immediately pursuant to 15 U.S.C. §1681 et, al.

8 Parties must comply with the requests herein in a timely manner and completely.

9 Failure to provide the above-requested documentation will result in the Plaintiff CLARICE TUCK

10 filing a claim for all damages and all court costs accordingly.

11

12 Dated: 6-23-15

13

14                        *Clarice E. Tuck*

15                           CLARICE E. TUCK

16

17

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///